GEORGE A. KIMBRELL (*Pro Hac Vice application pending*)
PETER T. JENKINS (*Pro Hac Vice application pending*)
PAIGE M. TOMASELLI (State Bar No. 237737)
SYLVIA SHIH-YAU WU (State Bar No. 273549)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@centerforfoodsafety.org
        pjenkins@centerforfoodsafety.org
        ptomaselli@centerforfoodsafety.org
        swu@centerforfoodsafety.org

*Counsel for Plaintiffs*

ORIGINAL
FILED

MAR 2 1 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ELLIS, TOM THEOBALD, JIM DOAN, BILL RHODES, CENTER FOR FOOD SAFETY, BEYOND PESTICIDES, SIERRA CLUB, PESTICIDE ACTION NETWORK NORTH AMERICA, and CENTER FOR ENVIRONMENTAL HEALTH, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN P. BRADBURY, DIRECTOR OF OFFICE OF PESTICIDE PROGRAMS, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and BOB PERCIASEPE, ACTING ADMINISTRATOR AND DEPUTY ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> **C 13   1266** <br><br> Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Administrative Procedure Act Case |

LB

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

# INTRODUCTION

1.      This is a civil action for injunctive and declaratory relief.  Plaintiffs Steve Ellis, Tom Theobald, Jim Doan, Bill Rhodes, Center for Food Safety (CFS), Beyond Pesticides, Sierra Club, Pesticide Action Network North America (PANNA), and Center for Environmental Health (CEH), (collectively Plaintiffs), challenge the actions of Defendants Steven P. Bradbury, Director of Office of Pesticide Programs of the United States Environmental Protection Agency (EPA), and Bob Perciasepe, Acting Administrator and Deputy Administrator of EPA (collectively EPA or Defendants) to allow the ongoing use of pesticide products containing the active ingredients clothianidin and thiamethoxam, in violation of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*; § 7(a)(2) of the Endangered Species Act (ESA), 16 U.S.C. § 1536(a)(2); and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

2.      Clothianidin and its parent compound, thiamethoxam, are two widely-used pesticides in a class of pesticides known as neonicotinoids, which have been shown to adversely impact the survival, growth, and health of honey bees and other pollinators vital to U.S. agriculture, and which have harmful effects on other animals, including threatened and endangered species.  In a vast and extremely risky experiment, EPA has allowed over two million pounds of clothianidin and thiamethoxam to be used annually on more than 100 million acres and on dozens of different plant crops without adhering to existing procedural frameworks and with no adequate risk assessments in place.

3.      In most instances, EPA has approved clothianidin and thiamethoxam product registrations, new uses, and use amendments without affording notice in the Federal Register and the opportunity for public comment, in violation of the FIFRA and the APA.  Substantively, EPA has failed to modify its regulation of these pesticides in response to the many scientifically-sound studies and adverse effect reports illustrating the risks these neonicotinoid pesticides pose.  EPA's regulatory actions and inactions have been a major factor in excessive honey bee mortality and the decline of pollinator populations in the same time period.  EPA's regulatory

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   actions and inactions, resulting in the continued use of clothianidin and thiamethoxam, have also

2   continued to place threatened and endangered species in jeopardy.

3       4.      In addition to chronic effects described as Colony Collapse Disorder, hundreds of

4   the nation's beekeepers and honey producers each spring suffer from acute effects when

5   neonicotinoid-treated corn, in particular, is planted in virtually every state.  Thousands of bee

6   colonies have been exposed to lethal levels of neonicotinoid-contaminated dust during corn

7   planting season.  Plaintiff beekeepers and honey producers have suffered, and will continue to

8   suffer, devastating economic hardships unless Defendants take action, which they have refused

9   to do despite repeated formal requests.

10      5.      EPA is well aware of recent studies and reports illustrating the risks to honey

11  bees, pollinators, and other sensitive species, but has refused to take any regulatory action.  In

12  December 2010, Plaintiffs Beyond Pesticides and PANNA, along with other environmental

13  groups, beekeepers, and honey producers, submitted a formal letter requesting EPA to issue a

14  stop sale order of clothianidin products.[1]  EPA denied the request in February 2011.[2]  In March

15  2012, Plaintiffs CFS, Beyond Pesticides, and PANNA, along with numerous other environmental

16  groups, beekeepers, and honey producers, filed a legal petition (hereafter the Clothianidin Legal

17  Petition or the Petition) asking EPA to initiate immediate suspension and cancellation of

18  clothianidin products.[3]  EPA denied the suspension request in July 2012.[4]  Plaintiff CFS further

19  submitted a comment letter regarding similar risks of thiamethoxam products and requesting

20

21

22  [1] Letter from Beyond Pesticides *et al.*, to EPA (Dec. 8, 2010), *available at*
    http://www.epa.gov/opp00001/about/intheworks/clothianidin-petition2.pdf.

23  [2] Letter from Steven Bradbury, Director, Office of Pesticide Programs, EPA, to Steve Ellis *et al.*
    (Feb. 18, 2011), *available at* http://www.epa.gov/opp00001/about/intheworks/clothianidin-

24  response-letter.pdf.

25  [3] CFS *et al.*, Clothianidin Legal Petition (Mar. 21, 2012), *available at*
    http://www.centerforfoodsafety.org/wp-content/uploads/2012/10/CFS-Clothianidin-Petition-3-

26  20-12.pdf.

27  [4] Letter from Steven Bradbury, Director, Office of Pesticide Programs, EPA, to Peter T. Jenkins
    (July 17, 2012), *available at* http://www.epa.gov/opp00001/about/intheworks/epa-respns-to-

28  clothianidin-petition-17july12.pdf.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

3

1  suspension of the pesticide in October 2012.[5]  EPA has also refused that suspension request.[6]

2      6.    In addition to the Plaintiffs, hundreds of thousands of Americans endorsed an

3  informal citizen petition in 2011 to 2012 urging Defendants to suspend clothianidin's

4  registration.  There is intense public interest in EPA's actions, due to the loss of honey bees and

5  other beneficial insects; the resulting economic, food supply, and ecosystem damages; and the

6  unnecessary persistent toxic pollution of America's private and public landscapes.

7      7.    Yet, despite repeated formal requests, Defendants have failed to take any

8  regulatory action.  In allowing this scenario to unfold over the last twelve years, EPA has

9  violated the FIFRA, the ESA and the APA.  EPA has denied Plaintiffs and the public mandatory

10  notice and public comment opportunities, severely damaged the interests of Plaintiffs, injured

11  vital pollinators and threatened and endangered species, and caused unreasonable adverse

12  environmental and economic impacts.

13                    **JURISDICTION AND VENUE**

14      8.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28

15  U.S.C. § 1346 (United States as defendant), 28 U.S.C. §§ 2201-02 (declaratory relief), 5 U.S.C.

16  § 702 (APA), 7 U.S.C. § 136n(a) (FIFRA), and 16 U.S.C. § 1540(e), (g) (ESA).

17      9.    Jurisdiction is in the District Court under the ESA citizen suit provision, which

18  allows "any person" to sue an agency "alleged to be in violation of any provision of [the ESA]"

19  and provides that the "district courts shall have jurisdiction . . . to enforce any such provision or

20  regulation . . . ." 16 U.S.C. § 1540(g)(1).  Pursuant to the ESA, 16 U.S.C. § 1540(g)(2)(A),

21  Plaintiffs CFS, Beyond Pesticides, Sierra Club, Steve Ellis, and Tom Theobald have provided

22  Defendants with at least sixty days written notice of the their violations under the ESA and of

23  Plaintiffs' intent to sue should Defendants fail to remedy such violations (hereafter the Sixty-Day

24  Notice Letter).[7]  To date, Defendants have not remedied any of the violations of law set forth in

25  _____

26  [5] Letter from Plaintiffs to EPA (Oct. 16, 2012) (on file with Plaintiffs).
   [6] Letter from EPA to Plaintiffs (Feb. 27, 2013) (on file with Plaintiffs).

27  [7] Sixty-Day Notice Letter from Plaintiffs Center for Food Safety *et al.* to Defendants and Ken
   Salazar, former Secretary of the Interior (Sept. 5, 2012) (on file with Plaintiffs).

28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF                    4

1     Plaintiffs' Sixty-Day Notice Letter.

2          10.     Jurisdiction also lies in this Court under the FIFRA's judicial review provision, 7

3     U.S.C. § 136n(a), which provides:

4          District court review.

5

6          Except as otherwise provided in this Act, the refusal of the Administrator to
cancel or suspend a registration or to change a classification not following a
hearing and other final actions of the Administrator not committed to the

7          discretion of the Administrator by law are judicially reviewable by the district
courts of the United States.

8

9          11.     Each of the eight claims in this Complaint involve the refusal of the Defendants to

10     cancel or suspend a registration or to change a classification not following a hearing, failure to

11     conduct required ESA analysis and consultation, and other final actions of the Administrator not

12     committed to his or her discretion; thus, jurisdiction lies properly in the District Court. 7 U.S.C.

13     § 136n(a); 16 U.S.C. § 1540(g)(1). In particular, Defendants have: a) refused to cancel or

14     suspend the conditionally registered uses of clothianidin and thiamethoxam despite clear

15     evidence that the registrants for those uses have failed to comply with the conditions imposed by

16     EPA; b) changed the classifications of numerous conditional registrations of thiamethoxam and

17     clothianidin to unconditional registrations, as well as approved thiamethoxam and clothianidin

18     products as unconditional registrations, despite the registrants' failures to comply with the

19     conditions EPA imposed on them; c) taken final action, without a hearing, on Plaintiffs'

20     Clothianidin Legal Petition in denying the request to declare an "imminent hazard" exists; d)

21     failed to comply with the ESA, in approving all of the registered uses of these compounds, in

22     converting registrations to the unconditional classification and in denying an "imminent hazard"

23     exists; e) violated the FIFRA requirement to provide notices of clothianidin and thiamethoxam

24     registrations and changed use applications in the Federal Register and allow public comment, as

25     well as other notice requirements; and f) taken other actions as alleged herein that caused

26     unreasonable adverse environmental and economic impacts that are reviewable in the District

27     Court.

28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   12.   An actual controversy exists between the parties within the meaning of 28 U.S.C.

