1  GEORGE A. KIMBRELL (*Pro Hac Vice*)
   PAIGE M. TOMASELLI (State Bar No. 237737)
2  SYLVIA SHIH-YAU WU (State Bar No. 273549)
   PETER T. JENKINS (*Pro Hac Vice*)
3  Center for Food Safety
   303 Sacramento Street, 2nd Floor
4  San Francisco, CA 94111
   T: (415) 826-2770 / F: (415) 826-0507
5  Emails: gkimbrell@centerforfoodsafety.org
            ptomaselli@centerforfoodsafety.org
6           swu@centerforfoodsafety.org
            pjenkins@centerforfoodsafety.org
7

8  *Counsel for Plaintiffs*

9

**THE UNITED STATES DISTRICT COURT**
10            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
            **SAN FRANCISCO DIVISION**
11

12
   STEVE ELLIS, *et al.*,                    )   Case No.: 3:13-cv-01266-MMC
13                                           )
                *Plaintiffs*,                )
14                                           )   **PLAINTIFFS' OPPOSITION TO**
        v.                                   )   **DEFENDANTS' MOTION TO DISMISS**
15                                           )
   STEVEN P. BRADBURY, *et al.*,             )
16                                           )   Date: January 24, 2014
                *Defendants*,                )   Time: 9:00 am
17                                           )   Courtroom 7, 19th Floor
        and                                  )
18                                           )
   BAYER CROPSCIENCE LP, *et al.*,           )
19                                           )   Honorable Maxine M. Chesney
                *Defendant-Intervenors.*     )
20  _____ )

21

22

23

24

25

26

27

28

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................ii-ix

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 1

STANDARD OF REVIEW ......................................................................................... 3

STATUTORY BACKGROUND.................................................................................. 4

    I.     FEDERAL INSECTICIDE, FUNGICIDE, AND
           RODENTICIDE ACT.................................................................... 4

    II.    ENDANGERED SPECIES ACT................................................... 6

    III.   ADMINISTRATIVE PROCEDURE ACT.................................... 7

SUMMARY OF ARGUMENT ................................................................................... 8

ARGUMENT ............................................................................................................... 9

    I.     PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH
           SUBJECT MATTER JURISDICTION AND SUPPORT CLAIM 1 ................... 9

    II.    PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH
           SUBJECT MATTER JURISDICTION AND SUPPORT CLAIM 9 ................. 12

    III.   PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT
           CLAIMS 3-4 ............................................................................... 14

         A.    EPA Failed to Publish Notices Required Under FIFRA......... 14

         B.    EPA's Failure to Give Notice Violated FIFRA and the
              APA................................................................................. 16

         C.    Adjudication of What Constitutes "New Uses" Under
              FIFRA Requires Review of the Administrative Record. ......... 17

    IV.   PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT
           CLAIMS 5-6 ............................................................................... 18

         A.    EPA Can Conditionally Register Pesticides to Obtain
              Missing Information......................................................... 18

         B.    EPA Has Violated Conditional Registration Requirements
              by Not Canceling Conditional Registrations with
              Unsatisfied Conditions.................................................... 19

         C.    EPA Has Violated FIFRA by Conditionally Registering
              Other Uses with Vague and Unenforceable Conditions. ......... 21

    V.    PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT
           CLAIMS 7-8 ............................................................................... 23

    VI.   PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH
           SUBJECT MATTER JURISDICTION AND SUPPORT CLAIMS
           13-14 ......................................................................................... 25

      A.      EPA Violated the Endangered Species Act. .............................. 25

      B.      *Center for Biological Diversity v. EPA* Supports Plaintiffs.................... 28

      C.      Plaintiffs Provided Sufficient Notice. ....................................... 30

CONCLUSION ......................................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**FEDERAL CASES**

*Am. Tunaboat Ass'n v. Baldrige,*
738 F.2d 1013 (9th Cir. 1984) ...........................................................................12

*Arista Records, LLC v. Doe,*
604 F.3d 110 (2d Cir. 2010)..........................................................................17, 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).........................................................................4, 13, 22, 28

*Barker v. Riverside Cnty. Office of Education,*
584, F.3d 821, 824 (9th Cir. 2009) ........................................................................4

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................22, 28

*Biodiversity Legal Found. v. Badgley,*
309 F.3d 1166 (9th Cir. 2002) .............................................................................21

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988).........................................................................................10

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009) ...............................................................................22

*Brower v. Evans,*
257 F.3d 1058 (9th Cir. 2001) .......................................................................20, 21

*Butte Cnty., Cal. v. Hogen,*
613 F.3d 190 (D.C. Cir. 2010) .............................................................................12

*City of Idaho Falls, Idaho v. Fed. Energy Regulatory Comm'n,*
629 F.3d 222 (D.C. Cir. 2011) ......................................................................16, 17

*Cmty. Ass'n for Restoration of the Env't (CARE) v. Henry Bosma Dairy,*
305 F.3d 943, 951-52 (9th Cir. 2002) ...............................................................33, 34

*Ctr. for Biological Diversity v. Kempthorne,*
588 F.3d 701 (9th Cir. 2009) ...............................................................................18

*Ctr. for Sierra Nevada Conservation v. U.S. Forest Serv.,*
832 F. Supp. 2d 1138 (E.D. Cal. 2011)...................................................................31

*Davis v. EPA,*
348 F.3d 772 (9th Cir. 2003) ...............................................................................12

**FEDERAL CASES, CONT'D**

*Dichter-Mad Family Partners, LLP v. United States,*
709 F.3d 749 (9th Cir. 2013) ......................................................................4

*Envtl. Def. Fund, Inc. v. Hardin,*
428 F.2d 1093 (D.C. Cir. 1970) ................................................................11

*Envtl. Def. Fund v. Ruckelshaus,*
439 F.2d 584 (D.C. Cir. 1971) .............................................................10, 11

*Envtl. Def. Fund v. Tidwell,*
837 F. Supp. 1344 (E.D.N.C. 1992) ..........................................................34

*Hallstrom v. Tillamook Cnty.,*
493 U.S. 20 (1989) ....................................................................................31

*Karuk Tribe of Cal. v. U.S. Forest Serv.,*
681 F.3d 1006 (9th Cir. 2012) (en banc) ............................................7, 29, 30

*Klickitat Cnty. v. Columbia River Gorge Comm'n,*
770 F. Supp. 1419 (E.D. Wash. 1991) .......................................................34

*Lacey v. Maricopa Cnty.,*
693 F.3d 896 (9th Cir. 2012) .................................................................4, 13

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) ....................................................................16

*Cal. ex rel. Lockyer v. USDA,*
575 F.3d 999 (9th Cir. 2009) .................................................................6, 27

*Love v. Thomas,*
858 F.2d 1347 (9th Cir. 1988) ..................................................................10

*Marbled Murrelet v. Babbitt,*
83 F.3d 1068 (9th Cir. 1996) ...............................................................31, 32

*Maya v. Centex Corp.,*
658 F.3d 1060 (9th Cir. 2011) ....................................................................4

*McGary v. City of Portland,*
386 F.3d 1259 (9th Cir. 2004) ..................................................................18

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) ...............................................................25, 28

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ......................................................................................9

**FEDERAL CASES, CONT'D**

*N.C. Growers' Ass'n, Inc. v. United Farm Workers*,
    702 F.3d 755 (4th Cir. 2012) ................................................................................17

*Nat'l Wildlife Fed'n v. FEMA*,
    345 F. Supp. 2d 1151 (W.D. Wash. 2004)...........................................................27

*Natural Res. Def. Council v. EPA*,
    676 F. Supp. 2d 307, 313 (S.D.N.Y. 2009).........................................................17

*Natural Res. Def. Council v. Houston*,
    146 F.3d 1118 (9th Cir. 1988) ............................................................................29

*Natural Res. Def. Council v. Sw. Marine, Inc.*,
    236 F.3d 985 (9th Cir. 2000) ..................................................................32, 33, 35

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005) .................................................................................8

*OSU Student Alliance v. Ray*,
    699 F3d 1053 (9th Cir. 2012) ..............................................................................17

*Pac. Rivers Council v. Thomas*,
    30 F.3d 1050 (9th Cir. 2004) ...............................................................................29

*Precon Dev. Corp., Inc. v. U.S. Army Corps of Eng'rs*,
    633 F.3d 278 (4th Cir. 2011) ...............................................................................18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...............................................................................4

*San Francisco BayKeeper, Inc. v. Tosco Corp.*,
    309 F.3d 1153 (9th Cir. 2002) .......................................................................32, 33

*Sheppard v. Davis Evans & Assocs.*,
    694 F.3d 1045 (9th Cir. 2012) .............................................................................14

*Sierra Club v. Marsh*,
    816 F.2d 1376 (9th Cir. 1987) ...............................................................................6

*Skilstaf, Inc v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ...............................................................................4

*Sprint Fidelis Leads Prods. Liab. Litig. v. Medtronic, Inc. (In re Medtronic, Inc.)*,
    623 F.3d 1200 (8th Cir. 2010) .............................................................................22

*Sw. Ctr. For Biological Diversity v. U.S. Bureau of Reclamation*,
    143 F.3d 515 (9th Cir. 1998) ...............................................................................32

**FEDERAL CASES, CONT'D**

*Telecomms. Research & Action Ctr. v. FCC,*
    750 F.2d 70 (D.C. Cir. 1984) ........................................................................................21

*Tenn. Valley Auth. v. Hill,*
    437 U.S. 153 (1978) ........................................................................................................6

*Tri-Valley CARES v. U.S. Dept. of Energy,*
    671 F.3d 1113 (9th Cir. 2012) .....................................................................................18

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.,*
    340 F.3d 969 (9th Cir. 2003) .......................................................................................29

*United Farm Workers v. Adm'r,*
    592 F.3d 1080 (9th Cir. 2010) .....................................................................................10

*United Mine Workers of Am. v. Mine Safety,*
    626 F.3d 84 (D.C. Cir. 2010) ........................................................................................16

*United States v. 14.02 Acres,*
    547 F.3d 943 (9th Cir. 2008) .......................................................................................20

*United States v. Monsanto,*
    491 U.S. 600 (1989) ......................................................................................................21

*W. Watersheds Project v. Kraayenbrink,*
    632 F.3d 472 (9th Cir. 2011) ..........................................................................................7

*Wash. Toxics Coal. v. EPA,*
    413 F.3d 1024 (9th Cir. 2005) ............................................................................6, 29, 30

*Washington Trout v. McCain Foods,*
    45 F.3d 1351 (9th Cir. 1995) .......................................................................................34

*WaterKeepers N. Cal. v. AG Indust. Mfg. Inc,*
    375 F.3d 913 (9th Cir. 2004) .......................................................................................33

*Wild Fish Conservancy v. Salazar,*
    628 F.3d 513 (9th Cir. 2010) .......................................................................................29

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ..........................................................................................4

**UNPUBLISHED FEDERAL CASES**

*Bradberry v. T-Mobile USA, Inc.,*
    No. C 06-6567 CW, 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. Apr. 27, 2007) ......................20

PAGE(S)

**UNPUBLISHED FEDERAL CASES, CONT'D**

*Ctr. for Biological Diversity v. EPA*,
No. 11-cv-00293-JCS, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013) ....................... 28, 29, 30

*Ctr. for Biological Diversity v. Chertoff*,
No. C-08-2999 MMC, 2009 WL 839042 (N.D. Cal. Mar. 30, 2009) .................................... 35

*Hancock v. Hartford Life & Accident Ins. Co.*,
No. CIV. 2:06-CV-00208-FCD-DAD, 2006 U.S. Dist. LEXIS 39774 (E.D.
Cal. June 14, 2006) ............................................................................................................ 15

*Salmon Spawning & Recovery Alliance v. Lohn*,
No. C 06-1462RSL, 2008 U.S. Dist. LEXIS 30809 (W.D. Wash. Mar. 20,
2008), at *10-11 ................................................................................................................. 17

*Wash. Toxics Coal. v. EPA*,
No. C 01-132C, 2002 U.S. Dist. LEXIS 27654 (W.D. Wash. July 2, 2002) ......................... 25

