GEORGE A. KIMBRELL (*Pro Hac Vice*)
PAIGE M. TOMASELLI (State Bar No. 237737)
SYLVIA SHIH-YAU WU (State Bar No. 273549)
PETER T. JENKINS (*Pro Hac Vice*)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@centerforfoodsafety.org
        ptomaselli@centerforfoodsafety.org
        swu@centerforfoodsafety.org
        pjenkins@centerforfoodsafety.org

*Counsel for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

STEVE ELLIS, *et al.*,

   *Plaintiffs*,

  v.

STEVEN P. BRADBURY, *et al.*,

   *Defendants*,

  and

BAYER CROPSCIENCE LP, *et al.*,

   *Defendant-Intervenors*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:13-cv-01266-MMC

**PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENORS' MOTION TO DISMISS**

Date: January 24, 2014
Time: 9:00 am
Courtroom 7, 19th Floor

Honorable Maxine M. Chesney

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 1

ARGUMENT .................................................................................................................... 3

    I.      THIS COURT HAS SUBJECT MATTER JURISDICTION.............................. 3

          A.     FIFRA Does Not Require Plaintiffs to Present Claims 3-14 in a Petition nor EPA to Decide Those Claims Before Judicial Review...................................................................................... 3

               1.    Intervenors Attempt to Rewrite FIFRA. ........................................ 3

               2.    Intervenors' Inventions Are Unsupported by Case Law. ............................................................................................... 7

          B.     Plaintiffs' Claims Are Ripe.................................................................... 9

               1.    Procedural Failures Are Ripe for Review When the Failure Takes Place. ................................................................. 9

               2.    Plaintiffs Feel the Effects of the Procedural Violations in a Concrete Way. ....................................................... 11

          C.     This Court Has Jurisdiction Over Claims 5 and 13. ................................ 13

          D.     Plaintiffs Have Standing. ..................................................................... 14

               1.    The Complaint Adequately Alleges Facts Establishing Each Element of Standing..................................... 15

               2.    Defendants' Arguments for Further Specificity at this Stage Are Meritless. ................................................... 17

    II.     PLAINTIFFS HAVE PROPERLY STATED CLAIMS FOR RELIEF ............................................................................................ 21

          A.     Plaintiffs Did Not Waive Claims 3-4 and 7-9: Exhaustion of Administrative Remedies Is Not Required by FIFRA........................ 21

          B.     Claims 3-4 State Claims Upon Which Relief Can Be Granted........................................................................................ 22

          C.     Claims 7-8 State Claims Upon Which Relief Can Be Granted........................................................................................ 24

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**

*AFL-CIO v. Chao*,
    496 F. Supp. 2d 76 (D.D.C. 2007) ........................................................23

*AMVAC Chem. Corp. v. EPA*,
    653 F.2d 1260 (9th Cir. 1980) ..............................................................7

*Bastek v. Fed. Crop Ins. Corp.*,
    145 F.3d 90 (2d Cir. 1998) ..................................................................21

*Bennett v. Spear*,
    520 U.S. 154 (1997) ....................................................................14, 15

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
    710 F.3d 946 (9th Cir. 2013) ..............................................................4

*Ciba-Geigy Corp. v. Sidamon-Eristoff*,
    3 F.3d 40 (2d Cir. 1993) ....................................................................5

*Citizens for Better Forestry v. USDA*
    341 F.3d 961 (9th Cir. 2003) ........................................................ *passim*

*Coal. for A Sustainable Delta v. FEMA*,
    711 F. Supp. 2d 1152 (E.D. Cal. 2010) ..............................................18

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004) ..........................................................................4

*Covington v. Jefferson Cnty.*,
    358 F.3d 626 (9th Cir. 2004) ......................................................15, 16, 17

*Darby v. Cisneros*,
    509 U.S. 137 (1993) ..........................................................................5

*Defenders of Wildlife v. EPA*,
    882 F.2d 1294 (8th Cir. 1989) ........................................................8, 9

*Earth Island Inst. v. Carlton*,
    626 F.3d 462 (9th Cir. 2010) ..............................................................7

*Ecological Rights Found. v. Pac. Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) ............................................................16

*Fla. Key Deer v. Paulison*,
    522 F.3d 1133 (11th Cir. 2008) ..........................................................13

PAGE(S)

**FEDERAL CASES, CONT'D**

*Friends of the Earth v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000)..........................................................14, 16

*Friends of the River v. U.S. Army Corps of Eng'rs*,
    870 F. Supp. 2d 966 (E.D. Cal. 2012).............................................10

*Gonzales v. Oregon*,
    546 U.S. 243 (2006)............................................................3

*Hall v. Norton*,
    266 F.3d 969 (9th Cir. 2000) .................................................16

*Headwaters, Inc. v. Talent Irrigation Dist.*,
    243 F.3d 526 (9th Cir. 2001) .................................................15

*Idaho Conservation League v. Mumma*,
    956 F.2d 1508 (9th Cir. 1992) ...............................................19

*'Ilio'ulaokalani Coal. v. Rumsfeld*,
    464 F.3d 1083 (9th Cir. 2006) ...............................................22

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
    478 U.S. 221 (1986)............................................................7

*Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*,
    874 F.2d 205 (4th Cir. 1989) ................................................24

*Kern v. U.S. Bureau of Land Mgmt.*,
    284 F.3d 1062 (9th Cir. 2002) ...............................................10

*Kucana v. Holder*,
    558 U.S. 233 (2010)............................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................14, 18, 19, 24

*Mass. v. EPA*,
    549 U.S. 497 (2007)...........................................................20

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .............................................11, 15

*Merrell v. Thomas*,
    807 F.2d 776 (9th Cir. 1986) .................................................8

*Natural Res. Def. Council v. EPA*,
    676 F. Supp. 2d 307, 317 (S.D.N.Y. 2009)......................................7

**FEDERAL CASES, CONT'D**

*Natural Res. Def. Council v. Fox,*
30 F. Supp. 2d 369 (S.D.N.Y. 1998) ....................................................................5

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,*
117 F.3d 1520 (9th Cir. 1997) ..........................................................................20

*Ocean Advocates v. U.S. Army Corps of Eng'rs,*
402 F.3d 846 (9th Cir. 2005) .............................................................15, 17, 19

*Ohio Forestry Association v. Sierra Club,*
523 U.S. 726 (1998) ..........................................................................9, 10, 11

*Or. Envtl. Council v. Kunzman,*
714 F.2d 901 (9th Cir. 1983) ...............................................................................7

*Paulsen v. Daniels,*
413 F.3d 999 (9th Cir. 2005) ...........................................................................23

*Reckitt Benckiser Inc. v. EPA,*
613 F.3d 1131 (D.C. Cir. 2010) ..................................................................4, 7, 9

*Reckitt Benckiser, Inc. v. EPA,*
762 F. Supp. 2d 34 (D.D.C. 2011) .......................................................................9

*Resources Ltd. v. Robertson,*
35 F.3d 1300 (9th Cir. 1994) .......................................................................19, 20

*Salmon River Concerned Citizens v. Robertson,*
32 F.3d 1346 (9th Cir. 1994) .......................................................................19, 20

*Salmon Spawning & Recovery Alliance v. Gutierrez,*
545 F.3d 1220 (9th Cir. 2008) .....................................................................15, 17

*San Luis & Delta-Mendota Water Auth. v. Salazar,*
638 F.3d 1163 (9th Cir. 2011) ...........................................................................14

*Sierra Club v. Peterson,*
705 F.2d 1475 (9th Cir. 1983) ........................................................................7, 8

*Sprint Corp. v. FCC,*
315 F.3d 369 (D.C. Cir. 2003) ..........................................................................23

*Sugar Cane Growers Coop. of Fla. v. Veneman,*
289 F.3d 89 (D.C. Cir. 2002) .......................................................................23, 24

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994) ..........................................................................................21

**FEDERAL CASES, CONT'D**

*United Farm Workers v. EPA,*
   592 F.3d 1080 (9th Cir. 2010) ...............................................................................13

*Wash. Toxics Coal. v. EPA,*
   413 F.3d 1024 (9th Cir. 2005) .........................................................................7, 12

**UNPUBLISHED FEDERAL CASES**

*NW Coal. for Alts. to Pesticides v. EPA,*
   No. C10-1919, 2012 WL 4511371 (W.D. Wash. Oct. 1, 2012) ..............................18

*Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council,*
   No. 10-72104, 2013 WL 5227062 (9th Cir. Sept. 18, 2013)..................................23

*Wash. Toxics Coal. v. EPA,*
   No. C 01-132C, 2002 U.S. Dist. LEXIS 27654 (W.D. Wash. July 2, 2002).............18

