United States District Court

For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   STEVE ELLIS,  et al.,                    No. C-13-1266 MMC

11          Plaintiffs,                        **ORDER GRANTING IN PART AND
                                              DENYING IN PART EPA'S MOTION TO**
12     v.                                     **DISMISS; GRANTING IN PART AND
                                              DENYING IN PART INTERVENORS'**
13   STEVE P. BRADBURY, et al.,               **MOTION TO DISMISS AND FOR
                                              JUDGMENT ON THE PLEADINGS;**
14          Defendants,                        **AFFORDING PLAINTIFFS LEAVE TO
                                              AMEND**
15               and

16   BAYER CROPSCIENCE LP, et al.

17          Defendants-Intervenors.
     _____/

18

19          Before the Court are two motions:  (1) the Motion to Dismiss, filed July 31, 2013 by

20   defendants Steven P. Bradbury, in his official capacity as Director of the Office of Pesticide

21   Programs in the United States Environmental Protection Agency, and Gina McCarthy, in

22   her official capacity as Administrator of the United States Environmental Protection Agency

23   (collectively, "EPA"); and (2) the Motion to Dismiss and for Judgment on the Pleadings, filed

24   September 16, 2013 by defendant-intervenors Bayer CropScience LP, Syngenta Crop

25   Protection, LLC, Valent U.S.A. Corporation, and CropLife America (collectively,

26   "Intervenors").  Plaintiffs have filed opposition to each motion; the EPA and the Intervenors

27   have filed replies.[1]  Having read and considered the papers filed in support of and in

28   _____

          [1]On February 19, 2014, plaintiffs filed an Administrative Motion for Leave to File a
     Notice of Supplemental Authority, which motion is hereby GRANTED.

1   opposition to the motions, the Court rules as follows.[2]

2   **BACKGROUND**

3   By the instant action, plaintiffs, consisting of four individuals who are beekeepers

4   and four public interest groups, challenge the actions of the EPA "to allow the ongoing use

5   of pesticide products containing the active ingredients clothianidin and thiamethoxam."

6   (See First Amended Complaint ("FAC") ¶ 1.)  According to plaintiffs, the subject pesticides

7   "have been shown to adversely impact the survival, growth, and health of honey bees and

8   other pollinators vital to U.S. agriculture" and have "harmful effects on other animals,

9   including threatened and endangered species."  (See FAC ¶ 2.)  Plaintiffs allege that the

10   EPA, without affording the public notice, has approved clothianidin and thiamethoxam

11   products for use (see FAC ¶ 3), has failed to modify its regulation of said pesticides in

12   response to "many scientifically-sound studies and adverse effect reports illustrating the

13   risks these [ ] pesticides pose" (see id.), and has improperly denied requests submitted by

14   plaintiffs and others to suspend the use of clothianidin and thiamethoxam products (see

15   FAC ¶ 5).

16   **DISCUSSION**

17   By the instant motions, the EPA and/or the Intervenors[3] argue that the Court either

18   lacks subject matter jurisdiction or, alternatively, that plaintiffs have failed to allege sufficient

19   facts to state upon which relief can be granted.  After the motions were filed, the parties

20   stipulated to dismissal of the Second, Tenth, Eleventh, and Twelfth Claims, and the Court,

21   by order filed October 25, 2013, approved the stipulation.  The Court addresses herein

22   defendants' arguments as to the remaining claims.[4]

23

24   [2]By order filed January 17, 2014, the Court took the matters under submission.

25   [3]The Intervenors are three companies that have obtained from the EPA licenses to
26   sell clothianidin and/or thiamethoxam products and one association whose members
    include such licensees.

27   [4]In their motion, the Intervenors join in the EPA's motion to dismiss (see Intervenor's
28   Mot. at 1:21-22); accordingly, the Court's rulings on the arguments made by the EPA
    pertain equally to the Intervenors.  Where the Intervenors have made arguments in addition

**A. Claims Arising Under FIFRA**

    **1.  Applicable Statutory and Regulatory Framework**

      Under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, no pesticide may be distributed or sold, unless the pesticide has been registered by the EPA.  <u>See</u> 7 U.S.C. § 136a(a).

      Where it appears to the EPA that a registered pesticide, "when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment," the EPA may institute proceedings either to "cancel its registration or change its classification," or to "determine whether or not its registration should be cancelled or its classification changed."  <u>See</u> 7 U.S.C. § 136d(b)(1)-(2).  "If the [EPA] determines that action is necessary to prevent an imminent hazard during the time required for cancellation or change in classification proceedings, the [EPA] may, by order, suspend the registration of the pesticide immediately."  7 U.S.C. § 136d(c)(1).

      District courts have jurisdiction to review "the refusal of the [EPA] to cancel or suspend a registration or change a classification not following a hearing and other final actions of the [EPA] not committed to the discretion of the [EPA] by law," <u>see</u> 7 U.S.C. § 136n(a), whereas appellate courts have jurisdiction to review "the validity of any order issued by the Administrator following a public hearing," <u>see</u> 7 U.S.C. § 136n(b).

    **2. Challenged Claims**

      **a.  First Claim**

      The First Claim, titled "EPA's Denial of Imminent Hazard from Clothianidin Products Violated the APA," is, as clarified in plaintiffs' opposition, a challenge to the EPA's decision to limit the evidence it considered when it ruled on a request contained in an "Emergency Citizen Petition" ("Petition") submitted to the EPA on March 20, 2012.[5]

_____

to those made by the EPA, the Court will separately address those arguments.

     [5]Plaintiffs Steve Ellis, Tom Theobald, the Center For Food Safety, and Beyond Pesticides, along with other individuals and entities who are not parties to the instant action, jointly submitted the Petition to the EPA.  (<u>See</u> Hill Decl. Ex. A.)

As noted, the EPA may initiate administrative proceedings, known as a "Special Review process," see 40 C.F.R. § 154.1(a), to determine whether a pesticide should be cancelled or reclassified, see 7 U.S.C. § 136d(b)(2).  The EPA may initiate the Special Review process with respect to any particular pesticide registration "on [its] own initiative" or "at the suggestion of any interested party" who submits a "petition[ ] to begin the Special Review process."  See 40 C.F.R. § 154.10; see also 40 C.F.R. § 154.7 (identifying "criteria for issuance of Special Review").

Here, the Petition, submitted to the EPA pursuant to § 154.10, requests the EPA, inter alia, initiate "Special Review and cancellation procedures for clothianidin" and "suspend its registration pending completion of the cancellation procedures based on the ongoing and imminent harm posed."  (See Hill Decl. Ex. A at 5.)  In a responsive letter dated July 17, 2012, the EPA stated it was posting the Petition on its website for public comment, and that, following the conclusion of the public comment period and the EPA's consideration thereof, it would issue a determination on the Petition.  (See id. Ex. D at 1.)  The EPA did, however, find it appropriate to rule at that time on the request to "suspend clothianidin registrations to prevent imminent harm" (see id.), which request it denied for the stated reason that it "[did] not find there currently is evidence adequate to demonstrate an imminent and substantial likelihood of serious harm occurring to bees and other pollinators from the use of clothianidin" (see id. Ex. D at 6).