2   § 2201 (declaratory judgment).

3   13.   Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(c) because

4   one or more Plaintiffs reside in this district, and pursuant to 28 U.S.C. § 1391(e)(1)(b), because a

5   substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

6   of property that is the subject of the action is situated, in this district.

7   **INTRADISTRICT ASSIGNMENT**

8   14.   Pursuant to Local Rule 3-2(c) and (d), assignment of this action is appropriate in

9   the San Francisco or Oakland Divisions because one or more Plaintiffs reside in San Francisco.

10  **PARTIES**

11  *Beekeeper and Honey Producer Plaintiffs*

12  15.   The interests of Plaintiffs Mr. Steve Ellis, Mr. Tom Theobald, Mr. Jim Doan, and

13  Mr. Bill Rhodes (collectively Beekeeper and Honey Producer Plaintiffs) are being, and will be,

14  adversely affected by EPA's actions and inactions complained of herein.  Beekeeper and Honey

15  Producer Plaintiffs have suffered confirmed or unconfirmed clothianidin- and

16  thiamethoxam-related kills to their honey bees, both acute and chronic, as well as poor colony

17  health and failure to thrive.  Beekeeper and Honey Producer Plaintiffs are geographically and

18  operationally representative of this essential agricultural sector, in which there are thousands of

19  similarly-affected businesses and individuals.

20  16.   Plaintiff Mr. Steve Ellis owns and operates Old Mill Honey Company, a

21  migratory beekeeping operation with 2,300 hives of bees during the summer honey-producing

22  season, and with several employees.  The managed hives in his business produce honey for

23  market over the summer months in Minnesota, and paid pollination services in the winter and

24  spring in California.  Mr. Ellis has over thirty-five years of experience and has served as an

25  officer in beekeeper organizations for many years.  He is the Secretary of the National Honey

26  Bee Advisory Board.  Over the course of the last six to seven years, he has observed a new type

27  of bee kill caused by pesticide poisoning in the early spring, at corn seeding time, and early

28  dandelion bloom.  He has suffered major bee kills that were attributable to thiamethoxam and/or

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

6

1   clothianidin. His fall and winter mortality have remained between 30 to 40 percent over this

2   period. This level of losses is unsustainable. Mr. Ellis keeps bees in west central Minnesota

3   where corn and soybeans are increasingly the dominant crops. It is not practically feasible to

4   locate his bees away from these crops during the summer growing season.

5       17.   Plaintiff Mr. Tom Theobald is a commercial beekeeper and owner of the Niwot

6   Honey Farm in Niwot, Colorado. He has conducted his beekeeping business for thirty-eight

7   years. He was the President of the Boulder County Beekeepers Association for thirty years. Mr.

8   Theobald served two terms as Vice-President of the Colorado Beekeepers' Association and was

9   the last County Bee Inspector in Colorado. He is losing 40 to 60 percent of his colonies each

10  year and in 2011 and again in 2012 had his smallest honey crops in thirty-seven years. Mr.

11  Theobald has observed, based on his long personal and government experience with the impacts

12  of various pesticides on bees as well as through his own research, that a primary cause of his

13  recent and continuing losses is the uncontrolled use of neonicotinoid pesticides (including

14  clothianidin and thiamethoxam) over vast acres of agricultural land near his business, as well as

15  on untold acres of nearby urban and suburban land in Boulder County.

16      18.   Plaintiff Mr. Jim Doan runs Doan Family Farms based in Hamlin, New York,

17  with his wife, son and several hired men. He has kept honey bees for forty-five years. In 2006

18  Mr. Doan ran as many as 5,300 hives in New York and in Florida; his bees pollinate a vast

19  portion of New York's apple crop each year. Since 2006, he has been unable to keep from losing

20  more than 50 percent of his hives each year to symptoms that, based on his experience, are

21  caused by both acute and chronic exposure to the new neonicotinoid pesticides. In the spring

22  and summer of 2012, Mr. Doan suffered a devastating bee kill caused by clothianidin, which

23  very clearly came from contaminated dust and other exposure routes related to the several

24  cornfields around his bee colonies. If he continues suffer such losses to his business, without

25  monetary support, he fears it is doomed to disappear. His bees cannot be replaced as fast as they

26  are dying.

27      19.   Plaintiff Mr. Bill Rhodes owns Bill Rhodes Honey Company, the largest

28  commercial honey producer in Florida, based in Umatilla. A beekeeper for forty-one years, his

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

company employs about fifteen people. Mr. Rhodes produces several premium honey varieties, both in Florida and South Dakota, and his company also ships bees to Georgia and other states. He seeks to maintain about 9,000 hives, but the impacts of pesticides, including thiamethoxam and clothianidin, make keeping that level very difficult. Mr. Rhodes started seeing symptoms of Colony Collapse Disorder around 2004 and 2005, and again in 2007 and 2008. In the latter year he lost 7,200 of 9,000 hives. Major losses have continued, far exceeding normal loss rates during the three earlier decades of his operations. Mr. Rhodes has seen other beekeepers driven out of the business from major losses, and has a high level of concern that his own livelihood based on premium honey production is threatened.

20.     Each of the Beekeeper and Honey Producer Plaintiffs is injured by EPA's actions and inactions complained of herein. EPA's failure to provide Beekeeper and Honey Producer Plaintiffs with the FIFRA-mandated notices of application for clothianidin and thiamethoxam registration and changed uses in the Federal Register, and its failure to provide mandatory public comment periods, denied Plaintiffs the ability to submit information to the EPA that may have convinced the agency not to issue those registrations or use amendments. For Beekeeper and Honey Producer Plaintiffs, the monetary damages to their businesses are significant, including the costs of replacing killed and weakened bees; contaminated beeswax, comb, and hives; reduced honey production and lost profits; increased labor, equipment, and supply expenditures; and costs and lost profits from the inability to perform contracted pollination services. Their losses are not insured or insurable. On a personal level, they have suffered from increased workload to address bee kills and poor bee health, and personal stress and anxiety from seeing the valuable animals in their care die, as well as being compelled to pursue enforcement actions with government agencies about their farmer neighbors, and other damages. The relief sought in this case will provide redress for their ongoing harms and aid in preventing additional future damages from clothianidin and thiamethoxam, which are expected to worsen in the future absent change.

//

//

*Public Interest Group Plaintiffs*

21.     The interests of CFS, Beyond Pesticides, PANNA, and CEH (collectively Public Interest Group Plaintiffs) and their members are being, and will be, adversely affected by EPA's actions and inactions complained of herein. EPA's continued registrations of clothianidin and thiamethoxam products and failure to take regulatory actions to suspend or cancel such product registrations harm the interests of Public Interest Group Plaintiffs and Public Interest Group Plaintiffs' members. EPA's actions and inactions have, and will continue to have, an adverse effect on Public Interest Group Plaintiffs' missions and their members' conservation, environmental, recreational, aesthetic, and economic interests.

22.     Plaintiff CFS brings this action on behalf of itself and its members. CFS and its members are being, and will be, adversely affected by EPA's actions and inactions complained of herein. CFS is a Washington, D.C.-based, public interest, nonprofit membership organization that has offices in San Francisco, CA; Portland, OR; and Washington, D.C.

23.     Since CFS's founding in 1997, it has sought to ameliorate the adverse impacts of industrial farming and food production systems on human health, animal welfare, and the environment. CFS has over 280,000 members nationwide. CFS seeks to protect human health and the environment by advocating for thorough, science-based safety testing of new agricultural products prior to any marketing and cultivation of crops in a manner that minimizes negative impacts such as increased use of pesticides and evolution of resistant pests and weeds. A foundational part of CFS's mission is to further the public's fundamental right to know what is in their food and food production methods.

24.     Plaintiff Beyond Pesticides brings this action on behalf of itself and its members. Beyond Pesticides and its members are being, and will be, adversely affected by EPA's actions and inactions complained of herein. Based in Washington, D.C., Beyond Pesticides is a national nonprofit corporation that promotes safe air, water, land, and food, and works to protect public health and the environment by encouraging a transition away from the use of toxic pesticides.

25.     With Beyond Pesticides's resources made available to the public on a national scale, Beyond Pesticides contributes to a significant reduction in unnecessary pesticide use, thus improving protection of public health and the environment.

26.     Plaintiff Sierra Club brings this action on behalf of itself and its members. Sierra Club and its members are being, and will be, adversely affected by EPA's actions and inactions complained of herein. The Sierra Club is a national nonprofit organization of approximately 600,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club is a California nonprofit corporation headquartered in San Francisco, CA.

27.     The Sierra Club's concerns encompass endangered species, habitat protection, pollution, and industrial agriculture, all of which are involved in this case. The loss of bees and other beneficial insects, and the threats to native ecosystems and wildlife posed by neonicotinoid insecticides, harm the interests of the Sierra Club and its members.

28.     Plaintiff PANNA is an Oakland, California-based, nonprofit corporation that serves as an independent regional center of Pesticide Action Network International, a coalition of public interest organizations in more than ninety countries. For over thirty years, PANNA has worked to replace the use of hazardous pesticides with healthier, ecologically-sound pest management. PANNA provides scientific expertise, public education and access to pesticide data and analysis, policy development, and coalition support to more than 100 affiliated organizations in North America. PANNA has more than 70,000 members across the United States.

29.     PANNA's members live, work, and recreate in areas of the country where pesticides such as clothianidin and thiamethoxam are applied, and in which pesticide drift and transport occurs. They have a strong interest in ensuring that EPA protects public welfare and the environment from neonicotinoid contamination and a long history of advocacy to EPA on this issue.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

30.     Plaintiff CEH is a tax-exempt, nonprofit corporation with offices in Oakland, California; and New York, New York.  Founded in 1996, CEH is a nonprofit organization dedicated to protecting the public from environmental and public health hazards, including harmful pesticides.  CEH achieves its mission by working with communities, consumers, workers, government, and the private sector to demand and support business and agricultural practices that are safe for public health and the environment.