**STATUTES**

5 U.S.C. § 551(13) .................................................................................................................... 7

5 U.S.C. § 702 .......................................................................................................................... 7

5 U.S.C. § 706 ........................................................................................................................ 12

5 U.S.C. § 706(1) ................................................................................................................ 8, 21

5 U.S.C. § 706(2)(A) ................................................................................................................ 8

5 U.S.C. § 706(2)(D) ........................................................................................................... 8, 17

7 U.S.C. §§ 136-136y ............................................................................................................... 1

7 U.S.C. § 136(l) ................................................................................................... 4, 10, 11, 13

7 U.S.C. § 136(q) ................................................................................................................... 10

7 U.S.C. § 136a ......................................................................................................................... 4

7 U.S.C. § 136a(c) .................................................................................................................... 4

7 U.S.C. § 136a(c)(4) ..................................................................................................... 4, 14, 17

7 U.S.C. § 136a(c)(5) ........................................................................................................... 5, 24

7 U.S.C. § 136a(c)(7)(A)-(C) ................................................................................................... 5

7 U.S.C. § 136a(c)(7)(A) ................................................................................................... 19, 24

**STATUTES, CONT'D**

7 U.S.C. § 136a(c)(7)(C) ...................................................................................19, 21

7 U.S.C. § 136d ...................................................................................................10

7 U.S.C. § 136d(c) ........................................................................................ *passim*

7 U.S.C. § 136d(e)(1) ...................................................................................19, 20

7 U.S.C. § 136n(a) .........................................................................................10, 12

7 U.S.C. § 136n(a)-(b) .........................................................................................9

16 U.S.C. § 1532(5)(A) ........................................................................................6

16 U.S.C. § 1536(a)(2) ......................................................................................1, 6

16 U.S.C. § 1540(g) ...........................................................................................30

16 U.S.C. § 1540(g)(1)(A) ...........................................................................30, 31

16 U.S.C. § 1540(g)(2)(A)(i) ..............................................................................31

**CODE OF FEDERAL REGULATIONS**

40 C.F.R § 135.3 .................................................................................................31

40 C.F.R. § 152.3 ..........................................................................................14, 15

40 C.F.R. § 152.102 ...................................................................................5, 14, 17

40 C.F.R. § 152.114(d) .......................................................................................19

40 C.F.R. § 152.115(b)(2) ...................................................................................19

40 C.F.R. § 154.5 .................................................................................................6

50 C.F.R. § 402.02 .....................................................................................6, 7, 27

50 C.F.R. § 402.13(a) ...........................................................................................7

50 C.F.R. § 402.14(a) ...........................................................................6, 7, 26, 27

50 C.F.R. § 402.14(b) ...........................................................................................7

50 C.F.R. § 402.14(h)(3) .......................................................................................7

50 C.F.R. § 402.14(i) ............................................................................................7

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8(a)(2)................................................................4, 14

Fed. R. Civ. P. 12(b)(1)..................................................................4

Fed. R. Civ. P. 12(b)(6)............................................................4, 18

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 201(b)(2)..................................................................28

**CIVIL LOCAL RULES**

Civil L.R. 7-3(a)............................................................................16

**OTHER AUTHORITIES**

51 Fed. Reg. 7,628 (Mar. 5, 1986)..........................................24, 25

EPA, *Pesticide Fact Sheet: Clothianidin, Conditional Registration* (May 30, 2003) ....................................................................................27, 28

EPA, *Thiamethoxam Summary Document Registration Review: Initial Docket* (Dec. 2011), *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-2011-0581-0002.............................................................................................27

Letter from Jay Feldman *et al.,* to EPA (Dec. 8, 2010), *available at* http://www.epa.gov/pesticides/about/intheworks/clothianidin-petition2.pdf;.........................13

Letter from Defendant Steven Bradbury, Director, Office of Pesticide Programs, EPA, to "Registrants of Nitroguanidine Neonicotinoid Products," (Aug. 15, 2013), *available at* http://www.epa.gov/pesticides/ecosystem/pollinator/bee-label-info-ltr.pdf.........................................................................8

Response from EPA to Feldman *et al.* (Feb. 18, 2011), *available at* http://www.epa.gov/pesticides/about/intheworks/clothianidin-response-letter.pdf. ..........................................................................................13

U.S. Gov't Accountability Office, Report to H. Subcomm. on Env't and the Econ., H. Comm. on Energy and Commerce, *Pesticides: EPA Should Take Steps to Improve Its Oversight of Conditional Registrations* 3 (Aug. 2013) (2013 GAO Report), *available at* http://www.gao.gov/products/GAO-13-145. .........20, 22, 24

# INTRODUCTION

Plaintiffs Steve Ellis, Tom Theobald, Jim Doan, Bill Rhodes, Center for Food Safety, Beyond Pesticides, Sierra Club, and Center for Environmental Health submit this Opposition to Defendants' Motion to Dismiss (EPA's Motion), ECF No. 59.[1]

This case is about the failure of Defendant United States Environmental Protection Agency (EPA) to consider the environment and impacts on sensitive species in its administration of two harmful pesticide ingredients: clothianidin and thiamethoxam. Under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), EPA regulates the uses of pesticides so to avoid unreasonable adverse effects on the environment. 7 U.S.C. §§ 136-136y. Pursuant to the Endangered Species Act (ESA), EPA has a duty to consult with the expert federal wildlife agencies to insure that pesticide uses authorized by EPA will not likely jeopardize any threatened or endangered species and their critical habitats. 16 U.S.C. § 1536(a)(2). EPA has approved more than 100 pesticide products containing the active ingredients clothianidin and thiamethoxam without complying with the requirements of FIFRA, the ESA, and the Administrative Procedure Act (APA), to the detriments of sensitive species and vital pollinators, U.S. agriculture, and the environment.

In seeking to dismiss this case, EPA once again attempts to abdicate from the agency's statutory duties. EPA's motion misconstrues Plaintiffs' allegations, and overstates the standard of review at this early stage of litigation. Contrary to EPA's arguments, Plaintiffs have properly established subject matter jurisdiction and pleaded sufficient facts to support their claims. The Court should deny EPA's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Clothianidin and its parent compound, thiamethoxam, are two widely-used pesticides in a controversial class of pesticides known as neonicotinoids. First Am. Compl. ¶ 2, ECF No. 17 (the Complaint). Neonicotinoids are described as systemic pesticides because they are taken up

---

[1] Plaintiffs concurrently submit a separate Opposition to Defendant-Intervenors' Motion to Dismiss (Intervenors' Motion). Where appropriate, this brief also addresses duplicative arguments in Intervenors' Motion.

by a plant's vascular system as it grows, and are expressed through its tissues, including its flowers, pollen, and nectar. *Id.* ¶ 57-58. These pesticides adversely impact the survival, growth, and health of honey bees and other pollinators vital to U.S. agriculture, and have harmful effects on other animals, including threatened and endangered species. *Id.* ¶¶ 2, 57-59, 71. Despite being aware of such harms, EPA nonetheless approved clothianidin and thiamethoxam formulations in more than 100 pesticide products, for a wide variety of agricultural, landscaping, and outdoor use markets. *Id.* ¶¶ 61-64, 79.

Clothianidin and thiamethoxam share a common mode of action that damages the central nervous system of honey bees, other vital pollinators, and numerous sensitive species including federally listed insects and birds. *Id.* ¶¶ 57-59, 71. When bees and other pollinators forage on pollen or nectar from treated crops and other plants, or are otherwise exposed to extremely small doses of these compounds, paralysis and death result. *Id.* Clothianidin and thiamethoxam affect bee behavior and cognition in ways that compromise the overall health of colonies, often causing bee colonies to collapse. *Id.* ¶ 59. Not surprisingly, the proliferation of neonicotinoid pesticides over the past decade has coincided with massive die-offs of honey bee populations in the phenomenon known as Colony Collapse Disorder. *Id.* ¶¶ 57-58. These two chemicals are also highly toxic to other bee species—such as the common Eastern bumble bee, alfalfa leafcutter bee, and blue orchard bee, all of which are valuable pollinators—and to non-bee insects, such as butterflies, ladybugs, lacewings, dragonflies, and hoverflies. *Id.* ¶ 71. Numerous other beneficial insects, invertebrates, and birds are also affected by clothianidin and thiamethoxam, including many species protected by the ESA. *Id.* ¶¶ 71, 73-74.

EPA was aware from the beginning that the two chemicals adversely affect species vital to U.S. agriculture and the environment. *Id.* ¶ 62. Recent peer-reviewed studies, including those by the United States Department of Agriculture, also show acute and sub-lethal harm to bees from a variety of exposure pathways, across diverse agricultural landscapes. *Id.* Other governments, including the European Union, have recognized the imminent harm caused by clothianidin and thiamethoxam, and suspended or restricted their uses. *Id.* ¶ 63. Yet, EPA has allowed nationwide usage of thiamethoxam and clothianidin since 2000 and 2003, respectively,

by issuing registrations that required the registrants' submission of missing data. *Id.* ¶ 79. The missing data includes studies critical to understanding how these two pesticides react in the environment to the potential detriment of honey bees, pollinator species, and threatened and endangered species. *Id.* ¶¶ 79, 91-99. Critical conditions remain unsatisfied to date. *Id.* ¶¶ 94-99. Yet, EPA has approved more than 100 product registrations of clothianidin and thiamethoxam. *Id.* ¶ 79; *id.* Apps. A-B, ECF Nos. 17-1, 17-2. EPA's approvals were made without the required consultation under the ESA. *Id.* ¶¶ 75-76.

On March 20, 2012, several Plaintiffs[2] submitted a petition to EPA regarding clothianidin (the Petition), requesting EPA to take actions to address its past regulatory failures, beginning with the immediate suspension of clothianidin. *Id.* ¶ 82; Hill Decl. Ex. A, ECF No. 59-2. After the Petition's filing, in the spring and early summer of 2012, new incidents of bee kills and scientific studies came to light. Compl. ¶ 82. On May 3, 2012, and on June 18, 2012, the petitioners filed this information. *Id.* On July 17, 2012, EPA denied the Petition's request to suspend clothianidin as an imminent hazard without considering this information. *Id.* ¶ 83; Hill Decl. Ex. D (EPA's July 2013 suspension denial), at 2, 5-6, ECF No. 59-5. Following its suspension denial, EPA solicited public comment on the agency's response and on remaining issues in the Petition. *Id.* at 1. Plaintiffs then submitted more information to the public docket, and urged EPA to reconsider its suspension denial. Hill Decl. Exs. F-G, ECF Nos. 59-7, 59-8. Several Plaintiffs also sent a letter to EPA regarding the harms of thiamethoxam, emphasizing the need for suspension. Compl. ¶ 88. Despite these calls for actions, EPA has taken no steps on clothianidin and thiamethoxam. *Id.*

## **STANDARD OF REVIEW**[3]

In deciding a motion to dismiss, courts must accept "all factual allegations in the complaint as true" and construe them "in the light most favorable to the nonmoving party."

---

[2] The petitioners were Plaintiffs Center for Food Safety, Beyond Pesticides, Steve Ellis, Tom Theobald, along with a coalition of beekeepers and honey producers, and other public interest groups.

[3] The same standards of review also applies to this Court's review of Defendant-Intervenors' Motion to Dismiss (Intervenors' Motion), ECF No. 74.

*Skilstaf, Inc v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). Courts must "draw all reasonable inferences" from the complaint in favor of the nonmoving party, and presume "general allegations embrace those specific facts that are necessary to support the claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

Motions to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) are both governed by the notice pleading requirements of Rule 8(a), which states that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 761 n.10 (9th Cir. 2013) (citations omitted). Specific facts are not required, so long as the factual allegations in the complaint, accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012). In reviewing a facial attack on subject matter jurisdiction pursuant to Rule 12(b)(1) or dismissal under Rule 12(b)(6), like the motions here, courts construe a complaint liberally, accepting all allegations as true and drawing all reasonable inferences in plaintiffs' favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding that a facial attack argues that the complaint on its face is insufficient to invoke federal jurisdiction); *Barker v. Riverside Cnty. Office of Education*, 584, F.3d 821, 824 (9th Cir. 2009).