**STATUTES**

5 U.S.C. § 702.................................................................................................................6

5 U.S.C. § 706(1) ............................................................................................................6

5 U.S.C. § 706(2)(D)......................................................................................................22

7 U.S.C. § 136a..............................................................................................................15

7 U.S.C. § 136a(c)(4)......................................................................................................22

7 U.S.C. § 136a(c)(5)(D).............................................................................................24, 25

7 U.S.C. § 136a(c)(7)(A)................................................................................................24

7 U.S.C. § 136a(f)(2) ......................................................................................................5

7 U.S.C. § 136d(b) .........................................................................................................4

7 U.S.C. § 136d(e)(1)......................................................................................................6

7 U.S.C. § 136d(e)(1), and .............................................................................................13

7 U.S.C. § 136j(a)(2)(G) .................................................................................................15

7 U.S.C. § 136n(a) ................................................................................................. *passim*

7 U.S.C. § 136n(b) ....................................................................................................3, 13

16 U.S.C. § 1536(a)(2)....................................................................................................13

**STATUTES, CONT'D**

16 U.S.C. § 1540(g) ...................................................................................5

21 U.S.C. § 346a .......................................................................................22

21 U.S.C. § 346a(b)(2)(B) .........................................................................22

21 U.S.C. § 348(b) ......................................................................................5

33 U.S.C. § 1365 .........................................................................................5

42 U.S.C. § 7604 .........................................................................................5

**CODE OF FEDERAL REGULATIONS**

21 C.F.R. § 10.30 ........................................................................................5

40 C.F.R. § 152.99 ......................................................................................4

40 C.F.R. § 152.102 ..................................................................................22

40 C.F.R. § 152.115(b)(2) ..........................................................................6

40 C.F.R. § 154.1(a) ...................................................................................4

40 C.F.R. § 154.10 ......................................................................................4

**OTHER AUTHORITIES**

EPA, *Thiamethoxam Final Work Plan for Registration Review*, June 2012,
    *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-
    2011-0581-0024 ...................................................................................12

S. Rep. No. 92-970 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4092 ................5

FWS, Envtl. Conservation Online Sys., Listed Animals,
    http://ecos.fws.gov/tess_public/pub/listedAnimals.jsp ........................21

PAGE(S)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In their motion, Intervenors conjure a far-fetched scheme whereby harmed parties could rarely, if ever, seek judicial review of the Environmental Protection Agency's (EPA) actions under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). According to Intervenors' scheme, interested parties, members of the public, and public interest organizations concerned about the impacts of pesticides on human health and the environment could only seek judicial review once EPA has "den[ied] a petition to cancel" a pesticide. *E.g.*, Intervenors' Mot. Dismiss (Intervenors' Mot.) 7, ECF No. 74. Despite the intended absence of any citizen petition requirement in FIFRA, Intervenors insist that those seeking relief must always petition EPA, then wait years (if not decades) for EPA to either respond to the petition or initiate Registration Review, something that happens only every fifteen years. This is not the law.

Intervenors also grossly overstate the details Plaintiffs are required to present at this early stage of litigation. According to Intervenors, Plaintiffs' fifty-two–page First Amended Complaint (Compl.), ECF No. 17, lacks the requisite specificity to support standing—despite ample detail about pesticide use and impacted species—and "fails to allege cognizable claims for relief." Intervenors' Mot. 1, 13. Intervenors assert that Plaintiffs are missing key facts to prove their claims. Intervenors' contrived version of judicial review would eliminate the need for an administrative record or discovery, instead requiring plaintiffs in FIFRA and Endangered Species Act (ESA) cases to prove all existing facts to support their cases.

If adopted, Intervenors' machinations would have sweeping ramifications, stripping courts of any meaningful role in overseeing EPA's actions for the fifteen-years-plus between registration and reregistration, and instead providing EPA with unbridled discretion over every aspect of pesticide use. In the meantime, adverse impacts to agriculture, biodiversity, and human health are free to occur and mount, and EPA's approval actions permitting these adverse impacts are completely inoculated from judicial review. Intervenors' arguments are contrary to the statute's plain language and relevant precedent, and the Court should reject them.

## FACTUAL BACKGROUND

One of every three bites of food we eat is from a bee-pollinated crop. Yet, over the past

decade, we have witnessed a steady and alarming decline in bee populations. This past winter was the worst in recent years for bee mortality, with government estimates exceeding thirty-percent loss. Several beekeeper Plaintiffs and numerous others across the nation reported average annual losses of forty to fifty percent, with some as high as 100 percent. Compl. ¶ 67.

Dozens of peer-reviewed studies link bee declines to pesticide use, showing the overwhelming effects that these toxic chemicals are having on bees and other wildlife. Experts have identified neonicotinoid insecticides, including clothianidin and thiamethoxam, as a major contributing factor to the shortage of pollinators. *Id.* ¶ 68. Experts also have identified the "domino effect" of cascading inadequate crop pollination, which could rapidly evolve into devastating losses to farmers, consumers, and the economy, since all rely on domestically-produced, bee-pollinated food and fiber crops. *Id.* Economic losses would be in the tens of billions of dollars. *Id.* The ecological, agricultural, and horticultural impacts of lost pollinators would likely be irreparable. *Id.*

Despite the documented body of harms from neonicotinoids, EPA registered over 100 thiamethoxam and clothianidin insecticide uses and products. *Id.* ¶ 79. In doing so, EPA has violated FIFRA in a number of ways. For example, in February 2003, EPA called for a field test to evaluate clothianidin prior to registration, specifically citing harm to pollinators. *Id.* ¶ 90. Less than two months later EPA reversed course, recommending "conditional" registration: the registrant could undertake the field study assessing the safety of clothianidin *while* EPA simultaneously allowed the nationwide sale and use of clothianidin. *Id.* ¶ 91. Ten years later, this condition remains unsatisfied. *Id.* The pollinator field test is only one of several outstanding conditions necessary to assess the safety of both clothianidin and thiamethoxam. Notwithstanding these data gaps, EPA has "unconditionally" registered various products with thiamethoxam and clothianidin ingredients. *Id.* ¶¶ 129, 135.

EPA has withheld mandatory action despite the insufficiency of registrants' submitted data and overwhelming evidence pointing to the significant risks these two chemicals pose to species, agriculture, and the environment. *Id.* ¶¶ 81-85. Instead, the agency hides behind its Registration Review process, a process that is not scheduled for completion until 2018—five

years from now. *Id.* ¶ 98. Several Plaintiffs commented on the dockets for these reviews, stating that the schedule is unreasonably slow in light of known risks, and urging EPA to commit to completing the reviews much sooner. Yet EPA has refused. *Id.* Thus Plaintiffs have filed the instant suit, challenging these and other violations of FIFRA and the ESA.

**ARGUMENT**[1]

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION

### A. FIFRA Does Not Require Plaintiffs to Present Claims 3-14 in a Petition nor EPA to Decide Those Claims Before Judicial Review.

Intervenors' fanciful FIFRA interpretation would create a new requirement that all interested parties must first petition EPA to be entitled to any judicial review of any EPA final agency action.[2] Intervenors' Mot. 8. This interpretation ignores the plain language of FIFRA, its legislative history, and applicable precedent. Following Intervenors' argument to its logical conclusion, pesticides could remain on the market for years, while EPA is shielded from any judicial review, except whether it has unduly delayed responding to a petition. This is not what Congress intended.

#### 1. Intervenors Attempt to Rewrite FIFRA.

Intervenors thinly-veiled attempt at statutory reconstruction would limit district court review "to the review of a final EPA petition decision." Intervenors' Mot. 9. However, FIFRA's judicial review provision is much broader than Intervenors contend, and places judicial review of Plaintiffs' claims squarely before this Court. The statute states: "the refusal of the Administrator to cancel or suspend a registration or to change a classification *not following a hearing* and *other final actions* of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States." 7 U.S.C. § 136n(a) (emphases added). On the other hand, under FIFRA, the court of appeals has the exclusive jurisdiction over "the validity of any order issued by the Administrator *following a public hearing*." *Id.* § 136n(b)

---

[1] For Plaintiffs' arguments with respect to Claims 1 and 9, see Plaintiffs' Opposition to EPA's Motion to Dismiss (Pls.' Opp'n to EPA's Mot.) incorporated by reference herein.

[2] Intervenors are of course entitled to no deference. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (deference is due only to agency tasked with interpreting the statute).

(emphasis added).