In its response, the EPA also noted that, after it had received the Petition, it received "multiple submissions of supplemental filings and additional materials from other sources," which material it stated it would consider when ruling on the other requests in the Petition.  (See id. Ex. D at 2.)  The EPA stated, however, that in considering the request for a suspension, it had only considered material received "prior to May 4, 2012, due to the emergency nature of [the] request."  (See id.)

In the First Claim, plaintiffs allege that the EPA's decision not to consider materials the EPA received on or after May 4, 2012, when ruling on the request for a suspension, was "arbitrary and capricious."  (See FAC ¶ 103.)  The EPA argues the Court lacks subject

4

1  matter jurisdiction over such claim on the stated ground that the First Claim challenges a

2  "procedural," as opposed to "substantive," determination by the EPA.  (See EPA's Mot. at

3  13:17, 22-24.) The Court is not persuaded.

4      Under FIFRA, a district court has jurisdiction to review a "refusal of the [EPA] to

5  . . . suspend a registration . . . not following a hearing."  See 7 U.S.C. § 136n(a).  In its July

6  17, 2012 response to the Petition, the EPA refused to suspend the subject registrations,

7  and did so without conducting a hearing.  Nothing in § 136n(a) limits the scope of judicial

8  review of such a refusal to "substantive" challenges.  Indeed, as plaintiffs point out, courts

9  considering challenges to administrative decisions have considered the merits of a claim

10  that an agency arbitrarily refused to consider evidence before it.  See, e.g., Davis v. EPA,

11  348 F.3d 772, 779, 783-85 (9th Cir. 2003) (finding EPA's "refus[al] to consider the

12  significance of [certain] evidence" in connection with rendering decision on petition pending

13  before it was "abuse of discretion"; remanding matter to EPA "with instructions to give full

14  consideration to the [excluded evidence]").[6]  Here, in its July 17, 2012 decision, the EPA

15  stated it had not considered certain evidence (see Hill Decl. Ex. D at 2), which evidence

16  plaintiffs allege included "critical new data on how certain uses of clothianidin constitute an

17  'imminent hazard' to honey bees and other beneficial insects" (see FAC ¶ 82).  For the

18  reasons discussed above, the Court finds it has subject matter jurisdiction over plaintiffs'

19  claim that the EPA's failure to consider such evidence was arbitrary and capricious.

20      Accordingly, the EPA has failed to show the First Claim is subject to dismissal.

21          **b.  Third and Fourth Claims**

22      In the Third Claim, titled "EPA's Failure to Publish Notices of Pesticide Applications

23  for Clothianidin Products Violated the FIFRA and APA," plaintiffs allege the EPA issued

24  thirty-one "clothianidin new use registrations without first publishing notices of application or

25

---

26      [6]The EPA argues the cases on which plaintiffs rely are distinguishable, because the
   agencies therein never considered the subject evidence, whereas, in the instant case, the
27  EPA states it will consider the subject evidence in connection with the remaining requests
   in the Petition.  Plaintiffs' First Claim, however, is that, as to the request for suspension, the
28  EPA likewise never considered the subject evidence.

issuance in the Federal Register" (see FAC ¶ 112), and, in the similarly titled Fourth Claim, plaintiffs allege the EPA failed to provide such notice with respect to sixty-four "thiamethoxam new use applications" (see FAC ¶ 117).  Plaintiffs allege the EPA was required by a section of FIFRA, specifically, 7 U.S.C. § 136a(c)(4), to provide such notice before it issued the subject registrations.  (See FAC ¶¶ 114, 119.)  Additionally, in the Third and Fourth Claims, plaintiffs allege that, after the EPA issued the subject registrations, the EPA did not comply with a section of FIFRA, specifically, 7 U.S.C. § 136a(c)(2)(A), that requires it to "make available to the public the data called for in the registration statement." (See FAC ¶ 114, 119 (quoting 7 U.S.C. § 136a(c)(2)(A)).)

The EPA and the Intervenors both argue that plaintiffs have failed to allege sufficient facts to state a claim.  In addition, the Intervenors assert the claims are subject to dismissal for failure to exhaust administrative remedies, which argument the Court first considers.

The Intervenors argue that a plaintiff seeking to cancel or suspend a pesticide registration must first exhaust available administrative remedies.  As the Ninth Circuit has observed, FIFRA contains an "administrative remedy," specifically, the remedy provided in 7 U.S.C. § 136d.  See Washington Toxics Coal. v. EPA, 413 F.3d 1024, 1033 (9th Cir. 2005).  In particular, as noted above, "[i]f it appears to the [EPA] that a pesticide . . . generally causes unreasonable adverse effects on the environment," the EPA may issue a notice of its intent to "cancel its registration or to change its classification" or to "hold a hearing to determine whether or not its registration should be cancelled or its classification changed," see 7 U.S.C. § 136d(b), and may "suspend the registration of the pesticide" during the pendency of those proceedings, see 7 U.S.C. § 136d(c)(1).  Although, as further noted, the EPA may institute the proceedings referenced in § 136d on its own, "any interested party" has the right to petition the EPA to institute such proceedings, see 40 C.F.R. §§ 154.1(a), 154.10; Washington Toxics Coal., 413 F.3d at 1033 (holding that "[u]nder FIFRA any interested person can petition EPA for cancellation of a pesticide"), and "final orders" issued by the EPA pursuant to § 136d are subject to judicial review, see 7 U.S.C. § 136d(h).

1    As discussed below in connection with the Fifth and Sixth Claims, the Court finds

2  exhaustion of the administrative remedies provided under FIFRA is a prerequisite to a

3  lawsuit to cancel or suspend a registered pesticide.  As plaintiffs point out, however, the

4  Third and Fourth Claims are not claims to cancel or suspend registrations.  Indeed, in

5  Merrell v. Thomas, 807 F.2d 776 (9th Cir. 1986), a case in which the plaintiff therein sought

6  relief substantially similar to that sought by the Third and Fourth Claims, the Ninth Circuit

7  held the plaintiff did not need to exhaust administrative remedies under FIFRA.

8  Specifically, the Ninth Circuit found exhaustion was not required where the plaintiff alleged

9  the EPA's pesticide registrations were "invalid" due to its asserted failure to comply with a

10  statutory requirement to provide the public with "information on which [the issuances] were

11  based," see id. at 776-81 (considering merits of claim that EPA failed to comply with certain

12  "procedural obligation[s]" before issuing registrations), which claim the Ninth Circuit found

13  was not a claim to "cancel or suspend pesticide registrations," see id. at 782 n.3; see also,

14  e.g., Natural Resources Defense Council v. EPA, 676 F. Supp. 2d 307, 308-09, 311-17

15  (S.D. N.Y. 2009) (considering merits of claim that EPA was required to vacate pesticide

16  registrations and begin registration process anew, where EPA registered pesticides without

17  first complying with statutory requirement to provide notice to public).