31.     As part of its mission, CEH and its staff have long been involved in efforts to combat the negative human health and environmental effects of pesticides and other harmful contaminants in our food system.  For example, CEH is a member of Californians for Pesticide Reform, an organization whose mission is to protect public health, improve environmental quality, and expand a sustainable and just agriculture system by seeking to change state and local pesticide policies and practices.  CEH's Research Director, Caroline Cox, serves on the California Department of Pesticide Regulation's Pest Management Advisory Committee and is a member of the Board of Beyond Pesticides.  When necessary, CEH also engages in public interest litigation to address the food safety concerns raised by the current regulatory framework and the negative impacts of unsafe products.  The interests of CEH and its members in reducing the harmful impacts stemming from pesticide use are being, and will be, adversely affected by EPA's ongoing registrations of clothianidin and thiamethoxam products.

32.     Public Interest Group Plaintiffs and their members are injured by EPA's actions and inactions complained of herein.  Public Interest Group Plaintiffs and their members have a vital interest in the survival and health of honey bees and other plant pollinators to ensure a nutritious and safe food supply and healthy natural ecosystems and gardens.  Each of the Plaintiffs has a strong interest in the conservation of the vast numbers of native ESA-listed species that are potentially impacted, directly and indirectly, by clothianidin and thiamethoxam. Several of the Plaintiffs and their members have personally visited the ranges of directly impacted ESA-listed invertebrates, including, but not limited to, listed plant pollinators, as well as other indirectly impacted ESA-listed species, including, but not limited to, rangeland birds.

1    They enjoy utilizing these species for recreational, aesthetic, and other uses, and intend to

2    continue to visit those habitats and enjoy those species and the ecosystem services they provide.

3         33.     EPA's failure to provide Plaintiffs with the FIFRA-mandated notices of

4    applications for the clothianidin and thiamethoxam registration and changed uses in the Federal

5    Register, and its failure to provide public comment periods, denied the Plaintiffs the ability to

6    submit information to EPA that may have convinced the agency not to issue those registrations

7    or change amendments.  Defendants' failure to adequately regulate clothianidin and

8    thiamethoxam under FIFRA and the ESA, and failure to provide adequate label warnings on

9    these pesticides, resulting in the ongoing collapse of populations of honey bees and other

10   beneficial insects and the continued harm to threatened and endangered species, further injure

11   Public Interest Group Plaintiffs' organizational interests as well as their members' aesthetic,

12   recreational, and economic interests. The relief sought in this case will provide redress for the

13   ongoing harm to Plaintiffs.

14   *Defendants*

15        34.     Defendant Steven P. Bradbury is the Director of the Office of Pesticide Programs

16   of EPA, and is being sued in his official capacity.

17        35.     Defendant Bob Perciasepe is the Acting Administrator and Deputy Administrator

18   of EPA, and is being sued in his official capacity.

19        36.     Defendants Bradbury and Perciasepe are collectively referred to as EPA or

20   Defendants.

21                            **STATUTORY BACKGROUND**

22   *Federal Insecticide, Fungicide, and Rodenticide Act*

23        37.     Under the FIFRA, EPA licenses the sale, distribution, and use of pesticides

24   through the process of registration. 7 U.S.C. § 136a. The Administrator is required to provide

25   public notice and comment opportunities under 7 U.S.C. § 136a(c)(4):

26        Notice of application.

27        The Administrator shall publish in the Federal Register, promptly after
         receipt of the statement and other data required pursuant to paragraphs (1)

28

and (2), a notice of each application for registration of any pesticide if it contains any new active ingredient or if it would entail a changed use pattern. The notice shall provide for a period of 30 days in which any Federal agency or any other interested person may comment.

38. EPA's FIFRA-implementing regulations also impose several procedural requirements, including, but not limited to, requiring publication of two classes of notices in the Federal Register. Under 40 C.F.R. § 152.102:

> The Agency will issue in the Federal Register a <u>notice of receipt of each application for registration</u> of a product that contains a new active ingredient or that proposes a new use. After registration of the product, the Agency will issue in the Federal Register a <u>notice of issuance</u>. The notice of issuance will describe the new chemical or new use, summarize the Agency's regulatory conclusions, list missing data and the conditions for their submission, and respond to comments received on the notice of application.

*Id.* (emphases added).

39. The FIFRA authorizes Defendants to register a pesticide product without any conditions (unconditional registration) if Defendants determine that the product "will perform its intended function without unreasonable adverse effects on the environment," and that "when used in accordance with widespread and commonly recognized practice" the pesticide "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C)-(D).

40. The FIFRA authorizes Defendants to register a pesticide product with conditions (conditional registration) if Defendants determine that the pesticide or proposed new use is so new that insufficient data exists to support unconditional registration under 7 U.S.C. § 136a(c)(5), provided that the registrants meet Defendants' conditions, and conduct and supply studies to fill the missing data gaps within a set timeframe. 7 U.S.C. § 136a(c)(7)(C). A conditional registration is authorized under three circumstances: 1) EPA may conditionally register a pesticide if "the pesticide and proposed use are identical or substantially similar to any currently registered pesticide and use thereof, or differ only in ways that would not significantly increase the risk of unreasonable adverse effects on the environment, and [] approving the registration . . . would not significantly increase the risk of any unreasonable adverse effect on the environment," 7 U.S.C. § 136a(c)(7)(A); 2) EPA may conditionally amend a pesticide's

1    registration "to permit additional uses of such pesticide notwithstanding that data concerning the

2    pesticide may be insufficient to support an unconditional amendment," 7 U.S.C. § 136a(c)(7)(B);

3    and 3) EPA may conditionally register a pesticide "containing an active ingredient not contained

4    in any currently registered pesticide <u>for a period reasonably sufficient for the generation and</u>

5    <u>submission of required data</u>" but "only if [EPA] determines that use of the pesticide during such

6    period will not cause any unreasonable adverse effect on the environment, and that use of the

7    pesticide is in the public interest," 7 U.S.C. § 136a(7)(C) (emphasis added).

8         41.    Under the FIFRA, a conditional registration may only last for a period

9    "reasonably sufficient" to generate the outstanding data necessary for unconditional registration.

10   7 U.S.C. § 136a(c)(7)(C).

11        42.    EPA has the authority to cancel a pesticide registration whenever "a pesticide or

12   its labeling . . . does not comply with the provisions of [the FIFRA] or, when used in accordance

13   with widespread and commonly recognized practice, generally causes unreasonable adverse

14   effects on the environment." 7 U.S.C. § 136d(b).

15        43.    EPA may immediately suspend a pesticide registration to prevent an "imminent

16   hazard." 7 U.S.C. § 136d(c).  The phrase "imminent hazard," as defined in the FIFRA, means a

17   situation "when the continued use of a pesticide during the time required for cancellation

18   proceeding would be likely to result in unreasonable adverse effects on the environment or will

19   involve unreasonable hazard to the survival of a species declared endangered" under the ESA.

20   7 U.S.C. § 136(l).

21        44.    If a registrant has failed to fulfill any condition imposed on the registration, the

22   Administrator "shall" initiate cancellation proceedings.  7 U.S.C. § 136d(e)(1).  While

23   cancellation is pending, EPA may suspend the registration of the pesticide or new use

24   immediately if an "imminent hazard" exists, that is, if "continued use of a pesticide during the

25   time required for cancellation proceeding would be likely to result in unreasonable adverse

26   effects on the environment or will involve unreasonable hazard to the survival of a species

27   declared endangered or threatened by the Secretary [of the Interior] pursuant to the Endangered

28   Species Act of 1973." 7 U.S.C. §§ 136d(c), 136(l).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

45.    The culmination of the registration process is EPA's approval of a label for the pesticide, including use directions and appropriate warnings on safety and environmental risks. It is a violation of the FIFRA for any person to sell or distribute a "misbranded" pesticide. 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded if the "labeling accompanying it does not contain directions for use which . . . if complied with . . . are adequate to protect health and the environment." 7 U.S.C. § 136(q)(1)(F).

46.    The FIFRA registrations for clothianidin and thiamethoxam products amount to licenses that establish the terms and conditions under which the products may be lawfully sold, distributed, or used. EPA retains the ongoing authority to modify the terms and conditions of these licenses as needed; thus, each pesticide registration constitutes an ongoing agency action. *See* 7 U.S.C. §§ 136d(c), 136(l).

47.    The legal burden of showing that any pesticide and any approved uses thereof meet the FIFRA criteria to be eligible for continued registration rests with the products' proponents. *See* 40 C.F.R. § 154.5. The proponents of clothianidin's and thiamethoxam's numerous uses have not met that burden.

***Endangered Species Act***

48.    The ESA requires EPA, in consultation with U.S. Fish and Wildlife Service (FWS), to ensure that any action authorized by the agency is not likely to jeopardize the continued existence of any threatened or endangered species, or result in the destruction or adverse modification of the critical habitat of such species. 16 U.S.C. § 1536(a)(2). For each federal action, EPA must request information from FWS indicating whether any listed or proposed species may be present in the area of the agency action. 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12. If listed or proposed species may be present, EPA must prepare a "biological assessment" to determine whether the listed species may be affected by the proposed action. 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12.

49.    If EPA determines that its proposed action may affect any listed species or critical habitat, the agency must engage in formal consultation with FWS. Effects determinations are based on the direct, indirect, and cumulative effects of the action when added to the

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   environmental baseline and other interrelated and interdependent actions. 50 C.F.R. § 402.02.

2   An agency is required to review its actions "at the earliest possible time" to determine whether

3   the action may affect listed species or critical habitat. 50 C.F.R. § 402.14(a). Because EPA

4   retains ongoing discretionary authority to modify the terms and conditions of its approvals, the

5   agency's continuing authority over pesticide registrations constitutes ongoing agency action and

6   it has a continuing obligation to follow the requirements of the ESA.

7        50.    To complete formal consultation, FWS must provide EPA with a "biological

8   opinion" explaining how the proposed action will affect the listed species or habitat. 16 U.S.C.

9   § 1536(b). If FWS concludes the proposed action will jeopardize the continued existence of a

10  listed species, the biological opinion must outline "reasonable and prudent alternatives."