## STATUTORY BACKGROUND

### I. FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT

EPA regulates pesticides by licensing their sale, distribution, and use under FIFRA. 7 U.S.C. § 136a. FIFRA registrations are licenses that establish the terms and conditions under which a pesticide may lawfully be sold, distributed, or used; EPA retains the ongoing authority over these licenses. *See Id.* §§ 136d(c), 136(l). FIFRA prohibits EPA from registering a pesticide if its use would have "unreasonable adverse effects on the environment." *Id.* § 136a(c).

When EPA receives a registration application for a new active ingredient or a new use of a pesticide, it must provide the public with notice and opportunity to comment. 7 U.S.C.

§ 136a(c)(4). EPA's FIFRA-implementing regulations require EPA to publish two classes of notices in the Federal Register: (1) notice of receipt, for each registration application; and (2) notice of issuance, once the product is registered. 40 C.F.R. § 152.102.

EPA can register pesticide products with or without conditions. To register a pesticide product unconditionally, EPA must determine that the product "will perform its intended function without unreasonable adverse effects on the environment," and that "when used in accordance with widespread and commonly recognized practice," the pesticide "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5). Conditional registrations require the registrant to supply additional studies within a set time frame. *Id.* § 136a(c)(7). Conditional registration is only authorized under three circumstances: (1) if the pesticide and proposed use are "identical or substantially similar" to a registered pesticide and use, or differ only in ways that would "not significantly increase the risk of unreasonable adverse effects on the environment; (2) to permit additional uses of a pesticide if the data concerning the pesticide is "insufficient to support an unconditional amendment"; and (3) for pesticides "containing an active ingredient not contained in any currently registered pesticide," conditional registration is permitted "for a period reasonably sufficient for the generation and submission of required data," but "*only if* [EPA] determines that use of the pesticide during such period *will not cause any unreasonable adverse effect on the environment*, *and* that use of the pesticide is *in the public interest*." *Id.* § 136a(c)(7)(A)-(C) (emphases added).

If a registrant fails to fulfill any condition imposed on a registration within the time frame set by EPA, EPA "shall" initiate cancellation proceedings. *Id.* § 136d(e)(1). EPA also has authority to cancel a pesticide registration whenever a pesticide "does not comply with the provisions of [FIFRA] or, when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment." *Id.* § 136d(b). Moreover, EPA can suspend a pesticide registration to prevent an "imminent hazard," *id.* § 136d(c), which FIFRA defines to mean "when the continued use of a pesticide during the time required for cancellation proceeding would be likely to result in unreasonable adverse effects on the environment or will involve unreasonable hazard to the survival of a species declared

1  endangered or threatened [under the ESA]," *id.* § 136(l).  The product's proponent bears the legal

2  burden of showing that any pesticide and any approved uses meet FIFRA criteria to be eligible

3  for continued registration.  *See* 40 C.F.R. § 154.5.

4  **II.  ENDANGERED SPECIES ACT**

5  "The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend

6  toward species extinction, whatever the cost.*"  Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184

7  (1978).  The statute "reveals a conscious decision by Congress to give endangered species

8  priority over the 'primary missions' of federal agencies."  *Id.* at 185.

9  "For federal agencies, the heart of the [ESA] is section 7(a)(2)."  *Cal. ex rel. Lockyer v.*

10  *USDA*, 575 F.3d 999, 1018 (9th Cir. 2009).  Section 7(a)(2) of the ESA requires that "[e]ach

11  Federal agency shall, in consultation with and the assistance of the Secretary, insure that any

12  action authorized, funded, or carried out by such agency . . . is not likely to jeopardize[4] the

13  continued existence of any endangered species or threatened species or result in the destruction

14  or adverse modification of habitat of such species which is determined . . . to be critical . . . ."

15  16 U.S.C. § 1536(a)(2) .

16  The duty to "insure" against jeopardy is a "rigorous" one.  *Sierra Club v. Marsh*, 816

17  F.2d 1376, 1385 (9th Cir. 1987).  Like all agencies, EPA has the burden to prove its actions will

18  not jeopardize any species, nor harm any critical habitat, anywhere these pesticides may be used.

19  *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1035 (9th Cir. 2005).

20  Congress specified in Section 7(a)(3) the process that "[e]ach [f]ederal agency" must

21  follow to "insure" against jeopardy.  EPA must determine whether its actions "may affect" any

22  listed species or any designated critical habitat; if so, it *must* consult the designated expert

23  wildlife agencies before acting.  50 C.F.R. § 402.14(a).

24

25

_____

26  [4] "Jeopardize" means engaging in action that "reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50

27  C.F.R. § 402.02.  A species' "critical habitat" includes those areas identified as "essential to the conservation of the species" and "which may require special management considerations or

28  protection." 16 U.S.C. § 1532(5)(A).

Agency "action" is very broadly defined, to include all activities or programs of any kind authorized, funded, or carried out by federal agencies, including activities directly or indirectly causing modifications to land, water, or air. 50 C.F.R. § 402.02; *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021 (9th Cir. 2012) (en banc) ("We have repeatedly held that the ESA's use of the term 'agency action' is to be construed broadly."). To make the "may affect" determination, EPA must assess nationwide approvals nationwide, because "action area" is defined to include "all areas to be affected directly or indirectly by the Federal action and not merely the immediate area involved in the action." 50 C.F.R. § 402.02. Effects determinations include the "direct and indirect effects of an action on the species or critical habitat, together with the effects of other activities that are interrelated or interdependent with that action." *Id.*

Consultation may in some cases be informal. *Id.* § 402.13(a). If, after informal consultation, the expert federal wildlife agency—here, the United States Fish and Wildlife Service (FWS)—concurs in writing that the action is "not likely to adversely affect" any listed species or critical habitat, the process ends. *Id.* § 402.14(b). Otherwise, EPA must enter formal consultation. *Id.* § 402.14(a). Following formal consultation, FWS issues a Biological Opinion which states whether the pesticides will likely jeopardize the continued existence of any species or adversely modify any critical habitat, and authorizes any incidental "take." *Id.* § 402.14(h)(3), *id.* § 402.14(i). If FWS finds that the agency actions may jeopardize or adversely modify, it must conclude that EPA risks violating the strict prohibitions of section 7(a)(2).

## III. ADMINISTRATIVE PROCEDURE ACT

The APA provides judicial review of agency action, inaction, and delays. 5 U.S.C. § 702.[5] "Agency action" is defined to include "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). Pursuant to the APA, a reviewing court "shall . . . hold unlawful and set aside agency action" that is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

---

[5] Plaintiffs' claims are reviewed under the APA standards of review, because neither FIFRA nor ESA specifies a standard of review. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011).

law," 5 U.S.C. § 706(2)(A), or "without observance of procedure required by law," *id.*

§ 706(2)(D).  Similarly, regarding an agency's failure to take action, pursuant to the APA, courts

"shall compel agency action unlawfully withheld or unreasonably delayed," *id.* at § 706(1).

Judicial review should be "searching and careful," and courts "must not rubber stamp

administrative decisions that [are] inconsistent with a statutory mandate or that frustrate the

congressional policy underlying a statute."  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402

F.3d 846, 859 (9th Cir. 2005) (internal citation omitted).

## SUMMARY OF ARGUMENT

This Court has jurisdiction over Plaintiffs' Claims 1, 3-9, and 13-14, which Plaintiffs

have sufficiently pleaded.[6]  Claim 1 challenges EPA's procedural failure to consider

supplemental information before the agency in reaching its finding of no imminent hazard for

clothianidin, while Claim 9 challenges EPA's substantive finding of no imminent hazard and

suspension denial as arbitrary and capricious under the APA.  Claims 3 and 4 challenge EPA's

failure to provide public notice of clothianidin and thiamethoxam product applications and

registrations, when FIFRA requires such notice and opportunity for comment.  Claims 5 and 6

allege that EPA failed to cancel conditional registrations after conditions lapsed, despite

FIFRA's unequivocal statutory command to do so in such instances, and that conditions imposed

on some registrations unlawfully lack any time limitation at all.  Claims 7 and 8 allege that

EPA's decisions to register some clothianidin and thiamethoxam products as unconditional

registrations—despite missing critical information on these two pesticides—are arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law.  Claims 13 and 14

allege that EPA failed to undertake the required ESA consultations necessary to register any of

---

[6] The parties have stipulated to voluntary dismissal of Claims 2, 10, 11, and 12.  *See* ECF Nos. 81-82.  Plaintiffs are voluntarily dismissing Claims 2 and 10 because the relief sought by Plaintiffs is effectively encompassed by other claims.  Plaintiffs are dismissing Claims 11 and 12 because on August 15, 2013, five months after the filing of this lawsuit, EPA voluntarily ordered all neonicotinoid products to be re-labeled with new language and symbols; thus these claims are effectively moot.  Letter from Defendant Steven Bradbury, Director, Office of Pesticide Programs, EPA, to "Registrants of Nitroguanidine Neonicotinoid Products," (Aug. 15, 2013), *available at* http://www.epa.gov/pesticides/ecosystem/pollinator/bee-label-info-ltr.pdf.  These new labels are the result of a new agency action that would be reviewable on a separate administrative record.

the clothianidin and thiamethoxam products, to the detriment of listed species. Jurisdiction is proper in this Court because none of the claims involve any EPA final agency action made after a "public hearing" within the meaning of FIFRA. *See* 7 U.S.C. § 136n(a)-(b).

<u>**ARGUMENT**</u>

## I. PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH SUBJECT MATTER JURISDICTION AND SUPPORT CLAIM 1

Claim 1 is a procedural challenge to EPA's denial that clothianidin products are creating an imminent hazard: namely, EPA's refusal to consider specific information in making its determination rendered that decision unlawful. Compl. ¶¶ 103-104. The information includes (1) recently published scientific evidence showing that neonicotinoid insecticides are causing harm to bees and other beneficial insects; and (2) data on clothianidin bee kills that occurred during the spring and summer of 2012, shortly after the filing of the Petition. *Id.* ¶¶ 82, 85; *see* Hill Decl. Exs. B-C, ECF Nos. 59-3, 59-4. This critical data was before the agency, and despite being aware of its significance, EPA unlawfully refused to consider it, rendering the agency's finding of no imminent hazard arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (Agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem," or "offered an explanation for its decision that runs counter to the evidence before the agency").

First, EPA misframes the allegation. EPA's Mot. 12 (arguing that "EPA's decision not to address the two supplemental filings" is not agency action). The challenged action is EPA's July 2012 suspension denial of the Petition. Compl. ¶ 103 ("EPA's *final agency action, in denying an 'imminent hazard'* existed in response to [the Petition], failed to consider . . . supplemental filings . . . .") (emphasis added). EPA then mischaracterizes the denial as not "final," instead merely "a preliminary step in the Agency's consideration of the remainder of the Petition." EPA's Mot. 12. This argument contradicts the agency's own words back in July 2012:

> EPA denies the petition insofar as petitioners seek to have the EPA make a finding that the use of products containing clothianidin presents an "imminent hazard," as defined in FIFRA section 2(1), and should be suspended under section 6(c) of FIFRA. The EPA considers this portion of the response to the petition to be *final action* pursuant to section 16 of FIFRA.

Hill Decl. Ex. D, at 5 (emphasis added).  Contrary to its litigation position, the July 2012 denial letter showed that EPA's decision on imminent hazard and suspension is a separate, distinct agency action from future actions that EPA may take on the remainder of the Petition.  Hill Decl. Ex. D, at 1 (stating that the denial "addresses only" the suspension request and that "EPA will respond to the remaining issues in the [P]etition" at another time);[7] *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.").