Yet Intervenors baldly assert this Court lacks jurisdiction because Plaintiffs were first required to petition the agency before seeking judicial review. Intervenors' Mot. 8-12. First, if Intervenors' misinterpretation was correct, then the district courts would *almost never have jurisdiction*, because when petitions are filed with an agency, the agency generally opens a docket for public comment. Hence, outside of the "imminent hazard" context presented in claim 1, all petitions would be subject to notice and comment and thus only proper in the court of appeals. This reading would render most of FIFRA § 16(a) superfluous, by eliminating review of any action not following a petition, notwithstanding the statute's clear directive otherwise. "It is a well-established rule of statutory construction that courts should not interpret statutes in a way that renders a provision superfluous." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013); *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 166 (2004) (Court is "loath" to "render part of the statute entirely superfluous").

Second, nowhere in FIFRA's statutory text—including § 16—does it provide a means for affected parties to petition the agency. In fact FIFRA specifically omits any indication of how issues that could warrant suspension or cancellation should be brought to EPA's attention. *See* 7 U.S.C. § 136d(b); *see also Reckitt Benckiser Inc. v. EPA*, 613 F.3d 1131, 1135 (D.C. Cir. 2010) (indicating that registrants wrote letter to EPA asking it to initiate cancellation proceedings).

FIFRA's implementing regulations are similarly lacking. Provisions for Special Review state that the Administrator may initiate the process "either on his own initiative, or at the suggestion of any interested person." 40 C.F.R. § 154.10. Elsewhere EPA regulations provide that "[a]n original data submitter *may* petition the Agency to deny or cancel the registration of a product . . . ." *Id.* § 152.99 (emphasis added). These regulations are a far cry from Intervenors' blanket assertion that a petition is always a prerequisite to judicial review. The cited provisions, relating to FIFRA's Special Review process,[3] are the only relevant provisions in FIFRA's

---

[3] The Special Review provisions exist solely to help EPA "determine whether to cancel, deny, or reclassify registration of a pesticide product because that product may cause unreasonable adverse effects on the environment." 40 C.F.R. § 154.1(a).

implementing regulations in which a citizen petition of this type—which Intervenors' claim is Plaintiffs' sole avenue for review—is mentioned. Yet, Intervenors' Motion ignores Special Review and focuses entirely on cancellation.

Contrary to Intervenors' claims, the general "presumption favoring interpretations of statutes [that] allow judicial review of administrative action is well-settled." *Kucana v. Holder*, 558 U.S. 233, 251-52 (2010) (internal citations omitted). Had Congress intended to require exhaustion through petitioning, it would have done so, as it has in nearly every other environmental statute.[4] Yet neither Congress nor EPA prescribes petition procedures before seeking judicial review. In fact, Congress contemplated a FIFRA citizen suit provision and *specifically decided against it*. *See* S. Rep. No. 92-970 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4092. Thus, a petition is not a prerequisite to this Court's jurisdiction. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (Exhaustion "is a prerequisite to judicial review only when expressly required by statute or when an agency rule [so] requires."); *Ciba-Geigy Corp. v. Sidamon-Eristoff*, 3 F.3d 40, 45 n.4 (2d Cir. 1993) (Administrative Procedure Act "prohibits courts from engrafting additional exhaustion requirements"); *Natural Res. Def. Council v. Fox*, 30 F. Supp. 2d 369, 377-78 (S.D.N.Y. 1998) (finding plaintiffs did not fail to exhaust administrative remedies because there was no requirement that plaintiffs petition EPA prior to bringing suit).

Intervenors also argue that FIFRA's § 6 is the exclusive mechanism for cancelling a pesticide, citing 7 U.S.C. § 136a(f)(2). Intervenors' Mot. 8. Yet, that provision of FIFRA—under a subsection titled "Miscellaneous"—does not address judicial review of EPA's regulatory oversight under FIFRA, but instead applies only to offenses by private parties. *See* 7 U.S.C. § 136a(f)(2) (entitled "Registration Not a Defense"). Nor does § 6 directly state or imply that "only" final orders of EPA under § 6 are subject to judicial review. *See* Intervenors Mot. 9 (citing 7 U.S.C. § 136d(h)).

---

[4] *See* 21 U.S.C. § 348(b) (food additives petitions under the Federal Food, Drug, and Cosmetic Act); 33 U.S.C. § 1365 (Clean Water Act citizen suits); 42 U.S.C. § 7604 (Clean Air Act citizen suits); 16 U.S.C. § 1540(g) (ESA citizen suits); *see also, e.g.,* 21 C.F.R. § 10.30 (procedures for citizen petitions under the Federal Food, Drug, and Cosmetic Act).

1   Section 136n(a) is the relevant jurisdictional provision, and it grants this Court purview
2   over EPA's refusal to suspend not following a hearing, as well as any "other final actions," such
3   as the conditional and unconditional use decisions here challenged.  For example, Claims 5-6
4   allege EPA failed to issue notices of intent to cancel—a mandatory act—when registrants failed
5   to comply with required conditions.  *Id.* § 136d(e)(1).  The regulations clarify the procedure,
6   stating that the registrations "expire" when conditions are not satisfied.  40 C.F.R. §
7   152.115(b)(2) ("The registration will expire upon a date established by the Agency, if the
8   registrant fails to submit data as required by the Agency.").  There is no requirement in FIFRA or
9   in applicable case law that a party first petition EPA to show a condition has expired in order to
10  challenge EPA's failure to act in court.  Further, the Administrative Procedure Act (APA)
11  entitles a person suffering legal wrong to challenge such a failure to act, 5 U.S.C. § 702, and a
12  reviewing court has the authority to "compel agency action unlawfully withheld or unreasonably
13  delayed," *Id.* § 706(1).  Finally, the statute does not leave registration expiration wholly to
14  EPA's discretion in these circumstances; a petition for agency action on a nondiscretionary duty
15  is not required before judicial review.  7 U.S.C. § 136d(e)(1) (EPA "*shall* issue a notice of intent
16  to cancel" if "at the end of period provided for satisfaction of any condition imposed, that
17  condition has not been met") (emphasis added).  A petition for agency action is not required
18  before seeking judicial review.  Intervenors cannot twist FIFRA like a Rubik's cube until it
19  resembles their misinterpretation of the statute.

20      Regardless, Intervenors' exclusivity arguments regarding cancellation under § 6 are
21  irrelevant, because as the Complaint makes clear, the remedy sought by Plaintiffs' Claims 3-8
22  and 13-14 is not for EPA to cancel, deny, or reclassify clothianidin or thiamethoxam product
23  registrations.  Rather, Plaintiffs seek multiple forms of relief, including declaratory relief, as well
24  as vacatur of the registrations and/or an injunction halting the pesticides' uses, unless and until
25  EPA complies with FIFRA and the ESA.[5]  The court has broad power to fashion an appropriate

26  _____

27  [5] *See, e.g.*, Compl. ¶ 168 (seeking "EPA to fully consider the information Plaintiffs submitted
    and the effects on ESA-listed species on the question of 'imminent hazard'"); *id.* ¶ 169 (seeking
28  declaration that registrations and changed use determinations that were not published in the

remedy, *see Earth Island Inst. v. Carlton,* 626 F.3d 462, 475 (9th Cir. 2010), which could

include, but is not limited to, an order requiring EPA to initiate § 6 cancellation proceedings.

2.    Intervenors' Inventions Are Unsupported by Case Law.

The applicable precedent fully supports Plaintiffs' position that EPA's FIFRA actions are

challengeable pursuant to FIFRA and the APA.  The Ninth Circuit has long held that direct

review of some FIFRA actions is permissible.  *See Or. Envtl. Council v. Kunzman*, 714 F.2d 901,

903 (9th Cir. 1983) (noting that the Ninth Circuit has "squarely held that Congress in eliminating

the citizens' suits provision did not foreclose review of violations of FIFRA under the APA");

*Sierra Club v. Peterson*, 705 F.2d 1475, 1478 (9th Cir. 1983) ("Mere silence in the statute should

not be read as precluding judicial review under the APA."); *see also Japan Whaling Ass'n v. Am.*

*Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986).  In both *Sierra Club* and *Oregon Environmental.*

*Council*, the Court rejected arguments similar to Intervenors'.