18    The claims made here in the Third and Fourth Claims are substantially the same as

19  the claim made in Merrell.[7]  In accordance with Merrell, the Court finds such claims are not

20  claims seeking cancellation or suspension of registrations, and, consequently, that plaintiffs

21  were not required to exhaust FIFRA administrative remedies before bringing such claims in

22  court.

23    The Court next turns to the question of whether plaintiffs have alleged sufficient facts

24  to state a claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding "[t]o

25

26    [7]The Third and Fourth Claims, as noted, are based on an allegation that the EPA,
   before issuing pesticide registrations, did not provide notice as required by FIFRA (see
27  FAC ¶ 169); in Merrell, the plaintiff therein alleged the EPA was required by a related
   federal Act to provide notice before issuing such registrations under FIFRA, see Merrell,
28  807 F.2d at 782 n.3.

1    survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

2    as true, to state a claim to relief that is plausible on its face") (internal quotation and citation

3    omitted).  As set forth below, the Court agrees with the moving parties that plaintiffs have

4    failed to allege sufficient facts to state a claim.

5         First, to the extent the Third and Fourth Claims are based on the allegation that the

6    EPA violated § 136a(c)(4), plaintiffs have failed to allege sufficient facts to support a finding

7    that the notice requirement therein was applicable to any of the subject registrations.

8    Section 136a(c)(4) provides that "notice of each application for registration of any pesticide"

9    must be published in the Federal Register only "if [the application] contains any new

10   ingredient or if it would entail a changed use pattern."  See 7 U.S.C. § 136a(c)(4).  Although

11   the FAC alleges, in a conclusory manner, that the applications sought approval for "new

12   clothianidin uses" and "new thiamethoxam uses" on "crops and habitats where [the

13   individual plaintiffs'] honey bees foraged and pollinated" (see FAC ¶ 112, 117), the FAC

14   fails to include sufficient facts to identify the nature of any changed use pattern.

15   Additionally, to the extent the Third and Fourth Claims challenge the failure to provide

16   notice with respect to pesticide products approved before March 21, 2007,[8] the claims are

17   subject to dismissal in light of the applicable six-year statute of limitations, see 28 U.S.C.

18   § 2401(a), and the absence of any facts in the FAC to support a finding that such claims

19   accrued on a later date.

20        Second, to the extent the Third and Fourth Claims are based on the allegation that

21   the EPA violated § 136a(c)(2)(A), plaintiffs have failed to allege sufficient facts to support a

22   finding that the EPA failed to comply with its obligations thereunder.  Section 136a(c)(2)(A)

23   provides that "within 30 days after the [EPA] registers a pesticide," it "shall make available

24   to the public the data called for in the registration statement together with such other

25   scientific information as the [EPA] deems relevant to the [EPA's] decision."  See 7 U.S.C.

26   § 136a(c)(2)(A).  Pursuant to the implementing regulation, however, the EPA will make the

27

28        [8]Plaintiffs' initial complaint was filed March 21, 2013.

1   data and information identified in § 136a(c)(2)(A) available to the public "upon request, in

2   accordance with 40 C.F.R. Part 2," see 40 C.F.R. § 152.119(c), which Part explains the

3   procedure for a member of the public to obtain documents from the EPA, see, e.g., 40

4   C.F.R. § 2.102 (setting forth "procedures for making requests" for documents from EPA).

5   Plaintiffs fail to allege they requested from the EPA any of the data and information

6   referenced in § 136a(c)(2)(A), and consequently, fail to allege facts sufficient to support

7   their conclusory assertion that the EPA violated said statute.

8       Accordingly, the Third and Fourth Claims will be dismissed, and, as set forth below,

9   the Court will afford plaintiffs the opportunity to amend to cure, if they can do so, the

10  deficiencies identified above.

11          **c. Fifth and Sixth Claims**

12      In the Fifth Claim, plaintiffs allege that the EPA, with respect to twenty-three

13  "conditional" clothianidin registrations, has violated FIFRA because a "reasonable time for

14  the conditions on these product registrations to be met . . . has long passed," and the EPA

15  has not instituted proceedings to cancel the registrations for failure to satisfy the conditions

16  imposed.  (See FAC ¶ 121.)[9]  In the Sixth Claim, plaintiffs allege that the EPA, with respect

17  to fifty-four "conditional" thiamethoxam registrations, likewise has violated FIFRA.  (See

18  FAC ¶ 125.)  According to plaintiffs, the EPA "should have suspended" the subject

19  conditional registrations because the registered products "cause unreasonable adverse

20  effects and are harmful to [p]laintiffs."  (See FAC ¶¶ 123, 127.)

21      As set forth above, FIFRA provides an administrative remedy to a party who seeks

22  to  cancel or suspend a pesticide registration.  Specifically, a party may petition the EPA to

23  cancel or suspend a pesticide registration where, as here, the party asserts the pesticide

24  _____

25  [9]Under FIFRA, the EPA "may conditionally register a pesticide . . . for a period
    reasonably sufficient for the generation and submission of required data."  See 7 U.S.C.

26  § 136a(c)(7)(C).  If, "during the period provided for satisfaction of any condition imposed,
    [the EPA] determines that the registrant has failed to initiate and pursue appropriate action
    toward fulfilling any condition imposed," or if, "at the end of the period provided for

27  satisfaction of any condition imposed, [the EPA determines] that condition has not been
    met," the EPA shall institute administrative proceedings to "cancel" the registration.  See 7

28  U.S.C. § 136d(e)(1).

1    "causes unreasonable adverse effects on the environment," see 7 U.S.C. § 136d; see also

2    40 C.F.R. §§ 154.1(a), 154.10, and, if unsuccessful, may seek review in the federal courts,

3    see 7 U.S.C. § 136d(h).

4         Here, the March 20, 2012 Petition, on which the Fifth Claim is based (see Hill Decl.

5    Ex. A at 5, 31-33, 35), remains pending before the EPA for administrative determination,

6    and, with respect to the allegations on which the Sixth Claim is based, three of the plaintiffs

7    herein have submitted to the EPA a "letter of comment and notice" in which they state that

8    "[v]irtually all of the documents" filed in support of that Petition "also apply to the very

9    similar insecticide, thiamethoxam"; moreover, a request that the EPA "suspend" all

10   registrations for products containing thiamethoxam (see id. Ex. H at 1-2) is pending before

11   the EPA for administrative consideration (see Roberts Decl. Ex. 3).  The Intervenors argue

12   the Fifth and Sixth Claims are subject to dismissal for failure to exhaust the administrative

13   remedies provided under FIFRA.  The Court, as discussed below, agrees.