11  16 U.S.C. § 1536(b)(3)(A). If the biological opinion concludes the action is not likely to

12  jeopardize the continued existence of a listed species, and will not result in the destruction or

13  adverse modification of critical habitat, FWS must provide an incidental "take" statement

14  specifying the impact of such incidental taking on the listed species and any "reasonable and

15  prudent measures" that FWS considers necessary or appropriate to minimize such impact, and

16  also setting forth the "terms and conditions" that must be complied with by EPA to implement

17  those measures. 16 U.S.C. § 1536(b)(4).

18       51.    "Take" is defined broadly to include actions that "harass, harm, pursue, hunt,

19  shoot, wound, [or] kill" a protected species, either through direct action or by degrading its

20  habitat. 16 U.S.C. § 1532(19); 50 C.F.R. § 17.3. In furtherance of Congress's goal to conserve

21  species, the ESA generally prohibits the "take" of any species listed as endangered, a prohibition

22  FWS has extended by regulation to threatened species. 16 U.S.C. § 1538(a)(1)(B); *see also* 16

23  U.S.C. § 1533(d); 50 C.F.R. § 17.31. However, take that complies with the terms and conditions

24  specified in a biological opinion is not prohibited. 16 U.S.C. § 1536(o)(2).

25       52.    During consultation with FWS, EPA is prohibited from making any irreversible or

26  irretrievable commitment of resources with respect to the agency action which may foreclose the

27  formulation or implementation of any reasonable and prudent alternative measures. 16 U.S.C.

28  § 1536(d).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

53.    Section 7 of the ESA also requires EPA, in consultation with and with the assistance of FWS, to utilize its authority in furtherance of the purposes of the ESA by carrying out programs for the conservation of endangered and threatened species.  16 U.S.C. § 1536(a)(1).

*Administrative Procedure Act*

54.    The APA provides for judicial review of final agency actions.  "Agency action" is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

55.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).

56.    Further, under the APA, a reviewing court has the authority to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

## STATEMENT OF FACTS

*Honey Bee Impact Facts*

57.    Clothianidin and thiamethoxam are systemic insecticides that are taken up by a plant's vascular system as it grows and are expressed through its tissues, including flowers, pollen, and nectar.  They share a common mode of action that damages the central nervous system of honey bees.  When bees forage on pollen or nectar from treated crops, or are otherwise exposed to even extremely small levels of these compounds, paralysis and death can result.  Over the past decade, the proliferating use of the neonicotinoid class of pesticides has coincided with mass die-offs of honey bee populations in the phenomenon known as Colony Collapse Disorder, documented as early as 2003–2004 in the United States, with first reported case findings in 2006.

58.    Clothianidin and thiamethoxam affect bee behavior and cognition in ways that compromise the overall health of colonies, often causing them to collapse.  Honey bees are social

insects that rely heavily on memory, cognition, and communication to coordinate activities essential for their survival. Chronic ingestion of neonicotinoids damages foraging behavior, overall mobility, and the communication by which they coordinate their activities. Neonicotinoid pesticides can also have several other indirect effects on honey bees, such as causing premature shifts in hive roles. They can impair honey bees' medium-term olfactory memory and associative learning abilities, which foraging honey bees rely on, *inter alia*, to find their way back to the hive.

59.     Neonicotinoid pesticides such as clothianidin and thiamethoxam persist in a toxic state in the environment for several years, increasing the risk of cumulative toxic loading effects, especially after repeat applications at the same location. No label warnings or use directions are capable of mitigating these impacts and those warnings and directions that do exist are almost never enforced. Farmers and other users are known to ignore them in many cases, yet enforcement cases by EPA and its cooperating state agencies are exceedingly rare.

60.     Due to EPA's actions and inactions alleged herein, clothianidin and thiamethoxam are spread widely throughout hundreds of millions of acres of both agricultural and neighboring lands. The neighboring lands are where these toxic compounds are not intended to be and often are lands not owned by the farmers applying the compounds. These lands adjacent to agricultural fields in many cases are prime remaining bee and native insect habitats. Due to the long persistence of these compounds and the uncontrollable drifting and blowing of contaminated dust and soil, bees and other insects are victims of multiple exposure pathways that EPA failed to assess when the agency approved the pesticides—and still has failed to assess. Key among these exposure pathways are residues in pollen and nectar, dust from treated seeds and soils, planter exhaust, untreated but contaminated non-crop plants adjacent to treated fields, contaminated puddles in fields and adjacent surface water, guttation droplets on both treated and untreated but contaminated plants, and residues from foliar uses.

61.     EPA's own scientists have regularly described severe impacts of these insecticides in their internal risk assessments. Recent studies, including those by the U.S. Department of Agriculture (USDA)'s lead bee scientists, also confirm that neonicotinoids

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1  interact with common bee pathogens and parasites, making them more vulnerable to the deadly

2  effects of both, leading to further colony collapse.  Numerous recent peer-reviewed studies and

3  other evidence of both acute and sub-lethal harm to bees from a variety of exposure pathways

4  across diverse agricultural landscapes support the need to suspend the uses of clothianidin and

5  thiamethoxam.

6      62.    Other nations, including Austria, Italy, France, Germany, and Slovenia, have

7  recognized the imminent harm of seed treatment uses of clothianidin and thiamethoxam and

8  suspended or restricted those uses, which then generally allowed honey bee colonies to thrive

9  after those suspensions.  EPA has failed to take this new science into account in deciding

10  whether an "imminent hazard" exists and with respect to labeling and to impacts on federally-

11  listed threatened and endangered species under the ESA.

12      63.    EPA has maintained the active registrations of clothianidin and thiamethoxam

13  despite known risks and data gaps.  The European Food Safety Authority has recently issued

14  authoritative reports that confirm that clothianidin and thiamethoxam products present acute

15  risks to honey bee survival, risks that the European Food Safety Authority characterized as

16  having been underestimated and inadequately researched by national pesticide regulators.  A

17  high acute risk to honey bees was identified from exposure via dust drift for the authorized uses

18  in cereals and cotton (thiamethoxam), corn and canola (thiamethoxam and clothianidin), cereals

19  (clothianidin), and sunflowers (thiamethoxam—except for uses with the lowest application rate

20  authorised in the European Union).  A high acute risk was also identified for exposure via

21  residues in nectar and/or pollen for the authorized uses in canola (clothianidin), and corn

22  (thiamethoxam).  Other risks and major data gaps were identified.  The same risks and data gaps

23  exist in the United States.

24      64.    EPA has suggested non-mandatory best management practices (BMPs) that it

25  might promote to reduce the unreasonable adverse environmental effects of thiamethoxam and

26  clothianidin.  However, EPA lacks authority to mandate adherence to all of the needed

27  technological fixes and BMPs.  EPA officials have publicly stated they lack comprehensive

28  enforcement power under the FIFRA to prevent farmers from killing bees and other pollinators

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   via the contaminated dust pathway associated with planting treated seeds. Even if they had such

2   authority, the time lag for the hundreds of thousands of users of clothianidin and thiamethoxam

3   products to be able to comply is such that the unreasonable adverse environmental effects would

4   continue for many years unless use of these products is suspended in the interim. EPA's

5   suggested non-mandatory BMPs are inadequate for purpose of compliance with the FIFRA and

6   the ESA.

7       65.    As a result, clothianidin- and thiamethoxam-treated seeds will continue to be

8   planted across hundreds of millions of acres in 2013 and beyond. To date, EPA has provided no

9   formal direction or label changes to farmers on how to minimize non-target effects, how and

10  where to clean out crop planters, or what steps to take to avoid effects to nearby honey bees or

11  insect-pollinated plants. In short, the imminent hazard the Defendants have allowed will

12  re-initiate in about April 2013, when corn and other crop planting season begins again.

13  *Non-Honey Bee Impact Facts*

14      66.    Besides honey bees, there are thousands of other U.S. native bee and other insect

15  species that EPA has a duty to conserve, including, but not limited to, the rusty patched bumble

16  bee, Franklin's bumble bee, yellow-banded bumble bee, and Western bumble bee, as well as

17  non-bee insects such as butterflies, ladybugs and lacewings, dragonflies, and hoverflies. Several

18  of these species are facing severe declines comparable to, or worse than, those faced by honey

19  bees. Clothianidin and thiamethoxam are documented to be highly toxic to other bee species like

20  the common Eastern bumble bee, alfalfa leafcutter bee, and blue orchard bee, all of which are

21  valuable plant pollinators. There are numerous other beneficial insects and other invertebrates

22  that are severely impacted by use of clothianidin and thiamethoxam. Broad recognition exists,

23  including by EPA, that inadequate data exists to assess the impacts of clothianidin and

24  thiamethoxam use on the behavior, reproduction and survival of these vital pollinators and insect

25  species.