Second, EPA's argument is belied by the FIFRA scheme, under which EPA can immediately suspend a pesticide in order to prevent an imminent hazard.  7 U.S.C. § 136d(c); § 136(1) (definition of imminent hazard).  A suspension denial is a final agency action, separate and distinct from other actions that EPA may take under FIFRA, and is immediately reviewable by this Court.  *Love v. Thomas*, 858 F.2d 1347, 1350 (9th Cir. 1988) ("Because cancellation or reclassification proceedings may take one or two years to complete, FIFRA authorizes [EPA] to suspend a pesticide's registration pending the outcome of the proceedings . . . .").  EPA's position that its imminent hazard denial is only part of the agency's later decision on the remainder of the petition would defeat the purpose of the suspension authority.[8]

Third, courts have long held that an imminent hazard/suspension decision is itself a final agency action that is subject to judicial review.  *See, e.g.*, *Envtl. Def. Fund v. Ruckelshaus* (*EDF II*), 439 F.2d 584, 592 (D.C. Cir. 1971) (rejecting arguments similar to EPA's here, holding that "an order denying suspension on the ground that there is no threat of 'imminent hazard' is

---

[7] Nor do any of the remaining Petition issues depend upon EPA's finding of no imminent hazard; they are distinct and separate agency actions, requesting EPA to take action pursuant to other provisions of FIFRA, *e.g.*, initiate Special Review and cancellation pursuant to 7 U.S.C. § 136d and correct deficient labels under 7 U.S.C. § 136(q).  *See* Hill Decl. Ex. A, at 33-39.

[8] That EPA may—or may not—"reconsider" (Hill Decl. Ex. D, at 1) the suspension denial in its separate response to the remainder of the Petition, after public comment, does not affect the finality of the denial.  That will be an entirely separate agency action, based on a separate agency record.  Contrary to EPA's assertion, because EPA issued its finding of no imminent hazard and suspension denial without notice and comment, this Court has subject matter jurisdiction to adjudicate Claim 1 under FIFRA § 16.  7 U.S.C. § 136n(a) (refusal to suspend without public hearing reviewable by the district courts); *cf. United Farm Workers v. Adm'r*, 592 F.3d 1080, 1083 (9th Cir. 2010).

sufficiently final in its impact to warrant judicial review under the FIFRA"); *id.* at 591 (existence of subsequent administrative proceedings did not alter the finality of a suspension denial under FIFRA because they are "designed solely to resolve the ultimate question whether cancellation is warranted, and not to shed any further light on the question whether there is a sufficient threat of 'imminent hazard'"); *accord Envtl. Def. Fund, Inc. v. Hardin (EDF I)*, 428 F.2d 1093, 1098 (D.C. Cir. 1970) (distinguishing between requests for suspension as an imminent hazard and cancellation, and holding that "an order expressly denying the request for suspension *or* for cancellation would clearly be ripe for review") (emphasis added); *id.* at 1099 (even an agency's failure to respond to a petition for suspension was a final agency action ripe for judicial resolution because the agency's "inaction results in a final disposition of such rights"). Here, EPA's finding of no imminent hazard as of July 2012 marks the agency's final determination regarding whether suspension is necessary; the agency's process in reaching that determination is reviewable. *EDF II*, 439 F.2d at 591 ("Once the Secretary has made a decision with respect to suspension, whether he decides to grant or to deny that relief, the 'imminence' of the hazard is no longer at issue.").[9]

Fourth, EPA's refusal to consider the information in its determination was unlawful. Despite the express command to assess whether unreasonable adverse effects exist in finding imminent hazard and issuing suspension, *see* 7 U.S.C. §§ 136(l), 136d(c), EPA arbitrarily cut off its review of the information before the agency.[10] The supplemental filings contained recently

---

[9] EPA's suggestion that Plaintiffs continued to "supplement" the Petition up to five months prior to initiating this suit is misleading. As EPA's exhibits make clear, pursuant to its decision to solicit public comments on the remainder of the Petition, on September 25, 2012, some Plaintiffs submitted information to the docket for the agency's consideration, and urged EPA to reconsider its July 2012 suspension denial. *See* Hill Decl. Exs. F-I, ECF Nos. 59-7 to -10. Plaintiffs filed suit nine months after EPA's July 2012 final action denying an imminent hazard.

[10] EPA erroneously claims that its incomplete review of the record before the agency was a result of the petitioners' "demand" for a response within ninety days. EPA's Mot. 12. FIFRA's definition of "imminent hazard" imposes a duty on EPA to independently assess the likelihood of "unreasonable adverse effects on the environment" that may result in the time it takes to initiate and complete the process to cancel a pesticide. *See* 7 U.S.C. § 136(l). That the Petition urged a ninety-day response does not abdicate the agency's duty under FIFRA. Contrary to EPA's statement, when contacted by the agency, the petitioners urged EPA to consider the supplemental information in making its imminent hazard determination, the same request petitioners made when filing the supplemental information. *See* Hill Decl. Exs. B-C, ECF Nos. 59-3, 59-4.

published studies, and detailed data of highly costly bee kills caused by clothianidin and thiamethoxam in the spring and summer of 2012, well prior to EPA's finding of no imminent hazard and suspension denial. This bee kill data chronicles significant losses suffered by at least two of the Plaintiff beekeepers, Steve Ellis and Jim Doan. Compl. ¶¶ 16, 18, 66, 82, 103-105; Hill Decl. Ex. C. EPA ignored this information in its determination.

"[A]n agency's refusal to consider evidence bearing on the issues before it constitutes arbitrary agency action within the meaning of § 706." *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). In *Butte County*, a county submitted a letter and report to an agency while the agency's decision was "still pending"; yet, the agency refused to consider them. *Id.* at 195. The court concluded that the agency's decision to disregard relevant evidence was unlawful, explaining that what "counted" when an agency is deciding to consider—or ignore—the submission of pertinent evidence is simply whether the agency has already made its decision, or whether that decision is still forthcoming. *Id.*

As in *Butte County*, Plaintiffs submitted information to EPA while the agency's response to the petition was pending. EPA's decision to ignore that critical information before issuing the suspension denial was arbitrary and capricious. *See, e.g.*, *Davis v. EPA*, 348 F.3d 772, 784 (9th Cir. 2003) (arbitrary and capricious for EPA to refuse to consider "relevant evidence" before decision on a Clean Air Act waive request); *Am. Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013, 1017 (9th Cir. 1984) ("In light of the comprehensive and reliable nature of the data collected by the federal observers, it was arbitrary for the agency to have simply disregarded it."). Plaintiffs have stated a cognizable claim that EPA's finding of no imminent hazard, made without consideration of the full record before the agency, was arbitrary and capricious.

## II. PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH SUBJECT MATTER JURISDICTION AND SUPPORT CLAIM 9

EPA's refusal to suspend clothianidin was also unlawful, because the agency's underlying finding of no imminent hazard was arbitrary and capricious. This Court has jurisdiction to review EPA's refusal to suspend clothianidin. 7 U.S.C. § 136n(a) ("[T]he refusal of [EPA] to . . . suspend a registration . . . [is] judicially reviewable by the district courts . . . .").

EPA's regulatory approvals have been a major factor in bee mortality and population decline, as well as that of protected species. Compl. ¶¶ 57-61. Beekeepers suffer from acute effects each spring, when neonicotinoid-treated corn is planted in virtually every state. *Id.* ¶ 4. Tens of thousands of their bee colonies are exposed to lethal levels of contaminated dust during corn planting season. *Id.* Beekeepers and honey producers are suffering devastating hardships, and many are going out of business. *Id.* ¶¶ 15-22, 64-67. The future of beekeeping is in doubt, and honey bee pollination services that have benefitted humans and plants for centuries may disappear. *Id.* ¶ 68. Recent studies indicate clothianidin provides no yield benefit to farmers, and their prophylactic use exacts severe costs to beneficial insects, biological control agents, and ecosystems; their costs to the nation as a whole exceed their benefits. *Id.* ¶ 70. These facts properly allege that continued use of clothianidin during the time required for cancellation will be "likely to result in unreasonable adverse effect on the environment" or to protected species. 7 U.S.C. § 136(l) (definition of imminent hazard); 7 U.S.C. § 136d(c) (suspension of pesticide registration to prevent imminent hazard). Nothing more is now required, and full resolution of the facts requires the administrative record to determine whether EPA improperly allowed such harms to continue. *Iqbal*, 556 U.S. at 663 (complaint does not require specific facts so long as it states a plausible claim for relief); *accord Lacey*, 693 F.3d at 911.

EPA's assertion that Claim 9 is duplicative of Claim 1 is misplaced: in Claim 1, Plaintiffs challenge the procedural defects of EPA's imminent hazard determination, that is, EPA's refusal to account for the new studies and data that Petitioners submitted. In Claim 9, Plaintiffs challenge the substance of EPA's decision that no imminent hazard existed, as arbitrary and capricious, apart from the agency's failure to consider the supplemental filings in 2012.[11]
*Compare* Compl. ¶¶ 103-04 (alleging EPA's procedural failure to consider supplemental

---

[11] Claim 9 relies on not only EPA's July 2012 suspension denial but also EPA's February 2011 refusal to suspend clothianidin in response to a December 2010 letter filed by Plaintiff Beyond Pesticides and a coalition of beekeeper and honey producers. *See* Compl. ¶¶ 5, 81; Letter from Jay Feldman *et al.* to EPA (Dec. 8, 2010), *available at* http://www.epa.gov/pesticides/about/intheworks/clothianidin-petition2.pdf; Response from EPA to Feldman *et al.* (Feb. 18, 2011), *available at* http://www.epa.gov/pesticides/about/intheworks/clothianidin-response-letter.pdf.

information in making an imminent hazard determination violated APA) *with* Compl. ¶¶ 141-44 (alleging EPA's decision was arbitrary and capricious because of the ongoing adverse effects).

## III.   PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT CLAIMS 3-4

Claims 3 and 4 allege that EPA unlawfully failed to provide the required public notice and opportunity for comment on the agency's approval of numerous uses of ninety-five clothianidin and thiamethoxam products.  Plaintiffs more than adequately plead the claims, listing the products that lacked the requisite notices and explaining the impacts of EPA's procedural failings on Plaintiffs and the environment.  Compl. ¶¶ 58-78, 112-13, 117-18.  These failings violated FIFRA and the APA.  Any further factual determination about what qualifies as "new uses" requiring notice must await record development.

### A.   EPA Failed to Publish Notices Required Under FIFRA.

FIFRA and its implementing regulations require that EPA "shall publish" a "notice of receipt of application" and a "notice of issuance" in the Federal Register for every pesticide product registration that utilizes a "new active ingredient" or that entails a "changed use pattern." 7 U.S.C. § 136a(c)(4); Compl. ¶¶ 37-38; *see* 40 C.F.R. § 152.102 (requiring EPA issue notices for a "new active ingredient" or "a new use").  A "new use" is defined as:

> (1) Any proposed use pattern that would require the establishment of, the increase in, or the exemption from the requirement of a tolerance or food additive regulation under section 408 of the Federal Food, Drug and Cosmetic Act;
> (2) Any aquatic, terrestrial, outdoor, or forestry use pattern, if no product containing the active ingredient is currently registered for that use pattern; or
> (3) *Any additional use pattern that would result in a significant increase in the level of exposure, or a change in the route of exposure, to the active ingredient of man or other organisms.*

40 C.F.R. § 152.3 (emphasis added).

Plaintiffs have pleaded more than sufficient facts to plausibly allege that EPA unlawfully failed to publish notices for clothianidin and thiamethoxam uses.[12]  First, Plaintiffs listed many

---

[12] EPA's contrary arguments (EPA's Mot. 23) improperly raise the applicable standard of review. *See, e.g.*, *Sheppard v. Davis Evans & Assocs.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012) ("Although this standard requires that a claim be 'plausible on its face,' it does not require that a complaint contain 'detailed factual allegations.' . . . As the text of Rule 8(a)(2) itself makes clear, even a 'short and plain' statement can state a claim for relief."  (quoting *Iqbal*, 556 U.S. at 679)).

products with approved uses that qualify as "new uses" or "changed use patterns," and should have been noticed by EPA. Compl. ¶¶ 79, 110-19. Second, Plaintiffs identified product uses that are "new uses" because they will "result in a significant increase in the level of exposure, or a change in the route of exposure, to the active ingredient of man or other organisms," thus triggering EPA's duty to provide notice. 40 C.F.R. § 152.3; *see* Compl. Apps. A-B.