District courts review final agency actions besides petition denials.  *See, e.g.*, *Reckitt*

*Benckiser*, 613 F.3d at 1141 (EPA interpretation of its FIFRA misbranding authority was "other

final action" under 7 U.S.C. § 136n(a), and thus subject to district court review); *AMVAC Chem.*

*Corp. v. EPA*, 653 F.2d 1260, 1265 (9th Cir. 1980) (same as to EPA's decision not to hold a

public hearing regarding certain crops pursuant to request of pesticide manufacturer).  Courts can

vacate pesticide registrations even when FIFRA § 6 is not invoked.  In *Natural Resources*

*Defense Council v. EPA*, the district court vacated EPA's registration of spirotetramat, a

pesticide that caused "increased mortality in [bee] adults and pupae, massive perturbation of

brood development, early brood termination, and decreased larval abundance."  676 F. Supp. 2d

307, 317 (S.D.N.Y. 2009).  Courts also cancel, suspend, or vacate pesticides when EPA violates

other statutes.  *See, e.g. Wash. Toxics Coal. v. EPA,* 413 F.3d 1024, 1033-34 (9th Cir. 2005)

(affirming district court injunction of EPA's authorization of any use of the pesticides within

---

Federal Register violate FIFRA and vacate them); *id.* ¶ 170 (seeking declaration that conditional
and unconditional use approvals violate FIFRA and vacate them); *id.* ¶ 171 (seeking an order to
suspend use of clothianidin and thiamethoxam products); *id.* ¶ 173 (directing "EPA to comply
with the ESA"); *id.* ¶ 174 (enjoining EPA from approving new clothianidin and thiamethoxam
product uses).

proscribed distances of salmon-supporting waters in California, Oregon, and Washington, pending EPA's fulfillment of its ESA consultation obligations).

Intervenors cite several cases to support their dubious proposition, but not a single one actually supports it. Intervenors' Mot. 10-12. In *Merrell v. Thomas*, 807 F.2d 776 (9th Cir. 1986), the court did not address the direct reviewability of FIFRA decisions, nor did it overrule the earlier decisions in *Sierra Club* or *Oregon Environmental Council* on that point. Rather, *Merrell* only covers a "single legal issue": whether EPA must comply with the National Environmental Policy Act (NEPA) when it registers pesticides under FIFRA. *Id.* at 776. In dicta, the court noted that the plaintiff had other avenues to address pesticide registration, as "FIFRA contains procedures for cancelling or suspending registrations." *Id.* at 781. Despite Intervenors' insistence that *Merrell* would require a Plaintiff to first file a petition, the court merely mentions that interested persons can "influence" the Administrator's decisions through petitions. *Id.* at 780. The court otherwise holds more broadly that "FIFRA provides for judicial review of important EPA decisions." *Id.* at 781. In fact, the court held that Merrell did *not* fail to exhaust administrative remedies at all, because he sued for other forms of relief, *i.e.,* to compel compliance with NEPA, rather than cancellation under FIFRA. *Id.* at 782 n.3. *Merrell* does not stand for the proposition Intervenors assert—that a petition is the only way, or a prerequisite, to seek judicial review—and is therefore irrelevant.

Intervenors also rely on the extra-circuit *Defenders of Wildlife v. EPA*, 882 F.2d 1294 (8th Cir. 1989), arguing that court rejected plaintiffs' effort to challenge three existing registrations as not compliant with other statutes such as the ESA and the Migratory Bird Treaty Act (MBTA). First, *Defenders of Wildlife* affirmed that plaintiffs were not required to first exhaust administrative remedies pursuant to FIFRA in order to bring their ESA claims. *Id.* at 1300. Second, the court disallowed other claims as "collateral challenges" from the plaintiffs because, in sharp contrast to here, they were grounded in alleged violations of other statute such as the MBTA. *Id.* at 1302. Here, besides ESA Claims 13-14, Plaintiffs directly challenge the "final agency approval actions" of EPA as violative of FIFRA, not other statutes. *Id.* at 1302 ("Our situation is different. The EPA acted under FIFRA. Yet, Defenders seek review under the

Birds Acts...."). Those final FIFRA decisions challenged by Plaintiffs are directly reviewable by this Court under 7 U.S.C. § 136n(a). Finally, *Defenders of Wildlife* simply states that plaintiffs solely seeking cancellation must go through FIFRA's cancellation process. *Id.* at 1299. As discussed, Plaintiffs do not merely seek cancellation. Plaintiffs seek varied and multiple remedies, and are not limited to FIFRA § 6 for those other remedies.

Finally, Intervenors also misconstrue *Reckitt Benckiser, Inc. v. EPA*, 762 F. Supp. 2d 34 (D.D.C. 2011). The "only issue" presented in *Reckitt Benckiser* is whether EPA has the option of using a misbranding enforcement action against a registrant rather than a § 6 cancellation proceeding once it has determined that a product must be cancelled. *Id.* at 44. The *Reckitt Benckiser* court held that EPA does not have authority to bring a misbranding action against a registrant in lieu of a cancellation proceeding, *id.* at 49, based on the court's conclusion that Congress intended EPA to use § 6 cancellation to remove registered products from the market. *Id.* at 45. *Reckitt Benckiser* stands for the proposition that registrants are entitled to the cancellation procedures outlined in § 6, and EPA is required to follow those procedures when a product is not eligible for reregistration. The case has no bearing on whether a non-registrant party first needs to petition EPA before initiating a lawsuit challenging EPA's final agency actions under FIFRA.

## B. Plaintiffs' Claims Are Ripe.

### 1. Procedural Failures Are Ripe for Review When the Failure Takes Place.

Intervenors argue that Claims 5, 6, 13, and 14 are currently pending before EPA— pursuant to the Clothianidin Legal Petition (Petition) or as part of Registration Review—and are therefore not ripe. Intervenors' Mot. 12-13. According to Intervenors, then, Plaintiffs are in a "Catch 22": either (1) Plaintiffs failed to petition EPA, barring judicial review; (2) Plaintiffs have already petitioned EPA, barring judicial review; or (3) the pesticide is currently under registration review, barring judicial review. This argument does not hold water.

Intervenors rely on *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726 (1998), to support their contention that these claims are not ripe. Intervenors' Mot. 12-13. Yet to the contrary, *Ohio Forestry* and subsequent Ninth Circuit case law support the adjudication of

Plaintiffs' claims.  In *Ohio Forestry*, the Supreme Court made a distinction between a challenge

to the validity of the agency's action itself and a challenge to the process an agency uses to come

to a particular action, such as a procedural challenge under NEPA:

> [The Forest] Plan, which through standards guides future use of forests, [does not]
> resemble an environmental impact statement prepared pursuant to NEPA.  That is
> because in this respect NEPA … simply guarantees a particular procedure, not a
> particular result.  Hence a person with standing who is injured by a failure to
> comply with the NEPA procedure may complain of that failure at the time the
> failure takes place, for the claim can never get riper.

523 U.S. at 737 (citations omitted).   The Ninth Circuit has also recognized this distinction.  *Kern*

*v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1071 (9th Cir. 2002) (holding that challenge to

NEPA analysis was ripe because procedural injuries "occurred when the allegedly inadequate

[NEPA analysis] was promulgated").

Most of Plaintiffs' claims, including violations outlined in Claims 1, 3, 4, 5, 6, 7, 8, 13,

and 14, are procedural and "can never get riper."  *See Citizens for Better Forestry v. USDA*, 341

F.3d 961, 977 (9th Cir. 2003) (holding that injury becomes ripe when the procedural violation

occurred); *Friends of the River v. U.S. Army Corps of Eng'rs*, 870 F. Supp. 2d 966, 978-979

(E.D. Cal. 2012) (Plaintiffs' procedural challenges to agency decisions were immediately ripe for

review because they "will influence subsequent site-specific actions" and "pre-determine[] the

future") (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1088, 1091 (9th Cir. 2003)).

FIFRA and the ESA "guarantee[] a particular procedure" and EPA violated that procedure.

*Kern*, 284 F.3d at 1071.  For example, Claim 1 alleges that EPA failed to consider critical

supplemental information when reaching its finding that clothianidin does not pose an imminent

hazard.  Compl. ¶¶ 102-05.  Claims 3-4 allege that EPA failed to provide notice of thiamethoxam

and clothianidin applications.  *Id.* ¶¶ 110-19.  Claims 5-6 allege that EPA's failure to cancel

conditionally registered clothianidin and thiamethoxam products, whose registrations had

expired under EPA regulations, violated FIFRA.  *Id.* ¶¶ 120-27.  Claims 13-14 allege EPA's

failure to consult on the impacts of these products on endangered species violated the ESA.  *Id.*

¶¶ 158-67.  These claims challenge EPA's procedural failings in multiple contexts, which

Plaintiffs properly challenge now.