14        In particular, requiring exhaustion of administrative remedies as to a claim seeking

15   the cancellation or suspension of a pesticide registration fully comports with the purposes

16   of the doctrine of exhaustion of administrative remedies.  "The doctrine of exhaustion of

17   administrative remedies is well established in the jurisprudence of administrative law," and

18   the "reasons for making such procedures exclusive," even where, as here, the relevant

19   statute does not include an "explicit" exhaustion requirement, are "not difficult to

20   understand."  See McKart v. United States, 395 U.S. 185, 193 (1969).  As the Supreme

21   Court explained in McKart,

22            A primary purpose is, of course, the avoidance of premature interruption of
             the administrative process.  The agency, like a trial court, is created for the
23            purpose of applying a statute in the first instance.  Accordingly, it is normally
             desirable to let the agency develop the necessary factual background upon
24            which decisions should be based.  And since agency decisions are frequently
             of a discretionary nature or frequently require expertise, the agency should be
25            given the first chance to exercise that discretion or to apply that expertise.
             And of course it is generally more efficient for the administrative process to go
26            forward without interruption than it is to permit the parties to seek aid from the
             courts at various intermediate stages.
27
     See id. at 193-94 (footnote omitted).
28

                                                 10

1    The Ninth Circuit, applying the principles set forth in McKart, has held that, in the

2  absence of an explicit statutory requirement, a court may "require exhaustion if: (1) agency

3  expertise makes agency consideration necessary to generate a proper record and reach a

4  proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of

5  the administrative scheme; and (3) administrative review is likely to allow the agency to

6  correct its own mistakes and to preclude the need for judicial review."  See United States v.

7  California Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983).  As discussed below, the Court

8  finds each of the above-referenced "factors," see id. at 1248, weighs in favor of requiring

9  exhaustion of administrative remedies with respect to plaintiffs' Fifth and Sixth Claims.[10]

10    First, agency expertise is needed to determine whether a pesticide registration

11  should be cancelled or suspended, as the inquiry requires balancing "agricultural and

12  environmental concerns," a task in which the EPA regularly engages pursuant to its duties

13  under FIFRA.  See Defenders of Wildlife, 882 F.2d at 1298-99 (observing EPA, in

14  implementing its statutory obligations under FIFRA, regularly "strikes [the] balance"

15  between agricultural and environmental concerns); see also Ruckelshaus v. Monsanto Co.,

16  467 U.S. 986, 991-92 (1984) (characterizing FIFRA as a "comprehensive regulatory

17  statute").

18    Second, allowing plaintiffs to avoid exhausting the administrative remedies available

19  under FIFRA would encourage bypass of the detailed procedures Congress enacted with

20  respect to cancellation or suspension of registrations.  See 7 U.S.C. § 136d; see also 7

21  U.S.C. § 136a(g)(1)(A)(I) (providing EPA must "periodically review[ ]" pesticide

22

23    [10]Although the Ninth Circuit has not had occasion to decide if exhaustion is required
    where a plaintiff seeks to cancel or suspend a pesticide registration, it has suggested that
24  such exhaustion would be required.  See Merrell, 807 F.2d at 782 and n.3 (stating
    dismissal for failure to exhaust administrative remedies "might be appropriate" where a
25  plaintiff sues to "cancel or suspend pesticide registrations"; noting availability of
    administrative remedies under FIFRA, specifically, that "interested parties can influence
26  [EPA's] decisions through petitions" and thereafter seek judicial review of adverse
    decision); see also Defenders of Wildlife v. Administrator, EPA, 882 F.2d 1294, 1302 (8th
27  Cir. 1989) (noting plaintiff "could petition the EPA to cancel registrations or request other
    action [and] [i]f the EPA refused, [plaintiff] could obtain judicial review . . . as provided by
28  FIFRA").

registrations); 7 U.S.C. § 136a(g)(1)(A)(v) (providing "[n]o registration shall be cancelled as a result of the registration review unless the [EPA] follows the procedures and substantive requirements of section 136d").  Indeed, in the Petition and related filings submitted to the EPA pursuant to FIFRA's administrative process, plaintiffs, as noted, requested the EPA suspend and cancel a number of registrations for the same reasons set forth in the Fifth and Sixth Claims, and after receiving an adverse ruling on a preliminary issue, filed the instant complaint in what appears to be an attempt to have this Court, rather than the EPA in the regular course of its ongoing administrative proceedings, determine whether the registrations identified in the Petition should be cancelled.  Further, as many petitions, such as that at issue here, will be decided after a public hearing, allowing a party to challenge a registration in district court in advance of such hearing will undermine Congress's intent that judicial review of those decisions be held exclusively in the Court of Appeals.  See 7 U.S.C. § 136n(b) (providing challenge to EPA decision issued after administrative hearing may be heard only by Court of Appeals); Northwest Food Processors Ass'n v. Reilly, 886 F.2d 1075, 1078 (9th Cir. 1989) (holding § 136n was enacted to further "Congress' goal of efficient judicial review" of EPA decisions regarding cancellation of pesticide registrations).

Third, assuming the EPA erred in the manner alleged by plaintiffs in the Fifth and Sixth Claims, the administrative process will afford the EPA the opportunity to correct such errors.  Indeed, in the Petition, plaintiffs identify particular administrative steps the EPA could take to cure the alleged errors identified in the Fifth Claim.  (See Hill Decl. Ex. A at 5-7, 39.)

Accordingly, the Fifth and Sixth Claims will be dismissed for failure to exhaust administrative remedies, without leave to amend and without prejudice to plaintiffs' exhausting their administrative remedies.

### d.  Seventh and Eighth Claims

In the Seventh Claim, titled "EPA Violated the FIFRA Requirements and the APA for Unconditionally-Registered Clothianidin Products," plaintiffs allege the EPA has classified fourteen clothianidin products as "unconditional despite the failure of the registrants to fill

existing data gaps and comply with the past conditions" (see FAC ¶ 131 (emphasis in original)), and that such classifications violated FIFRA "because the conditions were not fully met before they were removed" (see FAC ¶ 130).  In the Eighth Claim, titled "EPA Violated the FIFRA Requirements and the APA for Unconditionally-Registered Thiamethoxam Products," plaintiffs allege the EPA, with respect to seven "unconditional" thiamethoxam registrations, likewise has violated FIFRA.  (See FAC ¶ 137 (emphasis in original).)  According to plaintiffs, the EPA "should have suspended" the subject registrations because the registered products "cause unreasonable adverse effects and are harmful to [p]laintiffs."  (See FAC ¶¶ 133, 139.)

The Intervenors argue the Seventh and Eighth Claims are subject to dismissal for failure to exhaust administrative remedies.

As discussed above, FIFRA provides an administrative remedy to a party who seeks to  cancel or suspend a pesticide registration.  See 7 U.S.C. § 136d; 40 C.F.R. §§ 154.1(a), 154.10.  For the reasons stated above with respect to the Fifth and Sixth Claims, the Court finds plaintiffs are required to exhaust the administrative remedies available under FIFRA before seeking judicial review of the EPA's failure to suspend the registrations identified in the Seventh and Eighth Claims.  Plaintiffs do not contend they have exhausted such remedies.

Accordingly, the Seventh and Eighth Claims will be dismissed, without leave to amend and without prejudice to plaintiffs' exhausting their administrative remedies.