26      67.    The agency's continuing authority over conditional pesticide registrations

27  constitutes ongoing action and it has violated its continuing obligation to follow the requirements

28  of the ESA. EPA has never done a thorough effects analysis of the numerous thiamethoxam or

COMPLAINT FOR DECLARATORY & INJUNCTION RELIEF

clothianidin uses it has approved for any federally-listed threatened and endangered species under the ESA, and EPA similarly has failed to assess potential adverse modification of designated critical habitat.  It also has failed to consult as required with FWS under the ESA. More than fifteen threatened or endangered insects, including, but not limited to, plant pollinators, ranging from beetles to butterflies to grasshoppers and other taxa, are potentially directly affected by the use of clothianidin and thiamethoxam products.  These include, but are not limited to (followed by their listing dates; the vast majority were listed prior to the dates of EPA's actions at issue in this Complaint):

| | |
|---|---|
| American burying beetle (*Nicrophorus americanus*) | 07/13/1989 |
| Behren's fritillary (*Speyeria zerene behrensii*) | 12/05/1997 |
| Callippe silverspot (*Speyeria callippe callippe*) | 12/05/1997 |
| Delhi Sands flower-loving fly (*Rhaphiomidas terminatus abdominalis*) | 09/23/1993 |
| Fender's blue (*Icaricia icarioides fenderi*) | 01/25/2000 |
| Hine's emerald dragonfly (*Somatochlora hineana*) | 01/26/1995 |
| Karner blue (*Plebejus melissa samuelis*) | 12/14/1992 |
| Kern primrose sphinx moth (*Euproserpinus euterpe*) | 04/08/1980 |
| Lange's metalmark (*Apodemia mormo langei*) | 06/01/1976 |
| Mitchell's satyr butterfly (*Neonympha mitchellii mitchelli*) | 05/20/1992 |
| Myrtle's silverspot (*Speyeria zerene myrtleae*) | 06/22/1992 |
| Northeastern beach tiger beetle (*Cicindela dorsalis dorsalis*) | 08/07/1990 |
| Ohlone tiger beetle (*Cicindela ohlone*) | 10/03/2001 |
| Quino checkerspot butterfly (*Euphydryas editha quino*) | 01/16/1997 |
| Salt Creek tiger beetle (*Cicindela nevadica lincolniana*) | 10/06/2005 |
| San Bruno elfin (*Callophrys mossii bayensis*) | 06/01/1976 |
| Schaus swallowtail (*Papilio aristodemus ponceanus*) | listed as threatened 4/22/1975; as endangered 8/31/1984 |
| Zayante band-winged grasshopper (*Trimerotropis infantilis*) | 01/24/1997 |

68.     More insect species are regularly listed and numerous "Candidate" species await further action, including native bees.

69.     Harmful direct, indirect, and cumulative effects on many other non-insect ESA-listed species, including, but not limited to, birds, crustaceans, mollusks, fish, mammals,

1    reptiles, and amphibians, are also foreseeable due to the known effects of clothianidin and

2    thiamethoxam. Listed species may be affected by direct consumption of clothianidin- and

3    thiamethoxam-treated seeds and plant parts, as well as by food chain and ecosystem collapses

4    associated with the vast mortality caused by these pesticides to aquatic and terrestrial

5    invertebrates. EPA has not made the required "effects" determinations or consulted with FWS

6    for any listed species or their critical habitats.

7        70.    In its initial conditional registration of clothianidin, EPA recognized that

8    compliance with the ESA is necessary:

9        Clothianidin is expected to present acute and/or chronic toxicity risk to
         endangered/threatened birds and mammals via possible ingestion of treated corn
10       and canola seeds. Endangered/threatened non-target insects may be impacted via
         residue laden pollen and nectar. The potential use sites cover the entire U.S.
11       because corn is grown in almost all U.S. states.[8]

12   EPA has made the same admissions in its thiamethoxam documentation.[9]

13       71.    For at least one neonicotinoid insecticide, FWS scientists are on record stating

14   "EPA is ignoring their duties with respect to consulting with FWS."[10] This is in fact true for all

15   thiamethoxam and clothianidin product use approvals subject to this Action. According to EPA

16   documents, there are hundreds of federally-listed threatened and endangered species occurrences

17   in states where clothianidin and thiamethoxam are used in which direct or indirect effects are

18   foreseeable, but EPA has disregarded those effects determinations with respect to the ESA § 7

19   consultation requirements.

20       72.    In March 2013, the American Bird Conservancy of Washington, D.C., released a

21   highly relevant scientific report, *The Impact of the Nation's Most Widely Used Insecticides on*

22

23   [8] EPA, Pesticide Fact Sheet: Clothianidin, Conditional Registration 16 (May 30, 2003), *available
     at* http://www.epa.gov/opp00001/chem_search/reg_actions/registration/fs_PC-044309_30-May-
24   03.pdf.
     [9] *See, e.g.,* EPA, Thiamethoxam Summary Document Registration Review: Initial Docket 5
25   (Dec. 2011), *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-2011-
     0581-0002.
26   [10] E-mail from Ken Dickerson, Environmental Contaminants Biologist, FWS, to Nancy Golden,
27   FWS, regarding initiating informal consultation on rodenticide new uses (Jan. 3, 2012) (on file
     with Plaintiffs).
28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

*Birds.*[11] It was researched and written by a recognized independent avian toxicologist, Pierre Mineau, Ph.D. In the report, Dr. Mineau examines the key EPA risk assessment documents and finds numerous critical errors and failures related to risks to birds in the agency's approvals of clothianidin and thiamethoxam products. The report shows high direct and indirect mortality risks to a broad suite of birds, as well as to aquatic invertebrates and to ecosystems generally. It finds that the observed acute threats to aquatic invertebrates from water contamination by EPA-approved neonicotinoids "may be totally unprecedented in the history of pesticide registration." *Id.* at 57. It also states: "Simply put, EPA has not been heeding the warnings of its own toxicologists." *Id.* at 65. In the report, Dr. Mineau also examines the EPA-approved product labels and finds them inadequate to address the risks to birds. It states: "regulators are clearly mistaken in believing that exposure to [neonicotinoid] treated seed can be minimized by label statements or adherence to good agricultural practices." *Id.* at 27. The report describes EPA's analysis of avian risks as "scientifically unsound," arbitrary, and capricious. It urges, *inter alia*, the agency to suspend use of these products until the risks are resolved and to ban seed treatments altogether.

73. Prominent scientists have repeatedly identified neonicotinoid insecticides as a major factor in Colony Collapse Disorder, and other forms of excessive bee mortality, and have urged that they be suspended due to their acute, chronic, and synergistic effects. Economic losses from the collapse of U.S. bee colonies used in agriculture would measure in the several tens of billions of dollars. The ecological, agricultural, landscaping, and horticultural impacts of lost wild and managed pollinators would be devastating and perhaps irreparable.

*Procedural Background Facts*

74. Since 2000 and 2003, respectively, EPA has registered approximately more than 100 total thiamethoxam and clothianidin insecticide uses and products under FIFRA. *See*

---

[11] Dr. Pierre Mineau and Cynthia Palmer, Am. Bird Conservancy, *The Impact of the Nation's Most Widely Used Insecticides on Birds* (Mar. 2013), *available at* http://www.abcbirds.org/abcprograms/policy/toxins/Neonic_FINAL.pdf.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

23

1   Appendices A and B.  On information and belief, these are as indicated in Appendix A –
2   Clothianidin (thirty-five products) and B – Thiamethoxam (sixty-eight products), which are
3   incorporated into this Complaint by this reference.  Other registrations are believed to exist;
4   however, due to EPA's failure to publish required notices in the Federal Register, there is a lack
5   of accurate and clear public record.  On information and belief, for the vast majority of
6   clothianidin and thiamethoxam registrations and changed use approvals, EPA did not, as required
7   under the FIFRA, 7 U.S.C. § 136a(c)(4) and 40 C.F.R. § 152.102, announce a "notice of receipt
8   of application" or a "notice of issuance" in the Federal Register or in any other public order or
9   hearing.

10          75.     Additionally, on information and belief, for each of the thiamethoxam and
11   clothianidin insecticide uses and products, EPA failed this requirement under the FIFRA: "within
12   30 days after the Administrator registers a pesticide under this Act the Administrator shall make
13   available to the public the data called for in the registration statement."  7 C.F.R.
14   § 136a(c)(2)(A).

15          76.     Together with a coalition of beekeepers and public interest groups, Plaintiffs
16   Beyond Pesticides and PANNA delivered a letter to Defendants dated December 8, 2010,
17   requesting suspension of clothianidin's registration due to inadequate data on impacts to
18   pollinators and excessive agency delay in ensuring compliance with that condition.[12]  By letter of
19   February 18, 2011, Defendants refused that suspension request.[13]

20          77.     Plaintiffs CFS, Beyond Pesticides, PANNA, Steve Ellis, and Tom Theobald,
21   along with a coalition of beekeepers and honey producers, and public interest groups, submitted
22   the Clothianidin Legal Petition to EPA to suspend the registration of clothianidin on March 20,
23   2012 (Docket No. EPA-HQ-OPP-2012-0334), rooted in the nine-year unreasonable delay in
24   ensuring full compliance with the "conditional registration" conditions for clothianidin.[14]  They

25

26   _____
     [12] *See* Letter from Beyond Pesticide *et al.*, *supra* note 1.
27   [13] *See* Letter from Steven Bradbury, *supra* note 2.
     [14] *See* Clothianidin Legal Petition, *supra* note 3.
28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
                                                                                        24

1   followed that Petition with two supplemental filings, dated May 3, 2012, and June 18, 2012,

2   respectively.[15]  These consisted of information that came to light after the Petition was filed,

3   including critical new data on how certain uses of clothianidin constitute an "imminent hazard"

4   to honey bees and other beneficial insects that compelled a decision to promptly suspend

5   clothianidin's registration.

6       78.     By letter dated July 17, 2012, Defendants denied the portion of the Petition that

7   alleged an "imminent hazard" existed.[16]  That letter indicated EPA did not consider the May 3,

8   2012 and June 18, 2012 supplemental filings in making that decision.  To date, the agency has

9   yet to issue a decision based on the supplemental evidence showing imminent hazard or on any

10  of the other new science and extensive mass honey bee kill data that emerged after the Petition

11  was filed.

12      79.     Defendant Bradbury's letter of July 17, 2012, stated his denial of the imminent

13  hazard claim in the Petition was EPA's "final action pursuant to section 16 of FIFRA" with

14  respect to that claim.  There was no Federal Register notice, no public hearing, and no

15  opportunity for notice and comment prior to this final action.  The EPA has yet to resolve any of

16  the remaining claims in the Petition or to reconsider its denial of an "imminent hazard" based on

17  the full administrative record before it.

18      80.     The evidence Plaintiffs provided in the Clothianidin Legal Petition and in their

19  supplemental filings described an "unreasonable adverse effect on the environment" in terms of

20  a vast number of bee kills impacting likely many hundreds of U.S. (and Canadian) colonies and

21  tens of millions of valuable honey bees.  These acute bee kills that were ongoing during EPA's

22  decision-making period on the Petition are in addition to the chronic impacts of clothianidin that

23  fall under the rubric of Colony Collapse Disorder.  EPA's July 17, 2012 letter admitted the

24  agency did not consider the ongoing bee kills associated with spring corn planting or any other

25

26  [15] On file with Plaintiff CFS; *see* Docket No. EPA-HQ-OPP-2012-0334, *available at*

27  http://www.regulations.gov/#!docketDetail;D=EPA-HQ-OPP-2012-0334.
    [16] *See* Letter from Steven Bradbury, *supra* note 4.