Specifically, Claim 3—alleging EPA's failure to provide notice for specific uses of thirty-one clothianidin products—identifies the registrations lacking Federal Register notices, and incorporates Appendix A, which lists registered clothianidin products, and specifies for each product: (1) whether EPA published a Federal Register notice, and (2) the uses approved with the registration. Compl. ¶ 112, App. A.[13] The majority of product registrations listed in Appendix A and specified in the Complaint allowed "new clothianidin uses on crops and habitats." *Id.* ¶ 111-12, App. A. Many of the listed clothianidin products approved uses on major crop groups or commonly planted plants, resulting in new uses across vast acreages. *See Id.* ¶ 57 ([clothianidin products] approved in "a variety of agricultural, landscaping, and residential use markets."); ¶ 66 ([clothianidin uses] cover "hundreds of millions of acres."); *see generally id.* ¶¶ 57-78.

Claim 4—alleging EPA's failure to comply with the notice requirement under FIFRA for thiamethoxam products—is equally sufficient: EPA registered sixty-four thiamethoxam products for numerous new uses without either notice of registration application or notice of issuance. *See Id.* ¶ 116-117, App. B. These approvals resulted in thiamethoxam products used on major crops, outdoor plants and lawns, and other outdoor uses. *See id.* App. B (EPA registered thiamethoxam for uses on crops such as apples, citrus fruits, grapes and tree nuts, as well as turfgrass, lawns and landscape plantings, without publishing required notices); *id.* ¶ 117. Due to their toxicity, effects on species, and ability to persist in the environment, these approved uses have significantly increased thiamethoxam exposure, harming Plaintiffs' interests and the overall environment. *Id.* ¶¶ 57-78. Many of these new uses injured Plaintiff beekeepers because they approved uses on

---

[13] *See, e.g.*, *Hancock v. Hartford Life & Accident Ins. Co.*, No. CIV. 2:06-CV-00208-FCD-DAD, 2006 U.S. Dist. LEXIS 39774, at *5 (E.D. Cal. June 14, 2006) (On motion to dismiss, courts can consider exhibits submitted with the complaint).

crops and in habitats where their bees forage.  *Id.* ¶¶ *16-18, 20-22, 113, 118*.  At this stage, Plaintiffs have sufficiently alleged plausible claims that EPA failed to publish required notices for "new uses" and "changed use patterns" of clothianidin and thiamethoxam products.

### B.  EPA's Failure to Give Notice Violated FIFRA and the APA.

This lack of notice deprived Plaintiffs of the opportunity to understand and review the harmful effects caused by the uses of clothianidin and thiamethoxam, and to take action to urge the agency to remove these harmful products from the marketplace.  *Id.* ¶¶ *16-18, 22, 33*. FIFRA's public notice requirements are procedural safeguards, ensuring that the public can meaningfully participate in the agency's approval of chemicals with potential unreasonable adverse effects on the environment.  Plaintiff beekeepers were denied "knowledge that would have allowed them to protect their honey bees" from the harms of those products at the time they were commercialized.  *Id.* ¶¶ *113, 118*.  EPA's assertions[14] do not refute the lack of public data availability at the times of the product and use registrations that lacked Federal Register notices involved in this case.  *Id.* ¶¶ *112-18; see also id.* ¶¶ *58-78*, Apps A-B.

Courts often emphasize the importance of notice and comment.  *See, e.g.*, *City of Idaho Falls, Idaho v. Fed. Energy Regulatory Comm'n*, 629 F.3d 222, 229 (D.C. Cir. 2011) (failure to provide notice and comment "undermin[es] the values of public participation, fairness, and informed agency decisionmaking that the notice-and-comment process is designed to foster"); *United Mine Workers of Am. v. Mine Safety*, 626 F.3d 84, 95 (D.C. Cir. 2010) (notice is crucial to "ensure that agency regulations are tested via exposure to diverse public comment, . . . to

---

[14] Pursuant to Civil L.R. 7-3(a), Plaintiffs object to EPA's submission of the Declaration of Meredith Laws (Laws Declaration), and request that the Court disregard the declaration in its entirety.  *See* Hill Decl. Ex. J, ECF No. 59-11.  It is well-established that when resolving a motion under Rule 12(b), courts are not to consider materials outside the pleadings, but must limit review to the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).  Here, the Laws Declaration, purportedly offered "[s]olely for illustrative purposes" (EPA's Mot. 24 n.11), discusses what is a new use within the meaning of FIFRA.  Hill Decl. Ex. J.  As discussed *infra* in section III.C, what constitutes a "new use" under FIFRA must be determined on the entire administrative record.  As such, the Laws Declaration is premature and, because it is outside the complaint, must be disregarded.  Finally, that EPA submitted the Laws Declaration indicates that, contrary to EPA's suggestion, EPA has sufficient notice of the scope of Plaintiffs' Claims 3 and 4.

ensure fairness to affected parties, and . . . to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review"); *N.C. Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 763 (4th Cir. 2012) (importance of APA's "notice and comment procedure cannot be overstated").

In *Natural Resources Defense Council v. EPA* (*NRDC*), a seminal case discussing FIFRA's notice requirements, the court held that "EPA's failure to provide notice, invite comment, and publish [registrations] . . . constitutes a serious deficiency." 676 F. Supp. 2d 307, 313 (S.D.N.Y. 2009). The plaintiffs in *NRDC* sought to vacate pesticide registrations issued without adhering to the very same FIFRA's notice requirements at issue here. *Id.* at 308-310. As the *NRDC* court explained, "giving notice and inviting public comments before an agency takes action 'ensure[s] that affected parties have an opportunity to participate in and influence agency decision making at an early stage . . . .'" *Id.* at 313 (quoting *New Jersey v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980)). The same is true here.[15]

## C. Adjudication of What Constitutes "New Uses" Under FIFRA Requires Review of the Administrative Record.

Finally, EPA's arguments for further specificity are also, at a minimum, premature. Whether the alleged product approvals fall within the definition of "new use" is a question that requires review of the full administrative record. *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (a plaintiff is not prevented from "'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant. . . .") (internal citations omitted); *OSU Student Alliance v. Ray*, 699 F3d 1053, 1078 (9th Cir. 2012) ("all claims at the pleading stage . . . require[] development"); *cf. Salmon Spawning & Recovery Alliance v. Lohn,* No. C 06-1462RSL, 2008 U.S. Dist. LEXIS 30809 (W.D. Wash. Mar. 20,

---

[15] EPA also argues that Plaintiffs had other ways to get data about these new uses. EPA's Mot. 25 (citing 7 U.S.C. § 136a(c)(2)(A)). The lack of adequate notice for new use approvals in and of itself violates FIFRA and the APA, regardless of other FIFRA provisions. 7 U.S.C. § 136a(c)(4), 40 C.F.R. § 152.102; 5 U.S.C. § 706(2)(D) (court shall set aside agency action taken "without observance of procedure required by law"). Plaintiffs could not have known of the existence of "data" in EPA's possession because EPA failed to give public notice of their existence when it approved those specific uses. Compl. ¶¶ 110-19. That Plaintiffs later learned of the product registrations does not excuse the EPA's disregard of its statutory duties.

2008), at *10-11 ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.").

Although there is no FIFRA precedent on this precise question,[16] judicial review of agency action in analogous environmental and consumer protection statutes shows that the question of what constitutes a "significant increase" or "change in the route of exposure" will necessarily need to be viewed in the context of the full agency record. *See, e.g.*, *Tri-Valley CARES v. U.S. Dept. of Energy*, 671 F.3d 1113, 1127 (9th Cir. 2012) (evaluating agency's finding of no "significant" impact under the National Environmental Policy Act (NEPA) on the whole administrative record); *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 711-12 (9th Cir. 2009) (evaluating agency's conclusion that impacts were not "significant" in NEPA litigation on entire administrative record); *Precon Dev. Corp., Inc. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278, 294 (4th Cir. 2011) (turning to administrative record to determine whether agency had established "significant nexus" between wetlands and traditional, navigable waters).

## IV. PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT CLAIMS 5-6

Claims 5 and 6 explain that EPA violated FIFRA and the APA in conditionally registering and maintaining clothianidin and thiamethoxam products. Compl. ¶¶ 90-101; 120-27. FIFRA's conditional registration provisions authorize EPA to impose reasonable time periods to satisfy conditions for all pesticide products of the same or similar pesticide ingredient, and require EPA to initiate cancellation of products when conditions are not met at the conclusion of such time periods. For some uses of clothianidin and thiamethoxam, EPA has unlawfully withheld the imposition of conditions with limited time frames. For others, EPA has attached conditions with time frames but then allowed them to go unsatisfied, and in so doing, unreasonably delayed and unlawfully withheld the initiation of cancellation proceedings.

### A. EPA Can Conditionally Register Pesticides to Obtain Missing Information.

Conditional registrations are substantively and procedurally conditioned upon the

---

[16] Dismissal under Rule 12(b)(6) "[is] especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development." *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) (internal citation omitted).

subsequent fulfillment of missing data on the pesticide product's effects. First, EPA can only grant a conditional registration if the agency concludes that its approval will "not significantly increase the risk of any unreasonable adverse effect on the environment." 7 U.S.C. § 136a(c)(7)(A)(i)-(ii); *see* 40 C.F.R. § 152.114(d). Second, EPA may only issue and maintain a conditional registration for a limited period that is "reasonably sufficient" to generate the outstanding data. 7 U.S.C. § 136a(c)(7)(C). Further, EPA "shall" initiate the cancellation process if "at the end of the period provided for satisfaction of any condition imposed, that condition has not been met." *Id.* § 136d(e)(1); *see also* 40 C.F.R. § 152.115(b)(2) ("The registration will *expire* upon a date established by the Agency, if the registrant fails to submit data as required by the Agency. The *expiration* date will be established based upon the length of time necessary to generate and submit the required data.") (emphases added). Finally, once a condition and deadline has been imposed, EPA has the authority to apply it to subsequent registrations of new products or amendments of existing products based on the same pesticide active ingredient. *See* 7 U.S.C. § 136a(c)(7)(A).

### B. EPA Has Violated Conditional Registration Requirements by Not Canceling Conditional Registrations with Unsatisfied Conditions.

EPA's central argument—that Plaintiffs have failed to identify registrations with outstanding conditions—is incorrect. EPA's Mot. 25-26. Contrary to EPA's assertion, the Complaint identifies numerous conditional registrations with conditions that have been outstanding beyond a "reasonably sufficient" period. 7 U.S.C. § 136a(c)(7)(C); Compl. ¶¶ 90-101; 120-27. The Complaint and Appendices list twenty-three conditional registrations of clothianidin and fifty-eight conditional registrations of thiamethoxam, and identifies unsatisfied conditions—and thus missing information—associated with each of these conditional registrations. *Id.* ¶¶ 94-97, Apps. A-B. As the Complaint lists, some of the known outstanding conditions associated with the twenty-three clothianidin products include: (1) a pollinator field test; (2) an aerobic aquatic metabolism study; (3) a prospective groundwater monitoring study; and (4) a seed leaching study. *Id.* ¶ 94. EPA itself has acknowledged at least twenty-five outstanding conditions that are attached to the fifty-eight thiamethoxam registrations, covering

critical information regarding the pesticide's effects, such as the same outstanding pollinator field test for clothianidin, as well as a honey bee larval toxicity study, and a whole-sediment acute toxicity study for freshwater invertebrates. *Id.* ¶ 96.