## 2. Plaintiffs Feel the Effects of the Procedural Violations in a Concrete Way.

Intervenors disregard a critical purpose of the ripeness doctrine: "to protect the agencies from judicial interference until an administrative decision has been formalized *and its effects felt in a concrete way by the challenging parties*." *Ohio Forestry*, 523 U.S. at 733 (emphasis added) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  In fact, "whether delayed review would cause hardship to the parties" is one of three factors courts use to decide if an agency decision is ripe for review.  *Id.* at 733.  Plaintiffs' Complaint sufficiently establishes that the effects of EPA's decisions not to issue an imminent hazard determination (Claim 1), not to provide for notice and comment (Claims 3-4), not to initiate cancellation (Claims 5-6), and not to consult (Claims 13-14) are being felt "in a concrete way" by the challenging parties.

The Complaint describes the Plaintiffs' hardships at length.  For example, Plaintiff Doan has been unable to keep from losing more than fifty-percent of his hives each year since 2006, and in 2012, he suffered a devastating bee kill that came from clothianidin-treated cornfields near his bee colonies.  Compl. ¶ 18.  Similarly, Plaintiff Ellis has recently suffered losses due to clothianidin and/or thiamethoxam.  Compl. ¶ 16.  Organizational Plaintiffs' members are also harmed.  Compl. ¶¶ 23-33; *see Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (on a motion to dismiss, courts must presume that "general allegations embrace those specific facts that are necessary to support the claim").

The other ripeness factors—whether judicial intervention would inappropriately interfere with further administrative action and whether the courts would benefit from further factual development, *Ohio Forestry*, 523 U.S. at 733—also weigh in Plaintiffs' favor.  In *Citizens for Better Forestry*, the Ninth Circuit found that judicial review would not interfere with further administrative action because the challenged rule was at an "administrative resting place."  341 F.3d at 977 ("USDA is working to produce a replacement rule and the 2000 rule exists as an optional protocol for the agency to follow in the interim.").  This matter is also at an administrative resting place.  EPA repeatedly procedurally violated FIFRA and the ESA, reinforcing the status quo for both clothianidin and thiamethoxam products.  A court order requiring EPA to comply with FIFRA and the ESA will not interfere with further administrative

action—it will simply set EPA on the legally-mandated path.  It is irrelevant that EPA may *consider* complying with FIFRA and the ESA as part of the Petition and Registration Review at some undefined point in the future.

Moreover, EPA's Registration Review process is not slated for completion until 2018.[6] Under Intervenors' scheme, Plaintiffs, if not satisfied with EPA's review decisions in 2018, would then need to file a petition with EPA asking it to remedy its failures.  Plaintiffs would then continue to wait perhaps two or three additional years to obtain a response to that petition from EPA, and only then would Plaintiffs' claims be "ripe" in federal court.  Suggesting 2020 or 2021 as the requisite time frame to initiate the Plaintiffs' legal claims based on EPA actions and inactions that occurred in the mid-2000s is an outlandish reading of FIFRA.

Even absent Plaintiffs' Petition, Intervenors argue Claims 5-6 and 13-14 are not ripe solely because EPA initiated registration review for both clothianidin and thiamethoxam. Intervenors' Mot. 12-13.  In other words, once EPA has initiated registration review, pesticide registrations are immune to administrative or legal challenges.  Such a result exposes Intervenors' argument as the Red Herring it is—if Registration Review trumps all actions against EPA while the review is pending, then it is irrelevant whether Plaintiffs filed a petition.

Regardless of the pending Petition or Registration Review, the Court has the power to effectuate meaningful relief now.  Fox example, the Court could order EPA to vacate the clothianidin registrations unless and until the agency completes the formal consultation process. *See, e.g,. Wash. Toxics Coal.,* 413 F.3d at 1035 (affirming lower court order enjoining agency authorization of pesticides pending agency's completed ESA consultation).  The Court "can enjoin agency action pending completion of section 7(a)(2) requirements," *id.* at 1034; Plaintiffs are offered no similar relief while EPA considers the claims in the Petition or Registration Review.  If EPA has committed "substantial procedural violation[s]" of the ESA, the remedy "*must* therefore be an injunction of the project pending compliance."  *Id.* (emphasis added); *see*

---

[6] EPA, *Thiamethoxam Final Work Plan for Registration Review*, June 2012, at 9 *available at* http://www.regulations.gov/#!documentDetail;D=EPA-HQ-OPP-2011-0581-0024; Compl. ¶¶ 96-98 (The clothianidin Registration Review is also due in 2018.).

also *Fla. Key Deer v. Paulison,* 522 F.3d 1133, 1147 (11th Cir. 2008) (noting it is "settled" that court may enjoin agency from "further noncompliant action pending satisfaction" of the ESA).

Under Intervenors' framing, once EPA engages in any review process, it forever stalls judicial review. This flies in the face of settled law. Plaintiffs adequately pleaded all their claims and they are ripe for judicial review.

### C.    This Court Has Jurisdiction Over Claims 5 and 13.

Intervenors' next installment in their "heads we win, tails you lose" argument is that this Court lacks jurisdiction over Claims 5 and 13 because these claims were also "subjected to notice-and-comment as part of the Petition." Intervenors' Mot. 7. This Straw Man argument misconstrues the facts and the underlying purpose of Plaintiffs' lawsuit. Plaintiffs are not challenging EPA's forthcoming response to the Petition, nor do Plaintiffs claim that EPA's final decision on the remaining issues in the Petition should be heard in this Court—it is clear that the court of appeals has jurisdiction over a challenge to EPA's eventual response to the Petition, made after a public hearing. 7 U.S.C. § 136n(b). Claim 5, alleging EPA failed to cancel conditionally registered clothianidin products, and Claim 13, alleging EPA failed to consult in violation of the ESA, challenge EPA's failure to act in two distinct procedural contexts. Nether decision was subject to a public hearing therefore both claims are properly heard by this Court.

A public hearing, at a minimum, includes proceedings where written submissions are considered, even if no public argument takes place. *United Farm Workers v. EPA*, 592 F.3d 1080, 1082-83 (9th Cir. 2010). Here, EPA did not solicit comment on whether to act per Claim 5 or Claim 13, or consider written submissions. Rather, EPA simply failed to adhere to FIFRA's statutory requirement to initiate cancellation proceedings on conditionally registered pesticides when conditions have not been met, 7 U.S.C. § 136d(e)(1), and to ESA § 7 consultation requirements, 16 U.S.C. § 1536(a)(2). Because those decisions were made without public notice and comment, EPA did not hold a "public hearing," and jurisdiction therefore rests squarely in the district court. 7 U.S.C. § 136n(a).

Further, there is limited overlap between the Petition and this lawsuit. First, the Complaint is broader than the relief requested in the Petition. The Petition covered only the

active ingredient clothianidin and referred to those products that existed at the time of its filing, on March 20, 2012. The Petition seeks suspension, cancellation proceedings, and for EPA to cure the unconditional registrations of clothianidin products due to a failure to satisfy the pollinator field test condition. Hill Decl. Ex. A, at 31-35. The Petition does not mention the five other unsatisfied conditions now known to Plaintiffs and listed in their Complaint—(1) Whole Sediment Acute Toxicity Invertebrates, Freshwater; (2) Whole Sediment Acute Toxicity Invertebrates, Estuarine and Marine; (3) Aerobic Aquatic Metabolism; (4) Seed Leaching Study; and (5) Small-Scale Prospective Groundwater Monitoring Study—nor any unspecified conditions that this litigation may uncover. Compl. ¶ 94. Additionally, the Complaint incorporates a recent American Bird Conservancy (ABC) report by an avian toxicologist examining EPA clothianidin and thiamethoxam approval documents, and finding numerous critical errors and failures related to birds—including endangered species. Compl. ¶ 77, n.11. This report was published a year after the Petition was filed, and adds factual and scientific context to Plaintiffs' claims. Finally, three Plaintiffs (Bill Rhodes, Sierra Club, and Center for Environmental Health) were not parties to the Petition; they are not in same procedural posture as the Petition Plaintiffs, and would not be bound by the Petition regardless.

EPA's eventual response to the Petition has no bearing on whether EPA violated FIFRA and the ESA. Plaintiffs have adequately alleged that EPA has in fact violated these statutes, and these claims are properly before this Court.

### D. Plaintiffs Have Standing.

Plaintiffs have standing because they have (1) suffered injury (2) traceable to EPA's challenged conduct that is (3) redressable. *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1169 (9th Cir. 2011). Plaintiffs meet each of these constitutional requirements, which are "relatively modest" at this stage. *Bennett v. Spear*, 520 U.S. 154, 171 (1997).[7]

---

[7] Plaintiffs have prudential standing because their environmental, health, and economic interests

This is a procedural case in which Plaintiffs are injured by EPA's failure to comply with the procedures of FIFRA and ESA § 7, which affects the standing query. *See, e.g.*, *Citizens for Better Forestry*, 341 F.3d at 970-71 (both failure to provide notice and comment on agency action and to consult under ESA are types of "procedural injury . . . cognizable for standing purposes"). Thus for cognizable injury, Plaintiffs must only "allege (*and on summary judgment adduce sufficient facts to show*) that (1) the [agency] violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Id.* at 969-70 (emphasis added). Further, because "part of [Plaintiffs'] claim stems from procedural irregularity, the redressability and imminence of injury requirements are relaxed." *Covington v. Jefferson Cnty.*, 358 F.3d 626, 641 (9th Cir. 2004); *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) ("A showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation, and redressability." (citing *Lujan*, 504 U.S. at 572 n.7)).