### e.  Ninth Claim

In the Ninth Claim, titled "EPA Is Violating the FIFRA Suspension Requirements and the APA for Clothianidin Products," plaintiffs allege that "clothianidin currently causes unreasonable adverse effects on the environment" (see FAC ¶ 141), and that the EPA has "refused" plaintiffs' request to suspend clothianidin products (see FAC ¶ 143).

In its motion to dismiss, the EPA initially argued that the Ninth Claim was duplicative of the First Claim, and, consequently, should be dismissed for that reason.  As clarified in plaintiffs' opposition to the EPA's motion, however, the Ninth Claim constitutes plaintiffs'

1   challenge to the "substance" of the EPA's denial of the Petition's request for an immediate

2   suspension of clothianidin registrations, whereas the First Claim constitutes a "procedural"

3   challenge to the EPA's decision not to consider certain evidence before it issued that

4   denial.  (See Pls.' Opp. to EPA's Mot. to Dismiss at 13:18-23.)  In light of plaintiffs'

5   clarification, the EPA, in its reply, states it no longer seeks dismissal of the Ninth Claim.

6   (See EPA's Reply at 2:17-18.)

7           The Intervenors argue that the Ninth Claim is subject to dismissal for failure to

8   exhaust administrative remedies.  With respect to the Ninth Claim, however, plaintiffs have

9   exhausted their administrative remedies; specifically, as discussed above, the EPA has

10  issued a final decision denying the Petition to the extent it sought an immediate suspension

11  of clothianidin products.

12          Accordingly, the Ninth Claim is not subject to dismissal.

13  **B. Claims Arising Under Endangered Species Act**

14          Under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, the Fish and

15  Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") are required

16  to determine which species are "endangered" or "threatened."  See 16 U.S.C. § 1633(a).[11]

17  Under § 7 of the ESA, all federal agencies "shall, in consultation with and with the

18  assistance of [the FWS and the NMFS], insure that any . . . agency action . . . is not likely to

19  jeopardize the continued existence of any endangered species or threatened species"  See

20  16 U.S.C. § 1536(a)(2).  Under § 9 of the ESA, no person may "take" any "endangered

21  species."  See 16 U.S.C. § 1538(a)(1).

22          In the Thirteenth Claim, titled "EPA's Actions in Approving Clothianidin Products and

23  //

24

_____

25          [11]Although the Secretary of the Interior and the Secretary of Commerce have the
    statutory responsibility to administer the ESA, they have "delegated" the authority to,
26  respectively, the FWS and the NMFS.  See Washington Toxics Coal. v. United States Dep't
    of Interior, 457 F. Supp. 2d 1158, 1163 (W.D. Wash. 2006).  Under such delegation, the
27  FWS administers the ESA "with respect to terrestrial and freshwater species," while the
    NMFS administers the ESA "with respect to marine species."  See National Wildlife
28  Federation v. FEMA, 345 F. Supp. 2d 1151, 1167 (W.D. Wash. 2004)

Labels Violated the ESA," five of the plaintiffs[12] allege the EPA, in connection with its

continuing authority over such pesticides, violated § 7 of the ESA by failing to consult with

the FWS prior to registering thirty-five clothianidin products and approving language placed

on labels for said products (see FAC ¶¶ 159-161); additionally, plaintiffs allege the EPA

violated § 9 of the ESA by "allow[ing] the clothianidin products to directly and indirectly and

otherwise 'take' federally-listed species" (see FAC ¶ 162).  In the Fourteenth Claim, titled

"EPA's Actions in Approving Thiamethoxam Products and Labels Violated the ESA,"

plaintiffs allege the EPA likewise violated the ESA with respect to specified thiamethoxam

registrations and label language.  (See FAC ¶¶ 164-67.)

### 1. Section 9 Claims

As noted, the Thirteenth and Fourteenth Claims both include allegations that the

EPA has violated § 9.  The EPA argues that plaintiffs, prior to filing suit, failed to comply

with the notice requirement set forth in the ESA with respect to such allegations.

"[A]ny person may commence a civil suit . . . to enjoin any person, including the

United States . . . who is alleged to be in violation of any provision of [the ESA]," see 16

U.S.C. § 1540(g)(1), provided such action may not be filed "prior to sixty days after written

notice of the violation has been given to the Secretary [of the Interior], and to any alleged

violator of any such provision or regulation," see 16 U.S.C. § 1540(g)(2)(A)(i).  "A failure to

strictly comply with the notice requirement acts as an absolute bar to bringing suit under the

ESA." Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d

515, 520-21 (9th Cir. 1998) (affirming dismissal of ESA claim for lack of subject matter

jurisdiction, where plaintiff's notice to EPA "failed to sufficiently alert the [EPA] to the actual

violation [the plaintiff] alleged in the complaint it eventually filed").

Here, by notice dated September 6, 2012 and titled "Sixty-Day Notice of Intent to

---

[12]Plaintiffs clarify in their opposition to the EPA's motion that the Thirteenth and Fourteenth Claims are only brought on behalf of the following five plaintiffs:  Center for Food Safety, Beyond Pesticides, the Sierra Club, Steve Ellis, and Tom Theobald.  (See FAC ¶ 89 (identifying five plaintiffs seeking relief under the ESA).)  All further references to "plaintiffs" in this section pertain to those five plaintiffs only.

Sue EPA Pursuant to the Endangered Species Act Re: Registration and Use Approvals of

Clothianidin and Thiamethoxam, Neonicotinoid Insecticides" ("Notice Letter"), plaintiffs

asserted the EPA "has violated, and remains in ongoing violation of, section 7 of the ESA."

(See Hill Decl. Ex. E at 1, 8.)  The Notice Letter, however, does not assert that the EPA or

a registrant has engaged in the "take" of any endangered species, and does not otherwise

include any allegations providing notice of an alleged violation of § 9.  Indeed, plaintiffs, in

their opposition, make no argument that the Notice Letter provides notice of the § 9

allegations in the FAC.

      Accordingly, to the extent the Thirteenth and Fourteenth Claims are based on

alleged violations of § 9, the Claims will be dismissed, without leave to amend and without

prejudice to plaintiffs' providing notice to the Secretary of the Interior and the EPA.

**2.  Section 7 Claims**

      As noted, the Thirteenth and Fourteenth Claims both include allegations that the

EPA has violated § 7.

      An administrative agency's responsibilities under § 7 have been summarized as

follows:

> Section 7 requires federal agencies to ensure that none of their activities, including the granting of licenses and permits, will jeopardize the continued existence of listed species or adversely modify a species' critical habitat.

> Section 7 imposes on all agencies a duty to consult with either the Fish and Wildlife Service or the NOAA Fisheries Service before engaging in any discretionary action that may affect a listed species or critical habitat.  The purpose of consultation is to obtain the expert opinion of wildlife agencies to determine whether the action is likely to jeopardize a listed species or adversely modify its critical habitat and, if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts.  The consultation requirement reflects a conscious decision by Congress to give endangered species priority over the primary missions of federal agencies.