28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF                                          25

1   information received after May 3, 2012, including the numerous clothianidin-related bee kills

2   during the ten weeks between May 3, 2012 and July 17, 2012.

3        81.    Additionally, EPA's response letter and related documentation showed the agency

4   did not conduct any analysis of clothianidin's effects on endangered or threatened species and

5   failed to consult with FWS regarding its final agency action denying an imminent hazard.

6        82.    Virtually all the information Plaintiffs have filed with respect to the various risks

7   of clothianidin also apply to its precursor compound, the very similar insecticide thiamethoxam.

8   The former is a transformation product of the latter.  In honey bees, thiamethoxam is

9   metabolized into clothianidin.  In short, the two are closely related with comparable applications,

10   toxicity, and effects.

11        83.    On October 16, 2012, Plaintiffs CFS, Beyond Pesticides, and Steve Ellis delivered

12   a letter to Defendants on thiamethoxam, setting forth how that compound raises risks that are

13   essentially equivalent to the risks of clothianidin and seeking a suspension of its registration as

14   well.[17]  That letter cited to new evidence about the dangers of thiamethoxam, including direct

15   bee kills suffered by Plaintiff Steve Ellis that EPA itself attributed to thiamethoxam and/or

16   clothianidin in an official Incident Report.  While EPA acknowledged receipt of the letter, by a

17   response letter to CFS dated February 27, 2013, EPA has refused that suspension request also.[18]

18        84.    On September 6, 2012, Plaintiffs CFS, Beyond Pesticides, the Sierra Club, Steve

19   Ellis, and Tom Theobald filed a "Sixty-Day Notice of Intent to Sue Pursuant to the Endangered

20   Species Act regarding Registration and Use Approvals of Clothianidin and Thiamethoxam,

21   Neonicotinoid Insecticides," with Defendant Perciasepe's predecessor (Lisa Jackson) and Ken

22   Salazar, the former Secretary of the Interior, U.S. Department of the Interior.[19]  More than sixty

23   days have passed since the Sixty-Day Notice Letter, which sought suspension of the registrations

24   involved, and neither EPA nor the Department of the Interior has responded or resolved the

25

---

26   [17] See Letter from Plaintiffs, *supra* note 5.

27   [18] See Letter from EPA, *supra* note 6.

28   [19] See Sixty-Day Notice Letter, *supra* note 7.

ongoing ESA violation concerns raised in the Sixty-Day Notice Letter.

***EPA Registration Process Facts***

85.     Ten years ago, in February 2003, EPA issued a Risk Assessment for clothianidin seed treatment for corn and canola.[20] EPA scientists raised serious concerns about the compound and called for a field test evaluating its environmental hazards prior to registration, specifically citing harm to pollinators:

> The possibility of toxic exposure to nontarget pollinators through the translocation of clothianidin residues that result from seed treatment (corn and canola) has prompted EFED [the EPA Environmental Fate and Effects Division] to require field testing that can evaluate the possible chronic exposure to honey bee larvae and queen. In order to fully evaluate the possibility of this toxic effect, a complete worker bee life cycle study must be conducted, as well as an evaluation of exposure and effects to the queen.[21]

86.     Less than two months later, in its Addendum to the Risk Assessment in April 2003, EPA reversed this position, recommending conditional registration while the registrant arranged for the required chronic exposure study. In contrast to its prior memorandum, EPA decided it would allow the nationwide sale and use of clothianidin while the registrant arranged for the study necessary to determine whether its decision would be a grave mistake. EPA provided no reason for its reversal; however, the second memorandum confirmed that EPA determined a study evaluating the long term toxicity to pollinators was necessary as a condition for registration. To date, for clothianidin, the requirement of a complete and adequate life cycle study, and evaluation of exposure and effects to the queen bee, remains unmet. This also applies in the case of thiamethoxam, as EPA's pollinator field test conditions for it incorporated and mirrored the conditions imposed for clothianidin.

87.     On June 20, 2012, without a hearing, EPA issued a conditional registration to Syngenta Crop Protection for CruiserMaxx Vibrance Cereals, produced from thiamethoxam.

---

[20] Memorandum: Risk Assessment for the Seed Treatment of Clothianidin 600FS on Corn and Canola, PC Code 044309, EPA Environmental Fate and Effects Division 2 (Feb. 20, 2003), *available at* http://www.epa.gov/pesticides/chem_search/cleared_reviews/csr_PC-044309_20-Feb-03_a.pdf.

[21] *Id.* at 2.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

The approval document states:

> Field Test for Pollinators (test guideline 850[.]3040)[:] An acceptable study must be submitted or cited no later than the time this study is required to be submitted or cited for current thiamethoxam registrations.[22]

88.     This is a vague condition in violation of the FIFRA's conditional registration requirements because it neither sets nor refers to any limited time period for submitting the pollinator field test study originally required nine years prior. It refers to an alleged "<u>time this study is required to be submitted or cited for current thiamethoxam registrations</u>" when there is no defined period to satisfy the pollinator study condition for the other thiamethoxam registrations.[23] EPA's language violates the FIFRA requirement that periods for compliance with conditions must be "limited" and is vague, unenforceable, and arbitrary and capricious. On information and belief, numerous other thiamethoxam and clothianidin use approvals have the same defects.

89.     In the case of clothianidin's approval for use on corn and canola, since 2003, at least the following additional conditions based on data gaps, beyond the field test for pollinators, have remained unsatisfied, according to the most recent EPA records available to Plaintiffs: a) Whole Sediment Acute Toxicity Invertebrates, Freshwater; b) Whole Sediment Acute Toxicity Invertebrates, Estuarine and Marine; c) Aerobic Aquatic Metabolism; d) Seed Leaching Study; and e) Small-Scale Prospective Groundwater Monitoring Study. Numerous other conditions and data gaps also remain unsatisfied. The records are less clear for thiamethoxam, but the same defects appear to exist as for clothianidin. Some of these conditions were to have been met within three years after being first imposed in 2003 for clothianidin, and two years after being first imposed in 2000 for thiamethoxam. Those clothianidin conditions thus are still not met—up to seven years after their deadline, and the thiamethoxam conditions are still not met—up to eleven years after their deadline.

---

[22] EPA, Notice of Pesticide Registration, June 20, 2012, *available at* http://www.epa.gov/pesticides/chem_search/ppls/000100-01383-20120620.pdf
[23] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

90.     Ten years exceeds the amount of time reasonably sufficient to generate the data needed to satisfy the conditions imposed on the variety of clothianidin and thiamethoxam products in Appendices A and B, and for EPA to decide the registrations must be suspended until the conditions are satisfied. *See* 7 U.S.C. § 136a(c)(7)(A).  Delays of seven to eleven years in meeting EPA-imposed deadlines are unreasonable and violate FIFRA's conditional registration requirements.

91.     EPA's Registration Review process for thiamethoxam recognizes that, twelve years after it first approved uses of this compound, the agency still lacks vital information about its environmental effects.  The EPA Registration Review "Thiamethoxam Final Work Plan" admits the environmental fate database is "only partially fulfilled and several ecological effects data gaps were also identified." [24] It then lists at least twenty-five tests, studies, and other data requirements that must be fulfilled, including, but not limited to, such basic information as:

    850.2100 – Avian oral toxicity with a passerine
    850.3030 – Honey bee toxicity of residues on foliage study
    850.3040 – Field test for pollinators
    850.1735 – Whole sediment acute toxicity invertebrates, freshwater
    Special Study – Larval toxicity study (honey bee)
    Special Study – Residues, pollen and nectar
    Special Study – Laboratory (chronic) pollinator feeding study (honey bee)[25]

92.     The Registration Review documents for clothianidin show substantially identical information gaps.  The minimum level of knowledge required under the conditional registration provisions of the FIFRA to protect honey bees, other beneficial insects, and ecosystems generally, from unreasonable adverse effects caused by these two insecticides, does not exist.

93.     EPA's Registration Review process aims for the year 2018, per the agency's current schedule, before making a decision on the appropriateness of thiamethoxam's and clothianidin's continuing registrations.  Several Plaintiffs have formally commented on the

---

[24] EPA, Thiamethoxam Final Work Plan for Registration Review, June 2012, *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-2011-0581-0024.
[25] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

29

1  dockets for these reviews, stating the schedule is unreasonably slow and inadequate in light of

2  known risks, and urging EPA to commit to completing the reviews no later than 2013, but EPA

3  has refused.  EPA has provided no indication that it will fully decide on the pending Clothianidin

4  Legal Petition to suspend clothianidin's registration prior to 2018.

5       94.     Instead, EPA has continued to allow the sale and use of multiple clothianidin and

6  thiamethoxam products even though the registrants failed to satisfy essential registration

7  conditions imposed as early as 2003 that are necessary to support the required "no unreasonable

8  adverse effects on the environment" determination.  These conditions are not limited to

9  pollinator field tests; however, the failure to obtain an adequate field test of the impacts of

10  clothianidin or thiamethoxam likely is the most serious source of EPA's injury to Plaintiffs.

11       95.     Available EPA records as of November 2012, indicated approximately eleven

12  "pending" outdoor use approvals for clothianidin and thiamethoxam.  On information and belief,

13  these include the following registration numbers and names, but others may exist:

14      <u>Clothianidin</u>
    #73049-UIE – VBC3
15      #73049-UOR – Clothianidin 7.5 MC
16      #08NC01 – [unnamed]
    <u>Thiamethoxam</u>
17      #100-RUER – A16901B CP
    #100-RUEE – Mainspring Insecticide
18      #100-RUEU – A16901B Turf
19      #100-RUUU – CruiserMAXX Potato Extreme
    #100-RULT – Avicta Complete Beans 500
20      #100-RULI – Endigo ZCX
    #100-RULO – SYT0113
21      #100-RUAN – SYT0511

22       96.     The agency is likely to approve all of these proposed future uses under its

23  conditional registration review process.  7 U.S.C. § 136a(c)(7).  They present the same general

24  risks to Plaintiffs and the environment and the same FIFRA and ESA violations as the already-

25  approved uses.