These conditions have been outstanding for well-beyond a "reasonably sufficient period." Many have been imposed since 2003, *ten* years ago, while others have been outstanding for up to *thirteen* years. *Id.* ¶¶ 90, 94-95. More than ten years is beyond the time frame "reasonably sufficient" for the generation of missing data; indeed, EPA itself has indicated elsewhere that one to four years is a "reasonably sufficient" time period to satisfy conditions.[17]

Satisfying these conditions is crucial to understanding the toxicity of clothianidin and thiamethoxam, as well as their ability to persist in the environment, and increase species' exposure. For example, in the case of clothianidin's approval for use on corn and canola, the facts in the Complaint demonstrate that missing data on effects to pollinators (field test) and invertebrates (estuarine and marine) have not been submitted, nor has the agency received required data on clothianidin's long-term effects on the environment from the required seed leaching study and groundwater monitoring study. *Id.* ¶ 94. Similar studies and critical data are also outstanding regarding thiamethoxam's effects. *Id.*

Accordingly, the allegations in the Complaint demonstrate that EPA has violated FIFRA and the APA by allowing conditional registrations of clothianidin and thiamethoxam to remain despite lapsed conditions. EPA's argument (EPA's Mot. 27) that the agency does not have a mandatory duty to act is contrary to the plain language of the statute, which instructs that the agency "shall" begin cancellation of such pesticide products once the time period for satisfying a condition has lapsed. 7 U.S.C. § 136d(e)(1). "Shall means shall." *Brower v. Evans*, 257 F.3d

---

[17] U.S. Gov't Accountability Office, Report to H. Subcomm. on Env't and the Econ., H. Comm. on Energy and Commerce, *Pesticides: EPA Should Take Steps to Improve Its Oversight of Conditional Registrations* 3 (Aug. 2013) (2013 GAO Report), *available at* http://www.gao.gov/products/GAO-13-145. This Court can take judicial notice of government reports. *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (courts can take judicial notice of "records and reports of administrative bodies"); *Bradberry v. T-Mobile USA, Inc.*, No. C 06-6567 CW, 2007 U.S. Dist. LEXIS 34826, at *8-9 (N.D. Cal. Apr. 27, 2007) (taking judicial notice of Federal Communications Commission's report to Congress (citing *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953))).

1058, 1068 n.10 (9th Cir. 2001); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (by using "shall," "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory"). Pursuant to the APA, EPA has "unlawfully withheld" that duty. 5 U.S.C. § 706(1); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177-78 & n.11 (9th Cir. 2002). Further, even where EPA did not set a specific deadline for completion, FIFRA requires conditions be satisfied with a time frame "reasonably sufficient." Thus, for those conditions outstanding for many years beyond reasonable, EPA has "unreasonably delayed" canceling the registrations. 5 U.S.C. § 706(1); *see Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984); *Brower*, 257 F.3d at 1068.

EPA's violation is particularly egregious since the agency was aware, even prior to registering the first clothianidin product, that the pesticide posed significant risks to insects such as honey bees. Compl. ¶ 90, n.20. As a result of EPA's disregard of the requirements of FIFRA's conditional registration process, today, more than 100 clothianidin and thiamethoxam products, authorized for use across all major U.S. food crops, and lawn and outdoor plants, remain in the marketplace, despite their known likelihood to cause "unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(7)(C); Compl. ¶¶ 123, 127.

### C. EPA Has Violated FIFRA by Conditionally Registering Other Uses with Vague and Unenforceable Conditions.

EPA further violated FIFRA's conditional registration provisions for other approved uses of clothianidin and thiamethoxam by using vague and unenforceable condition language, without any identifiable deadline for satisfaction. Compl. ¶¶ 92-93. EPA conveniently overlooks these violations, and instead attempts to blame Plaintiffs for not specifically identifying conditions with corresponding satisfaction dates for all conditional registrations. EPA's Mot. 28. Similarly, the agency placed conditions "in reserve" in their entirety, essentially creating open-ended conditions, in contravention of FIFRA's mandate that any condition must be met within a "limited" time. Compl. ¶¶ 92-93, 122, 126. EPA cannot abdicate its FIFRA duties by avoiding imposing or monitoring satisfaction dates, and then arguing that Plaintiffs have not pleaded their case sufficiently.

The 2013 GAO Report highlights EPA's conditional registration confusion and inaccuracy. The audit found that, due to the lack of a reliable condition tracking system, "pesticides with conditional registrations could be marketed for years without EPA's receipt and review of these data." 2013 GAO Report at 1. Further, the GAO observed:

> EPA's lack of a reliable and comprehensive means of routinely collecting and tracking information on conditional registrations, including the status of registrants' submission of required data and [EPA's] review of these data, constitutes an internal control weakness and leaves [EPA] without an important management tool. For example, when registrants miss due dates without applying for waivers or extensions, it is difficult for [EPA] without a reliable tracking system to identify these cases for priority follow-up and notify the registrants that their pesticide registrations could be cancelled.

*Id.* at 20. Given that EPA *itself* has not properly tracked conditions, Plaintiffs cannot be faulted for pleading without further specificity, which the administrative record will bring. The sufficiency of a plaintiff's claim "should be commensurate with the amount of information available to" the plaintiff. *Sprint Fidelis Leads Prods. Liab. Litig. v. Medtronic, Inc. (In re Medtronic, Inc.)*, 623 F.3d 1200, 1212 (8th Cir. 2010); *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (describing information imbalance in certain ERISA actions and calling for "careful and holistic evaluation of . . . factual allegations" where defendants were in sole possession of facts necessary to state claims with particularity); *Arista*, 604 F.3d at 1 20 ("*Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." (citing *Twombly*, 550 U.S. at 555)). A court must deny the motion to dismiss so long as "the plaintiff pleads actual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Plaintiffs' allegations are more than sufficient to meet the standard.

Finally, EPA's claim (EPA's Mot. 26) that the six-year statute of limitations attaches to the dates of the *initial* registration decisions and that Plaintiffs are thus time-barred is without merit, because Plaintiffs' allegations are regarding the agency's failure to initiate cancellation proceedings *upon expiration* of the "reasonable" period for satisfying such conditions, not the

initial issuance of conditional registrations in 2003 (for clothianidin) or 2000 (for thiamethoxam).  Compl. ¶ 121 ("EPA has unreasonably delayed . . . and failed to issue [notices of cancellation for approximately twenty-three clothianidin conditional registrations with lapsed conditions]"); ¶ 125 (same allegation for nearly fifty-four thiamethoxam products with lapsed conditions).  Claims 5 and 6 did not accrue until after the passing of the reasonable period for compliance with the registration conditions.[18]

## V.  PLAINTIFFS ALLEGED SUFFICIENT FACTS TO SUPPORT CLAIMS 7-8

Plaintiffs' Claims 7 and 8 straightforwardly allege that EPA has violated FIFRA's statutory commands for unconditional registration by granting fourteen clothianidin products and seven thiamethoxam products as "unconditional registrations," without any conditions, despite the fact that conditions requiring critical data on clothianidin and thiamethoxam have still not been satisfied.  Under FIFRA, EPA can issue an unconditional pesticide product registration only if EPA determines it "will perform its intended function without unreasonable adverse effects on the environment," and that "when used in accordance with widespread and commonly recognized practice," the pesticide "will not generally cause unreasonable adverse effects on the environment."  *See* 7 U.S.C. § 136a(c)(5).

First, contrary to EPA's assertions, the Complaint specifies numerous outstanding conditions that call for information necessary for EPA to adequately analyze these two chemicals.  Compl. ¶¶ 92-101.  Specific outstanding conditions were alleged in the Complaint and incorporated by reference into Claims 7-8.  *Id.* ¶¶ 90-101, 120-28, 134.  Critical conditional registration data on clothianidin and thiamethoxam remains missing to date, including the field test for pollinators, as well as other crucial field studies.  *See supra* section IV.B.

Second, despite missing critical data from outstanding conditions, EPA has nonetheless registered fourteen clothianidin products and seven thiamethoxam products under FIFRA's *unconditional* registration process.  Compl. ¶¶ 131, 137.  EPA issued unconditional registrations

---

[18] Even assuming *arguendo* that the statute of limitations ran from imposition of a condition—rather than when EPA failed to act on its duty to initiate cancellation—the large majority of conditional registrations occurred within the six years prior to the filing of this case and fall squarely within this Court's jurisdiction.  *See* Compl. App. A-B.

to new clothianidin products, and "converted"—or issued new unconditional registrations—for three existing clothianidin products, even though these products had been conditionally registered with outstanding conditions first imposed in 2003. *Id.*, App. A.[19]  Similarly, EPA issued unconditional registrations to seven thiamethoxam products despite outstanding conditions first imposed on conditional registrations of thiamethoxam in 2000. *Id.*, App. B.

Third, these outstanding conditions—and the information about the pesticides to be obtained from their satisfaction—are crucial to EPA's understanding of the twenty-one unconditional registrations of clothianidin and thiamethoxam and their approved uses. *See* 7 U.S.C. § 136a(c)(7)(A) ("If the applicant is unable to submit . . . data . . . , [EPA] may register . . . the pesticide under such conditions as will require the submission of such data not later than the time such data are required to be submitted with respect to similar pesticides already registered . . . .").  Thus, the Complaint pleads sufficient facts alleging EPA violated FIFRA by issuing unconditional registrations despite knowing that there was missing information critical to the agency's determination regarding their unreasonable adverse effects on the environment.

Finally, EPA's decisions to register twenty-one clothianidin and thiamethoxam products unconditionally, including the agency's decisions to "convert" prior conditional registrations to unconditional registrations, are themselves final agency actions reviewable by this Court.[20]  *See* Compl. ¶¶ 131, 137, Apps. A-B.  FIFRA specifically sets forth two types of registrations, requiring different standards.  An unconditional registration can only issue if EPA's determination that the use of the product will not generally cause unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5).  EPA's decisions to approve clothianidin and thiamethoxam products unconditionally, despite missing critical information regarding the pesticides' effects on species and the environment, is contrary to FIFRA's standard for

---

[19] These "conversions" include Poncho 600, Titan FL, and Clothianidin Technical.  *See* Compl. App. A.  The 2013 GAO Report also points out EPA's lack of a tracking system for converted registrations.  2013 GAO Report at 4, 13.

[20] EPA's published policy—identifying the process for "conversion from conditional to unconditional registration"—highlights such agency actions.  51 Fed. Reg. 7,628 (Mar. 5, 1986).

unconditional registration.[21]  Each of the EPA's decisions to approve clothianidin and thiamethoxam pesticide products or "convert" pre-existing clothianidin product registrations under FIFRA's unconditional registration standard is a "final agency action."  *Wash. Toxics Coal. v. EPA*, No. C 01-132C, 2002 U.S. Dist. LEXIS 27654, at *25 (W.D. Wash. July 2, 2002) ("[E]ach pesticide registration constitutes a distinct agency action.").  Hence, Plaintiffs have pleaded sufficient facts to show that EPA improperly registered unconditional registrations for clothianidin and thiamethoxam products despite missing information needed to make the requisite determination for unconditional registration.

## VI.    PLAINTIFFS ALLEGED SUFFICIENT FACTS TO ESTABLISH SUBJECT MATTER JURISDICTION AND SUPPORT CLAIMS 13-14

EPA failed to consult with FWS pursuant to Section 7 of the ESA on the potential impacts to protected species or their habitat from the clothianidin and thiamethoxam approval decisions—which may affect numerous protected species and their habitat.  Plaintiffs' ESA claims are properly pleaded, stating claims upon which this Court can and should grant relief, and Plaintiffs provided EPA sufficient notice such that this Court has subject matter jurisdiction.[22]  The Court should deny EPA's motion to dismiss Plaintiffs' ESA claims.

### A.    EPA Violated the Endangered Species Act.

Plaintiffs have properly pleaded Claims 13 and 14—EPA's failure to consult under the ESA Section 7.  All that is required at this stage is that the Complaint's "factual content and reasonable inferences from that content, [] be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and summarizing *Iqbal* and *Twombly*).  Plaintiffs have exceeded that standard.  First, it is undisputed that EPA failed to consult with FWS, pursuant to Section 7 of the ESA, on the potential impacts to protected species or their habitat from any of the FIFRA clothianidin and thiamethoxam pesticide approval decisions.  Compl. ¶ 72.  In fact, EPA has never undertaken any Section 7

---

[21] EPA's published policy—identifying the process for "conversion from conditional to unconditional registration"—highlights such agency actions.  51 Fed. Reg. 7,628 (1986).

[22] Plaintiffs address Defendants' ESA standing arguments separately.  *See* Pls.' Opp'n to Def.-Intervenors' Mot. at 14-21 (filed concurrently).

consultation on the potential impacts of EPA's ongoing approval of clothianidin and thiamethoxam pesticides on listed species and their critical habitats.