          1.    <u>The Complaint Adequately Alleges Facts Establishing Each Element of Standing.</u>

The facts alleged in the Complaint—which must be taken as true at this stage, *see, e.g.*, *Maya*, 658 F.3d at 1068—establish Plaintiffs' standing. First, commercial beekeeper and honey producer Plaintiffs Ellis, Doan, Rhodes, and Theobald have suffered and continue to suffer concrete and particularized injury in the form of severe clothianidin-and thiamethoxam-related bee kills, lost business opportunities, significant economic costs, increased stress and anxiety and other personal harms associated with those die-offs. Compl. ¶¶ 15, 21-22. For example, Minnesota beekeeper Mr. Ellis has averaged thirty to sixty percent bee mortality annually, *id.* ¶

are within the "zone of interests" to be protected by FIFRA. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 861 (9th Cir. 2005) (holding that plaintiffs need only show their interests share a "plausible relationship to the policies underlying each statute"); *see Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 531-32 (9th Cir. 2001) (holding that FIFRA's objectives are to protect human health and the environment from pesticide harm, while taking into account economic, social, and environmental costs and benefits) (citing 7 U.S.C. §§ 136a, 136j(a)(2)(G)). The prudential standing requirement is inapplicable to ESA citizen suits. *Bennett*, 520 U.S. at 164.

16; Mr. Theobald of Colorado lost forty to sixty percent of his colonies in 2011-2012 and had his worst honey crop in thirty-seven years, *id.* ¶ 17; and in 2008, Florida beekeeper Mr. Rhodes lost 7200 of his 9000 hives, *id.* ¶ 20.

Similarly, the Complaint explains that the public interest group Plaintiffs are also being adversely affected because protection of bees and other pollinators is central to their organizational missions, which include ensuring healthy ecosystems and sustainable farming, and decreasing toxic pesticide use. *Id.* ¶¶ 23-32.[8] Each also has strong interests in the conservation of ESA-listed species that may be directly and indirectly affected by clothianidin and thiamethoxam. *Id.* ¶¶ 23, 29, 32. Numerous organizational Plaintiffs' members visit the habitats of many of the ESA-listed species, such as native pollinators and birds, regularly enjoy utilizing these natural places for "conservation, environmental, recreational, aesthetic, and economic interests"; and intend to continue to visit those habitats. *Id.* ¶¶ 23, 32, 33. Their use is harmed by the challenged conduct, EPA's unrestricted nationwide approvals of the pesticide products at issue, and they express reasonable concerns therewith. *Id.* These are cognizable injuries. *See, e.g., Covington*, 358 F.3d at 639; *Laidlaw*, 528 U.S. at 183 ("Environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity.").

The Complaint also adequately alleges a "reasonable probability" that Plaintiffs' interests in bees, other pollinators, and ESA-protected species are harmed by EPA's continuing registration and unrestricted nationwide use approvals of clothianidin and thiamethoxam. *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2000). Further, the Complaint adequately alleges that these harms are traceable to EPA's challenged conduct. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000). Namely, EPA's decisions to register and maintain uses of

---

[8] Organizations have standing to bring suit on behalf of their members when, as here, their members would otherwise have standing to sue in their own right, the interests at stake are germane to the organizations' purposes, and the case does not require the participation of individual members. *See, e.g., Laidlaw*, 528 U.S. at 181; *see also* Compl. ¶¶ 23-33.

clothianidin and thiamethoxam across millions of acres without, *inter alia*, known missing data requirements, adequate public notice and comment, responding adequately to Plaintiffs' petition and letter submissions, and undertaking any analysis of impacts to ESA-protected species, are violations of FIFRA and the ESA. Compl. ¶¶ 79-101. These pesticides' harms would not occur but for EPA's challenged approvals, continued registration, and failure to act. *Id.* ¶¶ 105, 114, 119, 123, 127, 133, 139, 144, 149, 162, 164. The Complaint provides pages of detailed allegations on the systemic pesticides' impacts. *Id.* ¶¶ 57-70 (bee impacts), 71-78 (other species). For example, it explains that many other nations have suspended or restricted their use, and that U.S. government scientists and peer-reviewed studies (that EPA has ignored) have confirmed bee risks. *Id.* ¶¶ 62-64, 69. The Complaint non-exhaustively lists specific ESA-protected species, *id.* ¶¶ 72-73, quotes EPA's own admissions regarding the likelihood of harm to them, *id.* ¶¶ 74-76, and incorporates a groundbreaking 2013 report from the ABC showing dangers to "broad suites of birds," especially seed-eaters, including ESA-listed birds, *id.* ¶ 77.

Finally, the Complaint adequately alleges redressability. *See id.* ¶¶ 168-174. It is enough that relief in the form of lawful FIFRA and ESA compliance merely "could" influence the agency's actions. *See Ocean Advocates*, 402 F.3d at 860-61; *Salmon Spawning*, 545 F.3d at 1226-27 ("Plaintiffs alleging procedural injury can often establish redressability with little difficulty, because they need to show only that the relief requested—that the agency follow the correct procedures—*may* influence the agency's ultimate decision of whether to take or refrain from taking a certain action. This is not a high bar to meet.") (emphasis added) (internal citation omitted); *see also Citizens for Better Forestry*, 341 F.3d at 976. The violations can be further addressed by an order requiring compliance with the law. *Covington*, 358 F.3d at 639.

        2.     <u>Defendants' Arguments for Further Specificity at this Stage Are Meritless.</u>

EPA and Intervenors nonetheless argue that Plaintiffs' allegations are "too general" and require further specific details. EPA's Mot. Dismiss (EPA's Mot.) 31-32; Intervenors' Mot. 14. First, this argument is belied by the detailed Complaint itself, as explained *supra*.[9] Second, in

---

[9] Intervenors claim Plaintiffs have not alleged specific pesticides and agency actions, when this

arguing more is now required, Defendants and Intervenors conflate the motion-to-dismiss standard with that of summary judgment, as explained in *Lujan*:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, [Fed. R. Civ. P.] 56(e), which for purposes of the summary judgment motion will be taken to be true.

504 U.S. at 561 (citation omitted). Hence Plaintiffs are not required at the pleading stage to offer individual declarations with the further "specific facts" that EPA and Intervenors demand; the time for that is at summary judgment. *Id*. Instead, Plaintiffs' Complaint allegations are presumed to encompass any further needed specific facts. *Id.*; *NW Coal. for Alts. to Pesticides v. EPA*, No. C10-1919, 2012 WL 4511371, at *2-6 (W.D. Wash. Oct. 1, 2012) (denying motion to dismiss for lack of standing in § 7 pesticide case); *Coal. for A Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1164 & 1173 (E.D. Cal. 2010) (holding "it is not necessary to identify specific names of members at the pleading stage"); *id.* at 1173 ("Defendants point to no authority requiring such specificity in a complaint. Individual members of organizations seeking standing typically file declarations in connection with motions for summary judgment on the issue of standing.").

Third, EPA and Intervenors' related argument that Plaintiffs must show "specific incidents" of ESA-listed species being "taken" or "harmed" in a "particular place" or "geographical area," EPA's Mot. 32-33; Intervenors' Mot. 15, is also wrong because, as to standing injury, "'[t]o require *actual evidence* of environmental harm, rather than an *increased*

---

case is plainly about only two pesticides, and Plaintiffs have even gone further than that, in detailing *specific uses and approvals of those pesticides* in detailed appendices to the Complaint. Compl. Apps. A & B. Nothing more is required. Intervenors rely on *Center for Biological Diversity*, which Plaintiffs have elsewhere distinguished. *See* Pls.' Opp'n to EPA's Mot. 28-30. Intervenors reliance (Intervenors' Mot. at 15) on the district court decision in *Washington Toxics* is similarly misplaced. *Washington Toxics* originally involved 955 different pesticides, and the court held standing proper for 54 of them, because for the remaining 898 different pesticides, the Plaintiffs had failed to provide the court *even with their names*, let alone how they impacted protected species. No. C 01-132C, 2002 U.S. Dist. LEXIS 27654, at *36 (W.D. Wash. July 2, 2002). This void, the court held, did not meet the plaintiffs' "relatively minimal" burden. *Id.* In contrast here, Plaintiffs have raised concerns about *only 2 pesticides*, not only naming them but explaining their uses, approvals, and impacts in detail. *See supra*.