See Karuk Tribe v. United States Forest Service, 681 F.3d 1006, 1020 (9th Cir. 2012)

(internal quotation and citations omitted).

      The EPA and the Intervenors raise a number of challenges to the § 7 claims, which

challenges the Court considers in turn.

//

### a. Exhaustion

The Intervenors argue that plaintiffs are required to exhaust the administrative remedies provided under FIFRA before filing suit alleging violations of § 7 of the ESA.

The Ninth Circuit, however, has expressly rejected the argument that a district court should require exhaustion of "FIFRA remedies" before considering the merits of a § 7 claim, noting "[n]either FIFRA nor the ESA . . . suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA."  See Washington Toxics Coal., 413 F.3d at 1033.

Accordingly, plaintiffs' § 7 claims are not subject to dismissal for failure to exhaust administrative remedies under FIFRA.

### b. Notice

The EPA argues that certain portions of plaintiffs' § 7 claims, specifically, the allegations pertaining to approval of language on pesticide labels and the allegations pertaining to approval of seventeen of the pesticide products identified in the FAC, are subject to dismissal for failure to include those allegations in the Notice Letter.

### 1. Approval of Label Language

As noted, plaintiffs' claims are based in part on the allegation that the EPA violated § 7 when it approved language for the labels of clothianidin and thiamethoxam products.[13] The EPA argues that the claims are subject to dismissal to the extent they are based on those allegations, because plaintiffs did not assert any such violation in the Notice Letter. The Court agrees; nothing in the Notice Letter suggests that the EPA violated § 7 by failing to consult with the FWS prior to approving language to be placed on any of the products referenced in the FAC.

Accordingly, to the extent the § 7 claims are based on such allegations, the claims will be dismissed, without leave to amend and without prejudice to plaintiffs' providing notice to the Secretary of the Interior and the EPA.  See Southwest Center for Biological

---

[13]The EPA has implemented detailed regulations that address the information a pesticide manufacturer must include on a label.  See 40 C.F.R. §§ 156.3 - 156.212.

Diversity, 143 F.3d at 520-22 (affirming dismissal of ESA claim where plaintiff's notice to EPA "failed to sufficiently alert the [EPA] to the actual violation [the plaintiff] alleged in the complaint it eventually filed").

## 2. Approval of Pesticide Products

As also noted, plaintiffs' claims are based on the allegation that the EPA violated § 7 with respect to its approval of clothianidin and thiamethoxam products.  In particular, the FAC identifies a total of 103 products that, plaintiffs allege, were approved in violation of § 7.  (See FAC ¶¶ 159, 165, Apps. A, B.)  The EPA argues that seventeen of those products were not identified in the Notice Letter, and consequently, it argues, plaintiffs cannot base their § 7 claims on the approvals of those seventeen products.  In their opposition, plaintiffs argue that the content of the Notice Letter is sufficient to put the EPA on notice that plaintiffs are challenging the approval of all clothianidin and thiamethoxam products, whether or not a product is expressly identified in the Notice Letter.

The subject seventeen products fall into two groups:  thirteen that were approved prior to September 5, 2012, the date of plaintiffs' Notice Letter, and four that were approved after the date of the Notice Letter.

### (a)  Products Approved After Notice Letter

The Court first considers the four products approved after plaintiffs submitted the Notice Letter, and finds it lacks jurisdiction to consider plaintiffs' § 7 claims to the extent such claims are based on those four products.  As noted, a court lacks jurisdiction over an ESA claim unless the plaintiff has provided "written notice of the violation" to the EPA prior to filing suit.  See 16 U.S.C. § 1540(g)(2)(A)(i).  In this instance, the Notice Letter could not have provided the requisite notice as the violation had not yet occurred.  Under such circumstances, allowing these claims to proceed would run counter to the purpose of the notice requirement, which is to provide the agency with "an opportunity to review [its] actions and take corrective measures if warranted," thus "provid[ing] an opportunity for settlement or other resolution of a dispute without litigation."  See Southwest Center for Biological Diversity, 143 F.3d at 520 (internal quotation and citation omitted).

18

1    Accordingly, plaintiffs' § 7 claims will be dismissed to the extent they are based on

2    the allegation that the EPA did not consult with the FWS with respect to its approval of the

3    following four products:  (1) "VBC3 Insecticide," a clothianidin product (see FAC ¶ 159, App.

4    A at 5); (2) "Avicta complete beans," a thiamethoxam product (see FAC ¶ 164, App. B at

5    12); (3) "Endigo ZCX," a thiamethoxam product (see id.); and (4) "SYT0511," a

6    thiamethoxam product (see id.).

7                          **(b) Products Approved Prior to Notice Letter**

8            The Court next considers the claims based on approval of products not specifically

9    identified in the Notice Letter, but approved prior to the date of the Notice Letter.

10           In determining the sufficiency of a notice, the Court looks to whether the notice letter

11   "provide[s] sufficient information of a violation so that the [EPA] could identify and attempt

12   to abate the violation."  See Southwest Center for Biological Diversity, 143 F.3d at 522.

13   Here, the Notice Letter asserts that the EPA, in violation of § 7, has not consulted with the

14   EPA with respect to any clothianidin or thiamethoxam pesticide product it had approved.

15   (See Hill Decl. Ex. E at 5.)  The Notice Letter further asserts that such consultation was

16   required because "clothianidin and thiamethoxam are systematic pesticides that are

17   expressed throughout plant tissues," and that "many ESA-protected insects" forage on

18   pollen or nectar from plants treated by such pesticides, and that said insects ingestion of

19   the pesticides "can result in paralysis, death, or damaging sub-lethal effects."  (See id. Ex.

20   E at 4.)  Although the Notice Letter goes on to identify "approximately 85" approved

21   products, listed in appendixes attached thereto (see id. Ex. E at 8, Apps. A, B), the grounds

22   for plaintiffs' challenge, to both the listed and unlisted products, are the same and do not

23   appear to be dependent on the specific composition of any such product.  (See id. (listing

24   clothianidin content ranging from .05% to 97.50%; listing thiamethoxam content ranging

25   from .003% to 99.10%).)  Under such circumstances, the Court finds jurisdiction over

26   plaintiffs' § 7 claim is not limited to the specific products identified in the appendixes.  See,

27   e.g., Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d

28   943, 948-49, 952 (9th Cir. 2002) (holding, where notice advising defendant of violations of

Clean Water Act identified "12 alleged illegal discharges," district court had jurisdiction over claims challenging additional discharges occurring within time frame identified in the notice and "sufficiently similar to those contained in the [n]otice").

Accordingly, to the extent plaintiffs' § 7 claims are based on the allegation that the EPA violated § 7 with respect to its approval of thirteen products approved prior to the date of the Notice Letter,[14] the claims are not subject to dismissal for failure to comply with § 1540(g)(2)(A)(i).

### c. Agency Action

The duty to consult under § 7 is "trigger[ed]" only if the agency engages in "agency action," which, for purposes of § 7, occurs when an agency "makes an 'affirmative' act or authorization."  See Karuk Tribe, 681 F.3d at 1021 (citations omitted).