26  //

27  //

28  //

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

### FIRST CLAIM

*EPA's Denial of Imminent Hazard Violated the APA*

97.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 96, as though fully alleged herein.

98.     EPA's final agency action, in denying an "imminent hazard" existed in response to Plaintiffs' Clothianidin Legal Petition, failed to consider any of Plaintiffs' supplemental filings, the bee kills associated with spring corn planting, or any other information it received after May 3, 2012.  Ignoring this information available to the agency, including the hundreds of ongoing clothianidin-related bee kills during the ten week period between May 3 and July 17, 2012, when EPA issued its decision, was arbitrary and capricious.  *See* 5 U.S.C. § 706(2).

99.     The agency did not fully consider the likelihood of an imminent hazard recurring during the time required for a cancellation or change in classification proceeding, under 7 U.S.C. § 136d(c)(1).  The time for such a proceeding is likely up to two years. It is foreseeable that hundreds of additional bee kills will be suffered by Plaintiffs and others in the 2013 and 2014 spring planting seasons because of EPA's failure to respond based on the full 2012 spring bee kill information.  EPA's arbitrary and capricious actions violated the APA, and its failure to reconsider its imminent hazard determination to date, approximately one year after the Petition was filed, in view of the risks presented, constitutes unreasonable delay under the APA.  *See* 5 U.S.C. § 706(1).

100.    EPA's denial of "imminent hazard" has damaged Plaintiffs.  EPA has allowed clothianidin products that are harmful to Plaintiffs to be used that EPA should have suspended; in particular, EPA has allowed the continued use of clothianidin seed treatment products that foreseeably will damage the survival of the Beekeeper and Honey Producers' bees during 2013 and 2014.

### SECOND CLAIM

*EPA's Denial of Imminent Hazard Violated the ESA and the APA*

101.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 100, as though fully alleged herein.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

102. EPA was arbitrary and capricious in its determination that no imminent hazard existed to endangered or threatened species, in violation of the ESA and the APA. The FIFRA's definition of imminent hazard includes whether the pesticide "involves unreasonable hazard to the survival of a species declared endangered or threatened by the Secretary [of the Interior] pursuant to the [ESA]." 7 U.S.C. § 136(l). EPA failed to prepare the required effects analysis or to consult with FWS regarding impacts on endangered or threatened species in its final agency action denying an imminent hazard.

103. The agency's continuing authority over conditional and unconditional clothianidin product registrations constitutes ongoing action, and it has violated its continuing obligation to consider effects on endangered species in considering whether an imminent hazard exists. New scientific information, including the supplemental bee kill data and other scientific information submitted by Petitioner Plaintiffs that EPA failed to consider, shows effects of clothianidin on invertebrates and ecosystems and compels an ESA effects determination and consultation with FWS. EPA's failure to consider effects on endangered species or consult FWS was arbitrary and capricious.

104. EPA's actions and inactions violated § 7(a) of the ESA and were arbitrary and capricious actions under the APA. 5 U.S.C. § 706(2). EPA allowed clothianidin products that are harmful to endangered and threatened species to continue to be used, which EPA should have suspended, and damaged Plaintiffs' interest in avoiding jeopardy to the survival of ESA-listed species and preventing adverse modification of their designated critical habitats.

### THIRD CLAIM

*EPA's Failure to Publish Notices of Pesticide Applications Violated the FIFRA and the APA*

105. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 104, as though fully alleged herein.

106. For the vast majority of clothianidin and thiamethoxam registrations and changed use approvals, EPA did not, as required, announce a "notice of receipt of application" or a "notice of issuance" in the Federal Register or in any other public order or hearing.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

32

107.     As indicated in Appendices A and B, on information and belief, only four clothianidin registrations and five thiamethoxam registrations had any Federal Register notice of application and none had a notice of issuance.  Thus, the vast majority of approvals lacked the public notice and opportunity for public comment required under 7 U.S.C. § 136a(c)(4) and 40 C.F.R. § 152.102.  On information and belief, for each of the thiamethoxam and clothianidin insecticide uses and products, EPA also failed to meet this requirement: "within 30 days after the Administrator registers a pesticide under this Act the Administrator shall make available to the public the data called for in the registration statement."  7 U.S.C. § 136a(c)(2)(A).

108.     EPA's failure to provide Plaintiffs with the FIFRA-mandated notices of application and issuance for the clothianidin and thiamethoxam registrations and changed uses in the Federal Register, its denial of public comment opportunities, and its failure to make its registration data available to the public within thirty days, denied Plaintiffs and the public the ability to submit information to EPA that may have convinced the agency not to issue those approvals in the first instance or to cancel them after they were issued.  This has allowed the uses of products that cause unreasonable adverse effects and are harmful to Plaintiffs.

109.     EPA's failure to publish the Federal Register notices as required under 7 U.S.C. § 136a(c)(4) and 40 C.F.R. § 152.102, or to provide data required under 7 C.F.R. § 136a(2)(A), establishes that these pesticide products were approved "without observance of procedure required by law," in violation of the APA.  5 U.S.C. § 706(2)(D).

## FOURTH CLAIM

### *EPA Violated the FIFRA Conditional Registration Requirements and the APA for Conditionally-Registered Products*

110.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109, as though fully alleged herein.

111.     On information and belief, of the more than one hundred registered uses of clothianidin and thiamethoxam, identified in Appendices A and B, approximately seventy-seven approvals are still registered as "conditional" (approximately fifty-four thiamethoxam products and twenty-three clothianidin products).  A reasonable time for the conditions on these product

1   registrations to be met, including but not limited to the adequate pollinator field study condition,

2   has long passed.  EPA has been arbitrary and capricious and violated the FIFRA's conditional

3   registration provisions, which require compliance with conditions imposed within a limited,

4   reasonable period.  The FIFRA language is mandatory, providing EPA "<u>shall</u> issue a notice of

5   intent to cancel a [conditional] registration . . . if . . . at the end of the period provided for

6   satisfaction of any condition imposed, that condition has not been met." 7 U.S.C. § 136d(e)(1)

7   (emphasis added).  EPA's own regulations are clear that the time for compliance is limited. *See*

8   40 C.F.R. § 152.114-115.  The EPA-imposed deadlines for meeting the conditions of three years

9   for clothianidin's initial conditions and two years for thiamethoxam's initial conditions, on

10  information and belief, have been violated.  On information and belief, EPA has unreasonably

11  delayed for up to eleven years in some cases and failed to issue any such notice for these

12  approximately seventy-seven conditional registrations.  EPA has allowed impermissibly vague

13  conditions for conditional registrations that neither state nor refer to a limited time period for

14  achievement.  In some cases EPA has, without a hearing, placed the conditions, such as the

15  pollinator field test study, "in reserve," with no time period for achieving them, which violates

16  the conditional registration requirements.  Repeated formal requests from the Plaintiffs that the

17  Defendants ensure compliance with the conditions has been unlawfully withheld and

18  unreasonably delayed, in violation of the FIFRA, 7 U.S.C. § 136a(c)(7), and the APA, 5 U.S.C. §

19  706(1).

20      112.   EPA's actions and inactions have damaged Plaintiffs.  EPA's failure to timely

21  ensure compliance with the conditions it imposed has allowed clothianidin and thiamethoxam

22  products that cause unreasonable adverse effects and are harmful to Plaintiffs to continue to be

23  used, products that EPA should have suspended.

24  ### FIFTH CLAIM

25  *EPA Violated the FIFRA Requirements and the APA for Unconditionally-Registered Products*

26      113.   Plaintiffs reallege and incorporate by reference Paragraphs 1 through 112, as

27  though fully alleged herein.

28

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

114.    EPA has unconditionally registered numerous clothianidin and thiamethoxam products despite missing data gaps on the two pesticides.  EPA's classification of these pesticide products as unconditional, despite outstanding data gaps and conditions, violates the FIFRA's provisions for unconditional registration.  *Compare* 7 U.S.C. § 136a(c)(5) *with* 7 U.S.C. § 136a(c)(7).

115.    For example, on April 22, 2010, without a hearing, EPA notified Valent U.S.A. Corporation that its Clothianidin Technical product, which is the foundation for clothianidin formulations and was previously conditionally registered, was reclassified to <u>un</u>conditional.  On information and belief, numerous other clothianidin and thiamethoxam product uses were similarly reclassified.  For Clothianidin Technical and all other products whose registrations are no longer conditional, the removal or lifting of the conditions was arbitrary and capricious and in violation of the FIFRA's conditional registration provisions because the conditions were not fully met before they were removed.

116.    On information and belief, the twenty-one products classified as <u>un</u>conditional despite the failure of the registrations to meet supply data gaps and meet missing conditions on clothianidin and thiamethoxam products include at least the following registration numbers and names:

<u>Clothianidin (14)</u>
# 264-984 – Titan FL
# 264-1121 – Prosper Evergol
# 264-1125 – Emesto Quantum
# 59639-153 – V-10170 16 WSG insecticide
# 59639-156 – Arena 0.5 G
# 59639-173 – V-10170 0.25 G insecticide
# 59639-176 – Inovate seed protectant
# 59639-183 – Nipsit suite cereals of seed protectant
# 59639-184 – Nipsit suite canola seed protectant
# 59639-187 – Inovate neutral seed protectant
# 72155-96 – Insecticide TD Granule
# 73049-467 – Darlex insecticide
# FL 11001 – Arena 50 WDG Insecticide
# ID 060015 – Poncho 600

<u>Thiamethoxam (7)</u>
# 100-1184 – Cruiser XL insecticide and fungicide prepack

# 100-1246 – Thiamethoxam 240 SC manufacturing product
# 100-1365 – Cruiser PD insecticide
# 100-1369 – Cruisermaxx rice
# 100–1405 – Avicta complete corn
# 100-1415 – Caravan G
# 34704-939 – Dyna-shield thiamethoxam fungicide

None of these products otherwise meet the criteria for unconditional registration.