Second, as Plaintiffs will show at summary judgment, these failings violate the ESA. EPA's approvals of these pesticides "may affect" protected species and their critical habitats, which should have triggered consultation. 50 C.F.R. § 402.14(a). Without first consulting, EPA authorized the use of over two million pounds of these pesticides annually, on over 100 million cropland and surrounding acres, despite the fact that both have harmful effects on threatened and endangered species. Compl. ¶¶ 2, 61, 66; 71-77. Clothianidin and thiamethoxam are systemic pesticides that are expressed throughout plant tissues, including a plant's flowers, pollen, and nectars. *Id.* ¶¶ 57–58. EPA has approved the use of clothianidin and thiamethoxam in over 100 total products and uses, on more than thirty crops, as well as ornamental, turfgrass, and structural applications. *Id.* ¶ 79, Apps. A-B. Like bees, ESA-protected insects forage on pollen or nectar from crops or plants treated with clothianidin or thiamethoxam, and ingest the pesticides, which results in paralysis, death, or damaging sub-lethal effects. *Id.* ¶¶ 71, 74.

EPA erroneously claims Plaintiffs have not pleaded with enough specificity as to species at risk (EPA's Mot. 33), but the Complaint lists at least fifteen protected insects and plant pollinators—from beetles to butterflies to grasshoppers—that are potentially directly affected by clothianidin and thiamethoxam products, *id.* ¶ 73, and the pesticides may also affect ESA-protected bird species that frequently forage in neonicotinoid-seed treated crop fields, *id.* ¶¶ 74, 77. Major exposure pathways include residues in pollen and nectar, dust from treated seeds and soils, planter exhaust, untreated but contaminated non-crop plants adjacent to treated fields, guttation droplets on both treated and untreated but contaminated plants, and residues from foliar uses. *Id.* ¶ 61. To make matters worse, neonicotinoid pesticides persist in the environment for several years, increasing the risk of cumulative toxic effects. *Id.* ¶ 60.

EPA itself has acknowledged that these pesticides may affect protected species and that ESA compliance was necessary:

> Clothianidin *is expected to present acute and/or chronic toxicity risk to endangered/threatened birds and mammals* via possible ingestion of treated corn and canola seeds. *Endangered/threatened non-target insects may be impacted* via

residue laden pollen and nectar. The potential use sites cover the entire U.S. because corn is grown in almost all U.S. states.[23]

*Id.* ¶ 75 (emphases added). EPA made similar acknowledgements regarding thiamethoxam.[24]

*Id.* Since § 7(a)(2) of the ESA requires consultation whenever an action "may affect" any listed species or critical habitat, these admissions establish EPA must consult. 50 C.F.R. § 402.14(a).

EPA is also wrong that Plaintiffs must plead facts showing that clothianidin and thiamethoxam products will "adversely affect" protected species (EPA's Mot. 33), because consultation is triggered by any agency action that "may affect" such species. "The threshold for triggering the [ESA] is relatively low: consultation is required when a federal action '*may affect* listed species or critical habitat.'" *Lockyer*, 575 F.3d at 1018 (emphasis in original) (quoting 50 C.F.R. § 402.14(a)); *see also id.* at 1018-19 ("*Any possible effect*, whether beneficial, benign, adverse or of an undetermined character, triggers the formal consultation requirement . . . ." (emphasis in original) (quoting 51 Fed. Reg. 19,926, 19,949 (June 3, 1986)); *Nat'l Wildlife Fed'n v. FEMA*, 345 F. Supp. 2d 1151, 1174-75 (W.D. Wash. 2004) ("The 'threshold for formal consultation must be set sufficiently low to allow Federal agencies to satisfy their duty to 'insure' under Section 7(a)(2).'" (quoting 51 Fed. Reg. at 19,949)).

Finally, EPA argues that Plaintiffs are required to plead a "particular place" and a "specific incident" where the clothianidin and thiamethoxam pesticide products that EPA has approved will kill protected species, but such impossible specificity is neither required by notice pleading standards nor by the ESA. This is not the same as a consultation challenge to a construction project in a particular geographic location; EPA's challenged pesticide use decisions are *nationwide* approvals that can be used anywhere. 50 C.F.R. § 402.02 (defining "action area" to include "all areas to be affected directly or indirectly by the Federal action and not merely the immediate area involved in the action"). EPA itself has admitted that "the

---

[23] EPA, *Pesticide Fact Sheet: Clothianidin, Conditional Registration* 16 (May 30, 2003), *available at* http://www.epa.gov/opp00001/chem_search/reg_actions/registration/fs_PC-044309_30-May-03.pdf.

[24] EPA, *Thiamethoxam Summary Document Registration Review: Initial Docket* 5 (Dec. 2011), *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-2011-0581-0002.

potential use sites cover *the entire U.S.* because corn is grown in almost all U.S. states."[25]  See
Compl. ¶ 75.  The protected species at risk have ranges that overlap with the nearly 100 million
acres of corn and other farmland treated with these pesticide products.  *See* Wu Decl. Exs. A-B
(maps showing overlap between listed species' critical habitats and corn acreage); Ex. C (EPA's
risk assessment showing overlap between listed species' critical habits and citrus fruit and tree
nut production areas); Ex. D (EPA's risk assessment finding effect on listed species from
thiamethoxam use on Arkansas rice).[26]  Plaintiffs have sufficiently alleged how EPA violated the
ESA by failing to consult, much more than what is required at this stage.  *Twombly*, 550 U.S. at
555 (factual allegations need only be definite enough to "raise a right to relief above the
speculative level").

## B.  *Center for Biological Diversity v. EPA* Supports Plaintiffs.

Both EPA and Defendant-Intervenors rely heavily on Magistrate Judge Spero's recent
decision in *Center for Biological Diversity v. EPA* (*CBD*), No. 11-cv-00293-JCS, 2013 WL
1729573 (N.D. Cal. Apr. 22, 2013).  *E.g.,* EPA's Mot. 33; Intervenors' Mot. 14-15, 24-25.  They
erroneously argue that Plaintiffs have "committed the same error identified" by Judge Spero in
that case, but a review of the opinion illustrates that the decision supports Plaintiffs, fatally
belying Defendants' arguments.

In *CBD*, the plaintiffs challenged *382 different* pesticides, arguing that ESA duties
attached to all of them, in one single, general ESA consultation claim.  2013 WL 1729573, at *4.
In sharp contrast, Plaintiffs here challenge only *two* pesticides—clothianidin and
thiamethoxam—with individual claims as to each.  Also, while the *CBD* plaintiffs raised no
FIFRA claims at all, *id.*,  Plaintiffs here have alleged numerous FIFRA claims as applied to both
pesticides.

---

[25] EPA, *Pesticide Fact Sheet: Clothianidin, Conditional Registration* 16, *supra* n.23 (emphasis
added).

[26] The Court can consider the Complaint's "factual content and reasonable inferences drawn
from that content" in reviewing a motion to dismiss.  *Moss*, 572 F.3d at 969 (9th Cir. 2009);
*Iqbal*, 556 U.S. at 678-79; *see* Fed. R. Evid. 201(b)(2) (allowing courts to take judicial notice of
facts that are "not subject to reasonable dispute" because they "can be accurately and readily
determined from sources whose accuracy cannot reasonably be questioned").

Crucially, the *CBD* plaintiffs did not allege any discrete, affirmative FIFRA actions as the trigger to EPA's consultation duties. *Id.* at *9 ("Notably, Plaintiffs do not allege that the EPA's act of registering the pesticides constitutes agency action."); *id.* ("Plaintiffs do not mention any 'affirmative act'—such [as the] act of registering pesticides; changing classification; requiring additional data; or canceling, restricting or suspending pesticide labeling or uses—at any point in the complaint."). This was the crux of the error identified by Judge Spero in dismissing that complaint with leave to amend. *Id.* at *22 ("Plaintiffs have not alleged specific affirmative acts for each pesticide triggering § 7 consultation.").

Contrary to EPA and Intervenors' misstatements, Plaintiffs have not erred similarly. Plaintiffs here have challenged two pesticides and *alleged numerous specific affirmative FIFRA actions regarding them as triggering ESA obligations*, including some expressly approved by Judge Spero: new product registrations, changing classifications to unconditional registrations, and failure to suspend uses. *Compare id.* at *9 *with* Compl. ¶¶ 159, 164, Apps. A-B.

Instead of alleging specific actions, the *CBD* plaintiffs relied only on the Ninth Circuit's "ongoing agency action" doctrine: pesticide approvals are part of a class of ongoing agency actions in which EPA has continuing discretionary control to benefit listed species and continues to act pursuant to that discretion. *CBD*, 2013 WL 1729573, at *9-10. They argued that under the Ninth Circuit's precedent applying the ESA's broad definition of "agency action," this was sufficient alone to trigger ESA consultation duties. *See, e.g.*, *Wash. Toxics Coal.*, 413 F.3d at 1033.[27] Judge Spero held that after *Karuk Tribe*, the Circuit had "altered the 'agency action' analysis" by expressly requiring a "further affirmative act." *CBD*, 2013 WL 1729573 at *10 (concluding prior cases were "implicitly overruled" by *Karuk Tribe* to the extent they held "ongoing control" was alone sufficient to trigger consultation "without further affirmative act").

---

[27] *See, e.g.*, *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 518 (9th Cir. 2010) ("An 'ongoing agency action' exists if the action 'comes within the agency's decisionmaking authority and remains so.'") (internal citations omitted); *see also Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1054-55 (9th Cir. 2004); *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 977 (9th Cir. 2003); *Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1130 (9th Cir. 1988).

Plaintiffs respectfully disagree with Judge Spero that *Karuk Tribe* overruled *sub silentio* the longstanding Circuit precedent on "ongoing agency action." EPA's ongoing authority over clothianidin and thiamethoxam is affirmative agency action triggering the duty to consult, as it was in *Washington Toxics*, 413 F.3d at 1033. This nature of EPA's authority is highlighted by the agency's continuous stream of new use approvals and conditional to unconditional registration conversions for these pesticides. FIFRA registrations are licenses that establish the terms and conditions under which the products may be lawfully sold, distributed, or used. EPA retains the ongoing authority to modify the terms and conditions of these licenses, including taking actions to protect listed species. *See* 7 U.S.C. §§ 136d(c), 136(l).

Nonetheless, it is unnecessary for this Court to reach this issue, because as explained above, Plaintiffs have not rested solely on EPA's ongoing authority over these pesticides, but rather have alleged numerous, affirmative FIFRA actions specific to clothianidin or thiamethoxam as triggering the duty to consult for each. Compl. ¶¶ 159, 164, Apps. A-B. Plaintiffs have properly pleaded their ESA consultation claims, and *CBD* supports Plaintiffs.

### C. Plaintiffs Provided Sufficient Notice.

On September 5, 2012, Plaintiffs Center for Food Safety, Beyond Pesticides, Sierra Club, Steve Ellis, and Tom Theobald, sent EPA a sixty-day notice letter, pursuant to the ESA's citizen suit provision, 16 U.S.C. § 1540(g), "concerning EPA's registration of the neonicotinoid insecticides clothianidin and thiamethoxam and including EPA's ongoing approval of scores of novel uses for those insecticides." *Id.* ¶ 89; *see* Hill Decl. Ex. E (notice letter), ECF No. 59-6. EPA's arguments regarding the purported lack of specificity in the notice letter (EPA's Mot. at 31) mirror its arguments regarding Plaintiffs' Complaint, *supra*, and should likewise be rejected. *See supra* section VI.A-B. Plaintiffs' nine-page notice letter and two detailed appendices were more than sufficient to put EPA on notice of its ESA Section 7 violations in order to rectify them, if EPA chose to so act.

The ESA citizen suit provision allows a citizen to sue anyone, including the United States or any governmental agency, "alleged to be in violation of any provision of [the ESA]." 16 U.S.C. § 1540(g)(1)(A). However, no lawsuit may be filed under the citizens suit provision

"prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision [of the ESA]." *Id.* § 1540(g)(2)(A)(i). Under the terms of the ESA, only three things are required for sufficient notice: (1) written notice; (2) given to the Secretary and to any alleged violator; (3) at least sixty days before filing suit. *Id.*[28]

Here, Plaintiffs' notice letter was more detailed than that required by the ESA. First, it was timely, more than two months before the filing of the Complaint. Second, while EPA argues the notice letter did not explain its violations (EPA's Mot. at 31), the notice letter's first paragraph plainly stated:

> EPA has violated, and remains in violation of, section 7 of the ESA by failing to insure, through consultation with the [FWS], that its registrations and numerous use approvals for clothianidin and thiamethoxam, which have enabled these pesticides' sale and use throughout the nation, are not likely to jeopardize the continued existence of any threatened or endangered species and/or result in the destruction or adverse modification of the critical habitat of any listed species.

Hill Decl. Ex. E at 1. Third, the notice letter explained Section 7's mandates and how EPA failed to comply with them. *Id.* at 3-4. Fourth, the notice letter did identify specific agency actions, including two detailed appendices listing thirty-five specific clothianidin products EPA has registered (appendix A to notice letter) and sixty-eight specific thiamethoxam products (appendix B to notice letter). Fifth, the notice letter listed eighteen specific ESA-protected species that are potentially harmed by the use of these clothianidin and thiamethoxam-based pesticides, such as the American burying beetle, the Kern primrose sphinx moth, and the Fender's blue butterfly, and explained how they are harmed. It pointed in detail to direct and indirect effects on many other listed species, including invertebrates, birds, and amphibians, largely based on EPA's own admissions. *Id.* at 4-7 & n.7. It explained the nationwide scope of

---

[28] Several environmental statutes have similarly-modeled notice requirements, *Hallstrom v. Tillamook County*, 493 U.S. 20, 23 (1989), and courts generally interpret these requirements similarly, *see, e.g.*, *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1072-73 (9th Cir. 1996) (relying on cases interpreting Clean Water Act (CWA) notice requirements in analyzing ESA notice requirements). However, in contrast to other federal environmental laws that include citizens suit provisions, such as the CWA, there are no regulations that have been promulgated pursuant to the ESA that further elaborate on what must be in a notice of intent to sue under the ESA. *Cf.* 40 C.F.R § 135.3 (EPA regulations establishing detail for notices of intent to sue under the CWA). Hence, any arguments of required specificity based on that CWA regulation are inapplicable in an ESA context. *Ctr. for Sierra Nevada Conservation v. U.S. Forest Serv.*, 832 F. Supp. 2d 1138, 1174 (E.D. Cal. 2011).

EPA's actions and its own acknowledgments of potential harm to protected species. *Id.* Finally, the notice letter stated what was needed to cure EPA's violations. *Id.* at 8. Nothing more is required. This detailed information far surpasses the statutory standard under the ESA, as interpreted by the Ninth Circuit, for "sufficient information of a violation so that the [alleged violator] c[an] identify and attempt to abate the violation." *Sw. Ctr. For Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998).

While the requirement to provide notice is strictly applied, the *sufficiency* of the notice provided is evaluated in a pragmatic manner. "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000) (quoting *Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 819 (7th Cir.1997); *San Francisco BayKeeper, Inc. v. Tosco Corp.* (*BayKeeper*), 309 F.3d 1153, 1155, 1158 (9th Cir. 2002) (notice letter "does not need to describe every detail of every violation; it need only provide enough information that the defendant can identify and correct the problem"). A sufficient notice letter need not be exhaustive in its treatment of an issue, or even primarily focused on the eventual statutory section or violation.[29]

EPA and Intervenors both argue that the Complaint includes seventeen pesticide products not listed in the notice letter. EPA's Mot. 31; Intervenors' Mot. 16. However, fourteen were approved in 2012, three in 2013, and four were registered after the date of the notice.[30] EPA did

---

[29] For example, in *Marbled Murrelet*, the plaintiffs sent multiple lumber companies and federal agencies a five-page notice of intent to sue that focused primarily on violations of Section 9 of the ESA, and referred to Section 7 "in only one part of the letter." 83 F.3d at 1073. The defendants argued that the notice was insufficient under the ESA because it contemplated primarily Section 9 violations. *Id.* The Ninth Circuit held that the letter was sufficient to put the defendants on notice of the plaintiffs' Section 7 claim, notwithstanding the fact that the notice letter included merely one sentence that recited Section 7 duties, because "the letter as a whole provided notice sufficient to afford the opportunity to rectify the asserted ESA violations." *Id.*

[30] The seventeen products and respective registration dates are: Prosper Evergol and Ernest Quantum (May 11, 2012); VBC3 Insecticide (September 25, 2012), NipsItSuite Canola Seed Protectant (January 1, 2012), and Inovate Neutral Seed Protectant (January 25, 2012), CruiserMaxx Vibrance Cereals (June 20, 2012), THX_MXM_FDL_TBZ FS and CruiserMaxx EZ (February 2, 2012), Derby and Tandem (April 23, 2012), CruiserMaxx Peanuts (April 30, 2012), Solvigo Miticide/Insecticide (June 21, 2012), Adage Deluxe and Adage Premier (August 23, 2012), Avicta Complete Beans (January 15, 2013), Endigo ZCX (January 15, 2013), and

not publish any of these products in the Federal Register, *see* Claims 3 and 4 *supra*, and thus no information on them was available to Plaintiffs at the time of the notice letter, something the notice letter specifically anticipated. Hill Decl. Ex. E, at 5 ("All told, EPA has approved about 85 total products in 12 years. *See* Appendices A and B, listing the approved uses for the two compounds including the dates of initial registration; more recent approvals may have occurred since these Appendices were prepared."). Nothing more is required. *See, e.g.*, *Sw. Marine*, 236 F.3d at 997 ("Subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.").

Even by the more exacting CWA notice standards, where more specificity is required by CWA regulations on adequate notice, courts do not require that the Plaintiffs give every instance of additional violation. In *Community Association for Restoration of the Environment (CARE) v. Henry Bosma Dairy*, the plaintiff listed some dates of violations in its notice letter and then added additional dates of similar violations in its complaint. 305 F.3d 943, 951-52 (9th Cir. 2002). Because the additional violations were "from the same source, were of the same nature, and were easily identifiable," the Ninth Circuit found the plaintiff's notice adequate. *Id.* at 953; *see also BayKeeper*, 309 F.3d at 1159. The same is true here with regard to the 2012-2013 additional product use registrations.

The Ninth Circuit also specifically weighs whether (1) the plaintiff had access to the defendants' records, and (2) whether defendant is in a better position to identify these details than the plaintiff. *BayKeeper*, 309 F.3d at 1158 ("Tosco [noticed defendant] is obviously in a better position than [plaintiff BayKeeper] to identify the exact dates, or additional dates, of its own ship loading. . . . Given the knowledge that Tosco already had, BayKeeper's letter was specific enough to notify Tosco of the nature of the alleged violations, as well as the likely dates on those violations."); *WaterKeepers N. Cal. v. AG Indust. Mfg. Inc*, 375 F.3d 913, 919-920 (9th Cir. 2004) ("[The noticed defendant] is in a much better position to know when it periodically washes down areas of its facility, and WaterKeepers' letter provided sufficient information to

SYT0511 (January 30, 2013).

permit [defendant] to identify the nature and dates of the alleged violations. The point of the Act's notice requirement is not to *prove* violations, it is to inform the polluter 'about what it is doing wrong,' and to allow it an 'opportunity to correct the problem.'") (internal citations omitted); s*ee also CARE,* 305 F.3d at 953 (explaining that Congress did not intend, in enacting the notice requirement, "to unduly burden citizens by requiring them to basically carry out the job of the [environmental enforcement] agenc[ies]"). The same is true of EPA and its additional use approvals here, particularly in the absence of Federal Register notices.

EPA and Intervenors also allege that Plaintiffs' notice was inadequate because three of the Plaintiffs were not on the notice letter. EPA's Mot. 20; Intervenors' Mot. 16. This simply misinterprets the claim: for clarification, Plaintiffs only bring ESA claims on behalf of the noticing plaintiffs, Center for Food Safety, Beyond Pesticides, the Sierra Club, Steve Ellis and Tom Theobald. The Complaint spelled out the noticing parties in ¶ 89, which was incorporated by reference in Claims 13 and 14 in ¶¶ 158 and 163. EPA had adequate notice.

In any event, EPA's reliance on *Washington Trout v. McCain Foods*, 45 F.3d 1351 (9th Cir. 1995), is misplaced. In *Washington Trout*, the court held that a CWA citizen suit notice did not satisfy notice requirements of CWA regulations because it failed to name two environmental organizations that eventually became sole plaintiffs in the case. *No* eventual plaintiff was named in the notice letter; the case was brought by *entirely* different parties. *Id.* at 1353-54. Hence the purpose of the notice letter was thwarted because the defendants "were not in a position to negotiate with the plaintiffs or seek an administrative remedy." *Id.* at 1354. Here, all but three plaintiffs were on the notice letter, and EPA was well aware of whom to seek out if it wished to negotiate. This case is instead analogous to *Klickitat County v. Columbia River Gorge Commission*, 770 F. Supp. 1419, 1424 (E.D. Wash. 1991), where the court rejected the same argument, holding "[t]he fact that other plaintiffs have joined in the litigation does not change the fact that the Forest Service was aware of the impending lawsuit and the basis for the claim." *See also Envtl. Def. Fund v. Tidwell*, 837 F. Supp. 1344, 1352-53 (E.D.N.C. 1992) (holding notice from two environmental organizations to suffice for three other organizations when all five sued the noticed defendants).

Finally, even if the Court found fault with the notice letter in any specific way, contrary to EPA's overbroad arguments, such failing would not wholly divest the Court of jurisdiction over the rest of Plaintiffs' ESA claims, assuming the Court held notice was properly given for the remainder. *See, e.g.*, *Sw. Marine*, 236 F.3d at 998 ("[T]he question in this case is not whether the district court had subject matter jurisdiction over *any part* of [p]laintiffs' action; [d]efendant does not contest that the notice was adequate as to the allegation that it had failed to *prepare* an adequate [plan]. Rather, the question is whether the district court exercised jurisdiction over *particular issues* that were not raised in the notice letter and, thus, were beyond the scope of the court's jurisdiction.") (emphases in the original); *see also Ctr. for Biological Diversity v. Chertoff*, No. C-08-2999 MMC, 2009 WL 839042, at *4 (N.D. Cal. Mar. 30, 2009) (holding notice sufficient for Coast Guard shipping channel activities mentioned in the notice letter, but not for other Coast Guard activities in other geographic areas not mentioned in the notice letter).

## CONCLUSION

EPA has violated their statutory duties in the agency's administration of clothianidin and thiamethoxam. As a result, clothianidin and thiamethoxam are found in insecticides across household, commercial, and agricultural uses; seeds treated with these toxic chemicals are planted across millions of acres each year. Significant declines in the populations of honey bees, native bees, pollinator species, and various threatened and endangered species have followed. The future of beekeeping, the source of pollination of our nation's crucial food supply, is in peril. Yet, EPA has continued to act in violation of the law.

There is no basis for the Court to exempt EPA's continued violations from judicial scrutiny. EPA's attempts to dismiss the case for lack of subject matter or insufficient pleading should be rejected. The present motions are to be decided simply on whether the Complaint alleges sufficient facts to support Plaintiffs' allegations of EPA's violations, and it does.

EPA's Motion to Dismiss should be DENIED.

Dated:  November 4, 2013

Respectfully submitted,


By:  /s/ Sylvia Shih-Yau Wu

SYLVIA SHIH-YAU WU (State Bar #273549)
GEORGE A. KIMBRELL (*Pro Hac Vice*)
PETER T. JENKINS (*Pro Hac Vice*)
PAIGE M. TOMASELLI (State Bar #237737)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: 415-826-2770 / F: 415-826-0507
Email:  swu@centerforfoodsafety.org
          gkimbrell@centerforfoodsafety.org
          pjenkins@centerforfoodsafety.org
          ptomaselli@centerforfoodsafety.org

*Attorneys for the Plaintiffs*