*risk based on a violation of [a] statute, misunderstands the nature of environmental harm' and would unduly limit the enforcement of statutory environmental protections," *Ocean Advocates*, 402 F.3d at 860 (emphases added) (internal citation omitted).

Moreover, contrary to Defendants and Intervenors' claims, Plaintiffs *have* alleged specific harm in specific geographic areas used by members where protected species and their habitat may be affected by the challenged pesticides. Compl. ¶¶ 32-33, 72-77. In fact, Plaintiffs have cross-referenced the FWS critical habitat of at risk protected birds and insects with USDA corn acreage. For example, Plaintiffs have created an illustrative map that geographically represents FWS data of counties that provide the aforementioned critical habitats, and a side-by-side comparison to USDA National Agricultural Statistics Service maps of 2012 corn crop acreage. Wu Decl. Exs. A-B.[10]

In any event, the Ninth Circuit has *repeatedly rejected* arguments that specific incidents or locations of harm are required for standing when, as here, Plaintiffs are raising procedural challenges to wide-ranging agency approval actions. *Citizens for Better Forestry*, 341 F.3d at 973-75 (detailing cases); *Resources Ltd. v. Robertson*, 35 F.3d 1300 (9th Cir. 1994); *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1346 (9th Cir. 1994); *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1508 (9th Cir. 1992). For example, in *Salmon River*, the plaintiffs challenged a Forest Service region-wide policy that permitted herbicide use for the first time in certain circumstances. 32 F.3d at 1351. The Ninth Circuit held the plaintiffs had standing despite not knowing precisely where the herbicides would be sprayed:

> [U]nfettered use of herbicides in [this region] in the absence of NEPA compliance will cause harm to visitors' recreational use and enjoyment, if not to their health. Speculation that the application of herbicides might not occur is irrelevant. The asserted injury is that environmental consequences might be overlooked, as a

---

[10] Intervenors also erroneously assert that Plaintiffs have not alleged specificity with regard to species, Intervenors' Mot. 14, when Plaintiffs pleaded examples of numerous specific species to be harmed, as well as explained the rationale for others that many be harmed similarly. Compl. ¶¶ 74-77. Intervenors cite no case in support of their far-reaching claim that Plaintiffs' Complaint must be exhaustive of *all* species potentially at risk, particularly at this early motion to dismiss stage, when risk to other species in the same way can plainly be reasonably inferred. *Id.*; *Lujan*, 504 U.S. at 561.

result of deficiencies in the government's analysis under environmental statutes.
*Id.* at 1355 (citing *Seattle Audubon Soc'y v. Espy*, 998 F.2d 699, 703 (9th Cir. 1993). Similarly, in *Resources Limited*, the court found that environmental groups challenging a "forest-wide" plan had standing to sue, despite their "inability to point to the precise area of the park where their injury will occur." 35 F.3d at 1303. The Ninth Circuit reaffirmed this case law in *Citizens for Better Forestry*. 341 F.3d at 971 ("Citizens need not assert that any specific injury will occur in any specific national forest that their members visit. . . . Were we to agree with the district court that a NEPA plaintiff's standing depends on proof that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.") (internal citations and quotation marks omitted).[11]

Finally, in the alternative and out of an abundance of caution, Plaintiffs also submit numerous illustrative standing declarations with this Opposition, further bolstering their allegations.[12] The declarations of beekeeper Plaintiffs Doan, Theobald, Ellis, and Rhodes, further establish the details of their injuries. *See* Decls. of Doan, Theobald, Ellis and Rhodes. The organizational declarations from representatives of each public interest group Plaintiff further explain that these issues are central to the organizations' missions. *See* Decls. of Feldman, Cox, Carman, and A. Kimbrell. Finally, some representative member declarations from public interest group Plaintiff members illustrate that: they visit the habitats of various specific threatened ESA-listed species, such as native pollinators and birds; they regularly enjoy utilizing these natural places for "conservation, environmental, recreational, aesthetic, and economic interests"; they intend to continue to visit those habitats; and that they their use and

---

[11] These NEPA cases addressing standing are equally applicable to standing in the ESA context. *Citizens for Better Forestry*, 341 F.3d at 971 n.6.

[12] The Court has jurisdiction if standing is established for one plaintiff. *See Mass. v. EPA*, 549 U.S. 497, 518 (2007). While standing is sufficiently pleaded, Plaintiffs are nonetheless hampered by the lack of any administrative record at this early stage, and thus these declarations will likely be supplemented at summary judgment, when, among other things, more facts that are now only in EPA's possession are released. *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997) (holding that plaintiffs are "entitled to establish standing anytime during the briefing phase").

enjoyment will be lessened by the harm to protected species and their habitat from clothianidin and thiamethoxam. *See* Decls. of Hinerfeld, Owens, Zaber, Melampy, Horowitz, Crouch.[13]

## II. PLAINTIFFS HAVE PROPERLY STATED CLAIMS FOR RELIEF

### A. Plaintiffs Did Not Waive Claims 3-4 and 7-9: Exhaustion of Administrative Remedies Is Not Required by FIFRA.

Intervenors' misinterpretation of exhaustion suffers the same flaw as their misinterpretation of subject matter jurisdiction. *See supra* Section I A-C. Exhaustion is required only where Congress's intent to allocate review to an administrative body is "fairly discernible in the statutory scheme." *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 207 (1994) (internal citation omitted). Absent some specific exhaustion requirement established by Congress or EPA, the Court "may not exercise [its] judicial discretion to impose one." *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998). Because FIFRA does not contain an exhaustion requirement for EPA's alleged violations in Claims 3-4 and 7-9, the doctrine of administrative exhaustion does not apply.

As discussed *supra*, Congress did not require an interested party to petition or otherwise exhaust administrative remedies before challenging EPA violations of FIFRA. Other than provisions setting forth administrative processes related to Special Review, the statute does not contain any administrative remedies for the alleged FIFRA violations in Claims 3-4 and 7-9. To

---

[13] Each declaration illustrates specific examples of the standing allegations pleaded in the Complaint. For example, CFS member Josh Hinerfeld with respect to the Fender's blue butterfly and its critical habitat in Oregon counties (*Icaricia icariodes fenderi*), Hinerfeld Decl. ¶ 19; Beyond Pesticides member David Zaber with respect to the numerous Midwestern critical habitat areas of the Karner blue butterfly (*Lycaeides melissa samuelis*), and the Hine's emerald dragonfly (*Somatochlora hineana*), Zaber Decl. ¶¶ 10-11; Sierra Club member Renee Owens with respect to the Quino checkerspot butterfly (*Euphydryas editha quino*), Owens Decl. ¶ 13-14; and CFS member Martha L. Crouch with respect to Michigan's Mitchell's Satyr butterfly (*Neonympha mitchellii mitchellii*) and Ohio/Indiana's American burying beetle (*Nicrophorus americanus*), Crouch Decl. ¶¶ 10, 12. These species are included in both Plaintiffs' ESA 60-Day Notice Letter and Amended Complaint. Compl. ¶ 73. Further, Sierra Club declarants Ami Horowitz and Michael Melampy are both PhDs who indicate a well-founded scientific basis for their concern that at least these ESA-listed bird species may be affected by EPA's actions and inactions: Mississippi sandhill crane (*Grus canadensis pulla*), whooping crane (*Grus Americana*), Attwater's prairie chicken (*Tympanuchus cupido attwateri*), and Southwestern willow flycatcher (*Empidonax trailllii extimus*). Decls. of Horowitz and Melampy. ESA listings for these and other species are available at: FWS, Envtl. Conservation Online Sys., Listed Animals, http://ecos.fws.gov/tess_public/pub/listedAnimals.jsp (last visited Nov. 2, 2013).

the contrary, FIFRA simply requires that EPA "shall" publish notices of pesticide applications and registrations (Claims 3-4). 7 U.S.C. § 136a(c)(4). Similarly, Claims 7-8 challenge EPA's final agency actions in registering clothianidin and thiamethoxam unconditionally and are immediately challengeable pursuant to § 16(a). *Id.* § 136n(a). Finally, the plain terms of FIFRA § 16(a) make clear that Claim 9, which challenges EPA's refusal to suspend clothianidin, is immediately reviewable by this Court. *Id.* ("refusal to . . . suspend . . . judicially reviewable by the district courts . . . ."); *see* Pls.' Opp'n to EPA's Mot. 12-14.

Intervenors do not point to a single FIFRA provision or anything in its legislative history when erroneously claiming that Plaintiffs somehow waived these claims. The doctrine of administrative exhaustion does not bar Claims 3-4 and 7-9 of Plaintiffs' Complaint.

## B.     Claims 3-4 State Claims Upon Which Relief Can Be Granted.

For numerous clothianidin and thiamethoxam registrations and changed use approvals, EPA did not, as required, announce a "notice of receipt of application" or "notice of issuance" in the Federal Register or in any other public order or hearing, which denied Plaintiffs of statutorily ensured notice and comment opportunities. *See* 7 U.S.C. § 136a(c)(4); 40 C.F.R. § 152.102; *see also* Pls.' Opp'n to EPA's Mot. 14-18. EPA's failures to allow notice and comment warrant invalidation of the products and uses that were approved "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).[14]

Intervenors nonetheless allege that EPA's repeated failures to provide Plaintiffs with FIFRA-mandated notices of application and issuance for clothianidin and thiamethoxam

---

[14] Contrary to Intervenors' argument, Federal Register notices on EPA's tolerance determinations related to *residues* of clothianidin and/or thiamethoxam are irrelevant. EPA separately establishes tolerances—or the maximum residue levels—of pesticide use on foods and animal feed under the Federal Food, Drug, and Cosmetic Act (FFDCA). 21 U.S.C. § 346a. In setting tolerances, EPA's sole inquiry is on a pesticide's impacts on human health. *Id.* § 346a(b)(2)(B). Notices related to EPA's tolerance determinations made under the FFDCA cannot cure EPA's procedural violations under FIFRA. *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1117 n.3 (9th Cir. 2006) (dismissing defendant's Federal Register notice issued under one statute "where another statute . . . provides specific, additional notice requirements and where Plaintiffs allege that those notice requirements were not met"). Intervenors' reliance on the total number of notices for registration activities EPA issued under FIFRA is equally misplaced. As made clear in Plaintiffs' Opposition to EPA's Motion, Plaintiffs have identified specific registrations and uses for which EPA failed to issue notices required under FIFRA. *See* Pls.' Opp'n to EPA Mot. 14-18.

registrations and changed uses constituted "harmless" errors. Intervenors' Mot. 17-18. Intervenors urge this Court to condone EPA's various procedural violations because Plaintiffs have allegedly failed to show precisely what information they would have submitted if EPA had provided the requisite notice and comment opportunities, and also how such information would have affected the agency's decisions. *Id.* 20-21. Intervenors' baseless arguments grossly overstate Plaintiffs' obligation to show harm from EPA's violations.

An agency's failure to provide notice and comment in administrative rule making is harmless only where that error "clearly had no bearing on the procedure used or the substance of decision reached." *Paulsen v. Daniels*, 413 F.3d 999, 1006 (9th Cir. 2005) (quotation omitted). And, where an agency adopts a rule without the requisite notice-and-comment opportunities, that failure necessarily bears on the procedure the agency used to adopt its rule. Thus, an agency's "utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003) (internal quotation omitted). "Where it applies, this rule substantially lessens if not altogether eliminates a challenging party's burden, for there will rarely if ever be no uncertainty as to the error's effect, and the party is not even required to identify additional considerations it would have raised in a comment procedure." *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 89 (D.D.C. 2007) (internal quotation and alterations omitted).

A plaintiff need not show that an agency's decision would have changed if the plaintiff had provided comment. *Nw. Res. Info. Ctr., Inc. v. Nw. Power & Conservation Council*, No. 10-72104, 2013 WL 5227062, at *10 (9th Cir. Sept. 18, 2013) (rejecting argument that notice and comment would not have led the agency to adopt the plaintiffs' position; holding that "even if true, [it] is insufficient to demonstrate that the error clearly had no bearing on the procedure used or the substance of the decision reached") (internal quotation and brackets omitted). Similarly, the D.C. Circuit rejected an argument identical to Intervenors', that a failure to provide notice and comment was harmless error because the parties had not "identif[ied] any additional arguments they would have made in a notice-and-comment procedure" that they had not made elsewhere. *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002).

Consequently, the court did not require the producers to describe hypothetical, additional arguments they might have made if the agency had provided the proper notice-and-comment opportunity. *Id.; accord Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 206 (4th Cir. 1989) (holding that the petitioner was not required to demonstrate what comments it, or others, would have made and whether those comments would have altered the agency's decision; vacating the rule without requiring the petitioner to show prejudice).

Thus contrary to the Intervenors' claims, EPA's utter failures to provide statutorily-required Federal Register notices cannot be considered "harmless," because there is uncertainty about the impacts of those failures on the agency's procedures and decisions. To decide otherwise, and excuse EPA's failure to provide notice for certain pesticide registrations and changed use approvals as harmless error, would be to rewrite FIFRA and the APA, eliminating the procedural requirements mandated by Congress.[15]

## C.  Claims 7-8 State Claims Upon Which Relief Can Be Granted.

Plaintiffs have adequately alleged that it was arbitrary and capricious and a violation of FIFRA for EPA to unconditionally register clothianidin and thiamethoxam products for which the agency lacks data to make the requisite finding that they "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D). A textual reading of FIFRA's conditional registration provision makes plain that if data has not been generated for an already registered product, that same data has necessarily not been generated for "similar" pesticides. *See id.* § 136a(c)(7)(A) (where data has not yet been generated, an applicant is required to submit that data "not later than the time *such data are required to be submitted with respect to similar pesticides already registered* under this subchapter") (emphasis added). Because FIFRA requires EPA to find that a product "will not generally cause unreasonable adverse effects on the environment" as a prerequisite to unconditional registration,

---

[15] Finally, even though it is not required, the Complaint *does* allege specific harms to Plaintiffs from the lack of notice, that is, EPA's failures "denied Plaintiffs the ability to submit information to the EPA that may have convinced the agency not to issue those registrations or use amendments." Compl. ¶ 22. Plaintiffs have pleaded sufficient facts at this juncture. *Lujan*, 504 U.S. at 561; *see* Pls.' Opp'n to EPA's Mot. 3 (standard of review at motion to dismiss stage).

*id.* § 136a(c)(5)(D), it both violates FIFRA and the APA for EPA to unconditionally register products for which it cannot make the requisite finding, or to purport to make that finding without requisite data. Moreover, it is arbitrary and capricious for EPA to register some clothianidin and thiamethoxam products conditionally and to register or convert others unconditionally when conditions that apply to all clothianidin and thiamethoxam products have not been satisfied.

As Plaintiffs have elsewhere explained, Pls.' Opp'n to EPA Mot. 23-25, the Complaint sufficiently pleads that EPA has unconditionally registered 14 clothianidin and 7 thiamethoxam products even though data related to all products is still outstanding, and such data is necessary to determine whether those products will have unreasonable adverse effects on the environment. Compl. ¶¶ 131, 132, 137, 138. Thus, despite Intervenors' arguments to the contrary, Plaintiffs both have an adequate legal basis for and have sufficiently pleaded this claim.

## CONCLUSION

The Court should deny Intervenors' Motion, which posits extraordinarily-expansive arguments that, if adopted by a court, would shield their pesticide products, and by analogy all pesticide products, from meaningful, timely judicial review in most instances. Intervenors' brazen claims are contrary to the plain language of FIFRA and the ESA, the relevant precedent, and well-settled motion to dismiss standards of review. Notably even EPA does not join Intervenors in their effort to exempt pesticides from meaningful judicial review, raising narrower (albeit still erroneous) arguments.

Plaintiffs have met their burden, which is minimal at this early stage. Plaintiffs' have properly pleaded their claims. This Court has subject matter jurisdiction. EPA's unlawful approvals of these controversial pesticides violated FIFRA and the ESA, and they are continuing to cause significant agricultural and environmental harm. The Court should deny the Motions and order this case to proceed to record development and summary judgment.

Dated: November 4, 2013

Respectfully submitted,

By: /s/ Paige M. Tomaselli
PAIGE M. TOMASELLI (State Bar #237737)
GEORGE A. KIMBRELL (*Pro Hac Vice*)
PETER T. JENKINS (*Pro Hac Vice*)
SYLVIA SHIH-YAU WU (State Bar #273549)
Center for Food Safety
303 Sacramento Street, 2nd Floor
San Francisco, CA 94111
T: 415-826-2770 / F: 415-826-0507
Email:  ptomaselli@centerforfoodsafety.org
        gkimbrell@centerforfoodsafety.org
        pjenkins@centerforfoodsafety.org
        swu@centerforfoodsafety.org

*Counsel for Plaintiffs*