In the remaining portions of the Thirteenth and Fourteenth Claims, plaintiffs allege the duty to consult was triggered by the following: (1) the EPA's approval of specified clothianidin and thiamethoxam products (see FAC ¶¶ 159, 164); and (2) the EPA's having "continuing authority over the conditional and unconditional registrations" of clothianidin and thiamethoxam products (see FAC ¶¶ 160, 165).

Neither the EPA nor the Intervenors argue that approving a pesticide product for use does not constitute "agency action" for purposes of § 7.  See Karuk Tribe, 681 F.3d at 1021 (providing, as example of "agency action" for purposes of § 7, "federal agencies' authorization of private activities, such as the approval and registration of pesticides").  The Intervenors argue, however, that plaintiffs cannot base their § 7 claims on the EPA's having "continuing authority" over existing product registrations.  The Court agrees.

//

---

[14]The thirteen products are as follows:  (1) "Prosper Evergol" (see FAC ¶ 159, App. A at 3; (2) "Ernesto Quantum" (see FAC ¶ 159, App. A at 4); (3) "NipsIt Suite Canola Seed Protectant" (see FAC ¶ 159, App. A at 7); (4) "Inovate Neutral Seed Protectant" (see FAC ¶ 159, App. A at 8); (5) "Cruisermaxx Vibrance Cereals" (see FAC ¶ 164, App. B at 11); (6) "THX_MXM_FDL_TBX FS" (see id.); (7) "CruiserMaxx EZ" (see id.); (8) "Derby" (see id.); (9) "Tandem" (see FAC ¶ 164, App. B at 12); (10) "CruiserMaxx Peanuts" (see id.); (11) "Solvigo Miticide/Insecticide" (see id.); (12) "Adage Delux" (see id.); and (13) "Adage Premier" (see id.).

1    "Where private activity is proceeding pursuant to a vested right or to a previously

2    issued license, an agency has no duty to consult under Section 7 if it takes no further

3    affirmative action regarding the activity."  Id.; see also Reckitt Benckiser Inc. v. EPA, 613

4    F.3d 1131, 1133 (D.C. Cir. 2010) (describing "FIFRA registration" as "a product-specific

5    license").  Consequently, even where an agency has discretion to change the terms of an

6    existing license, the agency has no duty to consult in light of such retention of discretion,

7    when it has not exercised such discretion.  See California Sportfishing Protection Alliance v.

8    FERC, 472 F.3d 593, 594-95 (9th Cir. 2006) (holding, where private party obtained license

9    to operate dam and licensing agency had discretion to amend terms of license, but had not

10   exercised such discretion, plaintiff could not show agency had duty to consult under § 7

11   based on mere retention of discretion to act).

12          Accordingly, to the extent the § 7 claims are based on the theory that the EPA's

13   "continuing authority" over registered pesticide products constitutes "agency action," the

14   claims will be dismissed, without leave to amend.

15              **d. Ripeness**

16          The Intervenors assert the EPA, as part of its ongoing administrative proceedings on

17   the Petition and as part of an administrative proceeding it initiated with respect to a review

18   of thiamethoxam registrations, may yet address the issue of whether it should consult with

19   the FWS.  Consequently, the Intervenors argue, plaintiffs' § 7 claims are not ripe for judicial

20   review, in light of the general principle that "[c]laims still under consideration by the agency"

21   are "generally not ripe for judicial review."  (See Intervenors' Mot. at 12:10-12.)  In support

22   of their argument, the Intervenors cite cases in which a plaintiff sought judicial review of an

23   initial step in an ongoing administrative proceeding.  See Acura of Bellevue v. Reich, 90

24   F.3d 1403, 1408-09 (9th Cir. 1996) (holding plaintiff's challenge to agency's "interim

25   determination" that plaintiff had violated child labor laws was not ripe, where issue of

26   whether plaintiff violated said laws remained pending before ALJ); Ukiah Valley Medical

27   Center v. FTC, 911 F.2d 261, 264-65 (9th Cir. 1990) (holding plaintiffs' challenge to

28   agency's jurisdiction to file administrative complaint alleging antitrust violation was not ripe,

1  where issue of whether agency had jurisdiction was pending before ALJ as part of

2  administrative proceedings on said complaint).  In such circumstances, dismissal of the

3  claim for judicial review is appropriate because "[a]llowing judicial review in the middle of

4  the agency review process unjustifiably interferes with the agency's right to consider and

5  possibly change its position during its administrative proceedings."  See Acura of Bellevue,

6  90 F.3d at 1409.

7       The cases on which the Intervenors rely, however, are distinguishable.  As

8  discussed, an agency's duty to consult under § 7 is triggered by "agency action."  See

9  Karuk Tribe, 681 F.3d at 1021.  Here, plaintiffs' § 7 claims, to the extent not dismissed

10 above, are based on the theory that the EPA did not consult with the FWS with respect to

11 the EPA's approval of specified pesticide products, which approval is a past, completed

12 action by the EPA.

13      Accordingly, the Intervenors have not shown the remaining portions of the § 7 claims

14 are not ripe for judicial review.

15         **e.  Standing**

16      The EPA argues that plaintiffs fail to allege sufficient facts to support a finding that

17 any plaintiff has standing to challenge the EPA's alleged failure to consult with the ESA

18 prior to approving clothianidin and thiamethoxam products.

19      Where a plaintiff seeks to proceed with a claim under § 7, the plaintiff must, as in all

20 cases, demonstrate his standing to seek the relief sought.  See Lujan v. Defenders of

21 Wildlife, 504 U.S. 555, 559-60, 578 (1992) (addressing whether plaintiff, at summary

22 judgment stage, sufficiently demonstrated standing to bring § 7 claim).  "[S]tanding contains

23 three elements."  Id.  "First, the plaintiff must have suffered an injury in fact – an invasion of

24 a legally protected interest which is (a) concrete and particularized, and (b) actual or

25 imminent, not conjectural or hypothetical."  Id.  (internal quotations and citations omitted).

26 "Second, there must be a causal connection between the injury and the conduct

27 complained of – the injury has to be fairly traceable to the challenged action of the

28 defendant, and not the result of the independent action of some third party not before the

court." Id. (internal quotation, alteration, and citation omitted).  "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (internal quotations and citation omitted).

Here, as to the first element, and contrary to the EPA's argument, plaintiffs have sufficiently alleged the requisite "general factual allegations of injury resulting from the defendant's conduct."  See id. (noting, "on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim") (internal quotation and citation omitted).  Plaintiffs allege that the EPA, by failing to consult with the FWS prior to approving specified clothianidin and thiamethoxam products has failed to "insure" that said approvals are "not [ ] likely to jeopardize the continued existence of any endangered species or any threatened species or result in the destruction or adverse modification of the critical habitat of such species" (see FAC ¶ 159); 16 U.S.C. § 1536(a)(2), and, in particular, identify eighteen "threatened or endangered species" of insects "directly affected by the use of clothianidin and thiamethoxam products" (see FAC ¶ 73) "via residue laden pollen and nectar" (see FAC ¶ ¶ 75, 76);[15] see also Karuk Tribe, 681 F.3d at 1020 (holding duty to consult triggered where agency action "may effect a listed species or critical habitat").  Plaintiffs further allege that members of the organizational plaintiffs "have personally visited the ranges of directly impacted ESA-listed invertebrates" and "enjoy utilizing these species for recreational, aesthetic, and other uses, and intend to continue to visit those habitats and enjoy those species and the ecosystem services they provide" (see FAC ¶ 32); Lujan, 504 U.S. at 562–63 (holding "desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing"); Sierra Club v. Morton, 405 U.S. 727, 739 (1972) (holding that "an organization whose members are injured may represent those members

//

---

[15]According to plaintiffs, the subject pesticides "are taken up by a plant's vascular system as it grows and are expressed through its tissues, including flowers, pollen, and nectar."  (See FAC ¶ 57.)

1  in a proceeding for judicial review").[16]

2      Further, the Court finds plaintiffs' allegations are sufficient at the pleading stage to

3  support the additional standing elements of causation and redressability.  As noted, the

4  subject pesticides have been approved by the EPA allegedly without the EPA's having

5  consulted with the FWS, which lack of consultation is, upon a proper showing, "correctable

6  by court order."  See Covington v. Jefferson County, 358 F.3d 626, 639 (9th Cir. 2004)

7  (holding, where plaintiffs alleged county was not operating landfill in conformity with federal

8  regulations, "causation and redressability" elements of standing were satisfied because

9  county was alleged to have been entity violating the applicable regulations and a court

10  could require the county to so comply).[17]

11      Accordingly, the remaining portion of the § 7 claims are not subject to dismissal for

12  failure to sufficiently allege standing.

13                      **f.  Failure to State a Claim**

14      The EPA argues that plaintiffs fail to sufficiently allege a violation of § 7 because,

15  according to the EPA, the FAC does "not contain any facts" to support a finding that a

16  failure to consult with the FWS "would adversely affect particular listed species."  (See

17  EPA's Mot. at 33:3-5.)  Contrary to the EPA's argument, plaintiffs need not allege that any

18  ESA-listed species actually would be adversely affected or harmed by exposure to the

19  subject clothianidin or thiamethoxam products.  Rather, as plaintiffs point out, consultation

20  is triggered when an agency action "may affect a listed species or critical habitat."  See

21  Karuk Tribe, 681 F.3d at 1020.  The "may affect" standard is "sufficiently low" to allow

22  agencies to insure that "species are not jeopardized."  See Center for Biological Diversity v.

23  _____

24      [16]In support of their oppositions, plaintiffs, "out of an abundance of caution," have
offered "illustrative standing declarations."  (See Pls.' Opp. to Intervenor's Mot. at 20:11-
25  13.)  The issue before the Court, however, is whether plaintiffs have sufficiently alleged
standing, not whether plaintiffs can prove their allegations, and, consequently, the Court
26  has not considered the declarations at this time.

27      [17]In their respective replies, defendants challenge the causation element by
asserting that some of the approved pesticide products do not, in fact, pose any risk to
28  endangered or threatened species, an argument dependent on facts not contained in the
FAC.

1  United States Bureau of Land Mgmt., 698 F.3d 1101, 1122 (9th Cir. 2012) (internal

2  quotation and citation omitted).  Indeed, "[a]ny possible effect, whether beneficial, benign,

3  adverse, or of an undetermined character, triggers the formal consultation requirement."

4  See id. (internal quotation, citation, and emphasis omitted).  Plaintiffs have alleged

5  sufficient facts in their FAC to plead a violation based on the applicable standard.  (See

6  FAC ¶¶ 57, 60- 61, 73-76.)

7      The EPA and the Intervenors also argue that plaintiffs fail to sufficiently specify, as to

8  each of the named products, the particular agency act on which their claim is based.  The

9  Court is not persuaded.  In support thereof, defendants cite to Center for Biological

10  Diversity v. EPA, 2013 WL 1729573 (N.D. Cal. April 22, 2013) ("CBD").  In CBD, however,

11  in contrast to the instant case, the complaint "did not allege . . . the EPA's act of registering

12  the pesticides" as the triggering action, see id. at *9, but, rather, relied on the EPA's

13  "'discretionary control and involvement over all . . . pesticides,'" see id. (quoting complaint)

14  (alteration in original).

15      Lastly, the Intervenors argue that to the extent the § 7 claims are based on failures

16  to consult in connection with applications to register products that the EPA approved

17  before March 21, 2007, the claims are barred by the applicable six-year statute of

18  limitations set forth in 28 U.S.C. § 2401(a).  The Court agrees, as plaintiffs fail to plead any

19  facts in the FAC to support a finding that such claims accrued on a later date.  The Court

20  will, however, afford plaintiffs the opportunity to amend to cure said deficiency, if they can

21  do so.

22      Accordingly, the remaining portions of the § 7 claims, except to the extent based on

23  approvals granted before March 21, 2007, are not subject to dismissal for failure to state a

24  claim, and to the extent based on approvals granted before March 21, 2007, will be

25  dismissed with leave to amend.

26                                    **CONCLUSION**

27      The EPA's motion to dismiss and the Intervenor's motion to dismiss and for

28  judgment on the pleadings are hereby GRANTED in part and DENIED in part, as follows:

25

1. To the extent the motions seek dismissal of the Third and Fourth Claims, the motions are GRANTED, and said Claims are DISMISSED with leave to amend.

2. To the extent the motions seek dismissal of the Fifth, Sixth, Seventh, and Eighth Claims, the motions are GRANTED, and said Claims are DISMISSED without leave to amend.

3. To the extent the motions seek dismissal of the Thirteenth and Fourteenth Claims, the motions are GRANTED (a) with respect to plaintiffs' § 9 claims, plaintiffs' § 7 claims to the extent based on "continuing authority" and approval of label language, and plaintiffs' § 7 claims to the extent based on approvals of products granted after September 5, 2012, and said portions of the Thirteenth and Fourteenth Claims are DISMISSED without leave to amend; and (b) with respect to plaintiffs' § 7 claims to the extent based on approvals of products granted before March 21, 2007, and said portions of the Thirteenth and Fourteenth Claims are DISMISSED with leave to amend.

4. In all other respects, the motions are DENIED.

5. Any Second Amended Complaint shall be filed no later than May 9, 2014.  In any Second Amended Complaint, plaintiffs may amend to cure the deficiencies noted above with respect to the Third, Fourth, Thirteenth, and Fourteenth Claims.  Plaintiffs may not, however, add new claims, new plaintiffs, or new defendants without leave of court.  See Fed. R. Civ. P. 15(a)(2).  If plaintiffs do not file a Second Amended Complaint by the date provided, the instant action will proceed on the remaining claims in the FAC.

**IT IS SO ORDERED.**


Dated:  April 18, 2014

MAXINE M. CHESNEY
United States District Judge

26