117.     EPA's decision to classify these products as unconditional registrations while maintaining the conditional registrations and outstanding data requirements on numerous other thiamethoxam and clothianidin products is inconsistent, arbitrary, capricious, and is in violation of the FIFRA's requirements for conditional registrations and the APA.  EPA's actions and registration decisions alleged herein contradicted the earlier requests by Plaintiffs that the condition classifications be maintained and full compliance with the pollinator field test condition, in particular, be compelled.  Further, EPA's decision to issue unconditional registrations despite a preponderance of evidence that these products, when used in accordance with widespread and commonly recognized practice, cause unreasonable adverse effects on the environment violated the FIFRA and the APA.

118.     EPA's actions and inactions have damaged Plaintiffs.  EPA's failure to fully enforce the conditions it imposed has allowed clothianidin and thiamethoxam products that cause unreasonable adverse effects and are harmful to Plaintiffs to continue to be used, products that EPA should have suspended.

## SIXTH CLAIM

### EPA Violated the FIFRA Suspension Requirements and the APA

119.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 118, as though fully alleged herein.

120.     When used in accordance with widespread and commonly recognized practice, thiamethoxam and clothianidin cause unreasonable adverse effects on the environment.

121.     Plaintiffs have repeatedly formally requested EPA to suspend the registrations for clothianidin and thiamethoxam products, listed in Appendices A and B, which the agency has refused to do.  EPA's failure to suspend the registrations of these products in view of their

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1    unreasonable adverse effects violates the FIFRA, 7 U.S.C. § 136d(b), and the APA, 5 U.S.C. §

2    706(1)-(2).

3          122.    EPA's actions and inactions have damaged Plaintiffs. EPA's failure to suspend

4    clothianidin and thiamethoxam registrations has allowed these products, which cause

5    unreasonable adverse effects and are harmful to Plaintiffs, to continue to be used without

6    restrictions across the nation.

7                         **SEVENTH CLAIM**

8    *EPA Violated the FIFRA's Labeling Requirements*

9          123.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 122, as

10    though fully alleged herein.

11          124.    Clothianidin and thiamethoxam product labels have warnings about bee hazards

12    generally; however, they are inadequate and inconsistent across various registered products. The

13    label warnings, even if followed, violate labeling requirements as they do not advise the farmer,

14    applicator, or other user how to avoid the harms that the labels acknowledge and are not

15    "adequate to protect health and the environment," in violation of the FIFRA. 7 U.S.C. §

16    136(q)(1)(F).

17          125.    One such harm is contaminated dust from planting of treated seeds, a source of

18    repeated major beekills for which EPA lacks authority to effectively enforce label warnings in

19    ways that actually can prevent the kills from reoccurring. EPA has admitted current labeling is

20    inadequate. It is arbitrary and capricious for EPA to continue to rely on inconsistent product

21    labels that are inadequate to fully warn of clothianidin's and thiamethoxam's risks and that the

22    agency lacks the ability to enforce.

23          126.    EPA's actions and inactions have damaged Plaintiffs. EPA's failure to comply

24    with the FIFRA's labeling requirements has allowed uses of clothianidin and thiamethoxam

25    products according to their labels in ways that that are harmful to Plaintiffs. Such harms would

26    be avoided if the products included consistent, adequate warnings and directions.

27    //

28    //

# EIGHTH CLAIM

## *EPA Violated the ESA*

127.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 126, as though fully alleged herein.

128.     Prior to registering clothianidin and thiamethoxam conditionally or changing or approving unconditional registrations of the two pesticides, and before issuing the approximately one hundred use approvals for them over a thirteen-year period, EPA violated the Section 7 of the ESA by failing to: a) ensure, in consultation with FWS, that the uses of clothianidin and thiamethoxam are not likely to jeopardize the continued existence of any threatened or endangered species or result in the destruction or adverse modification of the critical habitat of such species; b) request from FWS information on whether any threatened or endangered species, or designated critical habitat, may be present within or near the areas of the proposed uses; c) prepare, at the earliest possible time, a biological assessment to determine whether any threatened and endangered species may be affected by the proposed uses or the agency's changes from the conditional classification for those uses; d) engage in consultation with FWS regarding the potential adverse effects of clothianidin and thiamethoxam on threatened and endangered species and critical habitat; and e) ensure that the agency, registrants and users of clothianidin and thiamethoxam products would not make any irreversible or irretrievable commitment of resources with respect to the sale and use of these compounds prior to EPA initiating and completing consultation with FWS.  EPA's Section 7 failures occurred despite clear evidence in the agency's own risk assessment documents that EPA's actions would adversely affect particular listed species and posed a risk to broad suites of listed species.  These actions and inactions constitute a violation of the ESA within the meaning of 16 U.S.C. § 1540(g).

129.     Scientific information on the impacts of clothianidin and thiamethoxam on invertebrates, birds, and ecosystems compels ESA § 7 effects determinations and consultation with FWS.  Such information includes, but is by no means limited to, the March 2013 report by the American Bird Conservancy, which shows high direct and indirect mortality risks to a broad suite of birds from clothianidin and thiamethoxam products.  EPA's continuing authority over

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   the conditional and unconditional registrations of these insecticidal products constitutes ongoing

2   action and it has violated its continuing obligation to follow the requirements of the ESA.

3         130.    EPA's ongoing failure to comply with the ESA has allowed the clothianidin and

4   thiamethoxam products to directly and indirectly harm and otherwise "take" federally-listed

5   species, including, but not limited to, plant pollinators and birds, and has also adversely impacted

6   critical habitats, damaging Plaintiffs' ability to enjoy and utilize those species and habitats and

7   Plaintiffs' interests in their existence and well-being.

8                                         **PRAYER FOR RELIEF**

9   WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

10         131.    Directing EPA to fully consider the information Plaintiffs submitted and the

11   effects on ESA-listed species on the question of "imminent hazard" of clothianidin use.  The

12   Court should order EPA to reconsider its final action of July 17, 2012, when Defendants denied

13   an imminent hazard pursuant to the Plaintiffs' Petition to suspend clothianidin without

14   considering the full information filed by Plaintiffs and without consulting with FWS under the

15   ESA on whether a hazard was posed to threatened and endangered species and their critical

16   habitats.  The Court should direct EPA to consider all of the information filed with it related to

17   imminent hazard, to consult with FWS under § 7 of the ESA, and to issue a new decision on the

18   question of imminent hazard.

19         132.    Declare that all of clothianidin's and thiamethoxam's registration and changed use

20   approvals, for which a "notice of receipt of application" and/or a "notice of issuance" were not

21   published in the Federal Register, are in violation of the FIFRA and its implementing

22   regulations, and vacate them.  The Court should issue a declaratory judgment that those

23   approvals lacking public notices and an opportunity for public comments violated 7 U.S.C. §

24   136a(c)(4) and 40 C.F.R. § 152.102, and should be vacated until and unless EPA provides such

25   notices and opportunity.

26         133.    Declare that clothianidin's and thiamethoxam's conditional and unconditional use

27   approvals violated the FIFRA and vacate them.  The Court should issue a declaratory judgment

28   that compliance with the conditions EPA placed on the pesticide registrations at issue has been

1  unlawfully withheld and unreasonably delayed under the FIFRA and the APA, and should vacate

2  them. Further, the Court should issue a declaratory judgment that EPA's removal of conditions

3  and allowance of unconditional registrations for multiple thiamethoxam and clothianidin

4  products violated the FIFRA's conditional use provisions, was arbitrary and capricious, and

5  caused unreasonable adverse effects to the environment. The Court should vacate these unlawful

6  registrations.

7       134.    Order EPA to immediately suspend the registration of clothianidin and

8  thiamethoxam. The Court should direct EPA to suspend all approved outdoor uses of

9  clothianidin and thiamethoxam, and issue a stop sale, use or removal order for all such approved

10 outdoor products, pending compliance with the many pending conditional registration

11 requirements to provide outstanding safety data including, but not limited to, the preparation,

12 publication, and agency review of a field study sufficient to support a finding that these

13 compounds do not pose unreasonable adverse effects to honey bees and other insect pollinators.

14      135.    Direct EPA to cure clothianidin's and thiamethoxam's inadequate labels. The

15 Court should declare that clothianidin and thiamethoxam products are misbranded with labels

16 and use directions that are inadequate to prevent unreasonable adverse effects to the

17 environment, to beekeepers and honey producers, and to ESA-listed species. The Court should

18 order EPA to develop new product labels and directions fully adequate to advise users on how to

19 prevent these adverse effects.

20      136.    Direct EPA to comply with the ESA. The Court should order EPA to comply

21 with the ESA by making the required "effects" determinations, and initiating and completing

22 consultation with FWS concerning clothianidin and thiamethoxam products' impacts on native

23 endangered and threatened species and their critical habitats. The Court should order EPA to

24 ensure that uses of these insecticides do not "take" threatened and endangered species or affect

25 their critical habitats without appropriate mitigation and should enjoin any further use of the

26 insecticides prior to completion of the ordered consultation.

27      137.    Enjoin proposed new clothianidin and thiamethoxam product uses. The Court

28 should enjoin EPA from approving any pending use approvals for clothianidin or thiamethoxam,

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1  or any other future proposed uses of them, until the agency complies with all of the Requests for

2  Relief herein for the currently registered uses to avoid unreasonable adverse effects to Plaintiffs

3  and on the environment.

4       138.   <u>Award Plaintiffs the costs of this litigation</u>, including reasonable attorneys' fees

5  and expert witness fees; and

6       139.   Grant such other relief as the Court deems just and proper.

7

8                    Respectfully submitted this 21st day of March, 2013.

9

10

SYLVIA SHIH-YAU WU (State Bar No. 273549)
GEORGE A. KIMBRELL (*Pro Hac Vice application pending*)
PETER T. JENKINS (*Pro Hac Vice application pending*)
PAIGE M. TOMASELLI (State Bar No. 237737)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@centerforfoodsafety.org
       pjenkins@centerforfoodsafety.org
       ptomaselli@centerforfoodsafety.org
       swu@centerforfoodsafety.org

*Counsel for Plaintiffs*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF